# EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY LP<br>vs.<br>AETNA INC | NO. 2017-06786 |

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ROCKVILLE AMBULATORY SURGERY LP

vs.

AETNA INC

NO. 2017-06786

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: JASON B MARTIN, Esq., ID: 82767

Self-Represented (Pro Se) Litigant [ ]

**Class Action Suit** [ ] Yes [X] No

**MDJ Appeal** [ ] Yes [X] No

**Money Damages Requested** [X]

**Commencement of Action**:

Complaint

**Amount in Controversy**:

More than $50,000

## Case Type and Code

Contract:

Debt Collection: Other

**Other:**

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP
11400 Rockville Pike
Suite 108
Rockville, MD 20852-3004

and

SILVER SPRING SURGERY CENTER, LLC
1111 Spring Street
Suite 130
Silver Spring, MD 20910

and

URBANA GI ENDOSCOPY CENTER, LLC,
3280 Urbana Pike
Suite 104
Ijamsville, MD 21754

and

ADVANCED SURGERY CENTER, LLC,
10110 Molecular Drive 100
Rockville, MD 20850

Plaintiffs,

v.

AETNA, INC.
151 Farmington Avenue
Hartford, CT 06156

Defendant

DOCKET NO.:

CIVIL ACTION – LAW/EQUITY

Jury Trial Demanded

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERENCE SERVICE
MONTGOMERY COUNTY BAR ASSOCIATION
100 WEST AIRY STREET (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

THE MARTIN LAW FIRM, P.C.

By: ______________________
Jason B. Martin, Esquire
Attorney for Plaintiff

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP
11400 Rockville Pike
Suite 108
Rockville, MD 20852-3004

and

SILVER SPRING SURGERY CENTER, LLC
1111 Spring Street
Suite 130
Silver Spring, MD 20910

and

URBANA GI ENDOSCOPY CENTER, LLC,
3280 Urbana Pike
Suite 104
Ijamsville, MD 21754

and

ADVANCED SURGERY CENTER, LLC,
10110 Molecular Drive 100
Rockville, MD 20850

Plaintiffs,

v.

AETNA, INC.
151 Farmington Avenue
Hartford, CT 06156

Defendant

DOCKET NO.:

CIVIL ACTION – LAW/EQUITY

Jury Trial Demanded

**CIVIL ACTION - COMPLAINT**

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Plaintiffs, through their undersigned attorneys, for their Complaint at Law and in Equity against Defendant, allege the following based on their personal knowledge or upon information and belief based upon reasonable investigation:

## Introduction

1. Defendant illegally refused to pay Plaintiffs moneys that Defendant rightfully ought to have paid, as a matter of law and equity.

2. Defendant refused to pay these amounts because it illegally asserted the right to take a unilateral set-off based on an alleged prior "debt," even though Plaintiffs did not actually owe such prior "debt" and such "debt" related to other payments that were made to Plaintiffs for services provided to different patients involving other accounts.

## Parties

3. The Plaintiffs, Rockville Ambulatory Surgery, LP ("RAS"), Silver Spring Surgery Center, LLC ("SSSC"), Urbana GI Endoscopy Center, LLC ("UGI"), and Advanced Surgery Center, LLC ("Advanced"), are four ambulatory surgical centers ("ASCs") located and doing business in Maryland. Their addresses are, respectively, 11400 Rockville Pike, Ste. 108, Rockville, MD 20852-3004; 1111 Spring Street, Ste. 130, Silver Spring, MD 20910; and 3280 Urbana Pike, Ste. 104, Ijamsville, MD 21754; 10110 Molecular Drive 100, Rockville, MD 20850.

4. The Defendant, Aetna Inc. ("Aetna"), is a health insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its registered office at 980 Jolly Road, Blue Bell, PA 19422, which is in Montgomery County, and with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, Connecticut 06156.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

## Jurisdiction and Venue

5. The jurisdiction of this court is proper under 42 Pa. Cons. Stat. § 931(a).

6. Venue in this court is proper in that the Defendant's registered office is in Montgomery County, Pennsylvania and the Defendant regularly conducts business in Montgomery County, Pennsylvania.

## General Allegations

7. The ASCs were (and are) out-of-network providers when it comes to patients who are insured by health insurance plans issued by Aetna ("Aetna insureds"), such that the ASCs have not entered into any contractual relationship with Aetna to accept discounted billing rates for health care services provided to Aetna-insured patients.

8. Nevertheless, the ASCs provided medical or surgical care to many Aetna-insured patients.

9. Under the terms of these patients' insurance policies, they were entitled to insurance benefits from Aetna for medical care received from out-of-network providers such as the ASCs.

10. The ASCs, after providing medical services to these Aetna insureds, sent the bills to Aetna.

11. Aetna responded by processing the claims and sending the ASCs "Provider Explanation of Benefits" forms ("PEOB"), which specified how much of each total bill Aetna would pay.

12. Each PEOB also said that Aetna had issued payment to the ASC for that amount and attached a corresponding check.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

13. Until 2015, Aetna compensated the ASCs at a reasonable level derived primarily from the usual, customary, and reasonable rates ("UCR") for the medical services that they provided.

14. On February 1, 2015, Aetna adopted a new internal methodology for compensating out-of-network providers, pursuant to which it only paid 200% of Medicare. This led to a material reduction in reimbursements, well below the amount paid under the earlier methodology.

15. Aetna did not inform the ASCs of this new policy when it was adopted internally, however, and did not consistently follow this policy when processing claims submitted by the ASCs.

16. Instead, Aetna continued to reimburse the ASCs for at least some Aetna-insured patients (the "recoupment patients") at the previous higher rate.

17. At no time since announcing that it had reduced its fee schedule for out-of-network ASC services has Aetna disclosed what reimbursement methodology is required under its healthcare plans, nor has it explained how its new Medicare-based reimbursement policy is consistent with its plan documents.

18. Many Aetna plans do not permit reimbursement based on a percentage of Medicare. For example, many Aetna plans specify that out-of-network provider s will be paid based on a "Recognized Charge," defined as "the lesser of:

- What the provider bills or submits for that service or supply; and
- For professional services and other services or supplies not mentioned below: the 95th percentile of the Prevailing Charge Rate for the Geographic Area where the service is furnished."

19. Various Aetna plans then define the "Prevailing Charge Rate" as "rates reported by FAIR Health, a nonprofit company, in their database."

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

20. Aetna's reimbursement policy based on 200% of Medicare is inconsistent with and contrary to the "Prevailing Charge Rate" and the rates reported by FAIR Health, leading to far lower reimbursements for the ASCs than is permitted under the applicable health insurance plans.

21. Aetna did not assert that the relevant plan language had changed to justify the adoption of the new reimbursement policy and there is no evidence that it has.

22. Nevertheless, based on this unilateral change in methodology, Aetna insisted after-the-fact that it had been overpaying the ASCs on behalf of the recoupment patients since February 1, 2015, when it adopted its internal policy changing its payment methodology, and demanded that the ASCs refund the difference between what Aetna had paid and what it now said it should have paid.

23. The ASCs maintained that, since the payments received from Aetna had been in partial payment for the medical services rendered to the earlier Aetna insureds, the ASCs were entitled to keep the money, and so refused Aetna's demands for refunds.

24. The ASCs continued to provide medical care to different Aetna insureds ("setoff patients"), and continued to send the bills for those services to Aetna.

25. Aetna continued to respond by processing the claims and sending PEOBs to the ASCs, in which Aetna agreed to pay part of the bill, albeit generally a lesser part based on the 200% of Medicare compensation policy, and in which Aetna said that it had "issued" payment to the ASCs for that amount.

26. As reflected in the PEOBs, Aetna had processed the new claims submitted by the ASCs, determined that the ASCs had provided covered services under the applicable health

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

insurance plans, and therefore found that benefit payments for such services were due and owing to the ASCs and purported to "issue" such amounts to the ASCs.

27. Aetna, however, did not attach checks in those amounts.

28. Instead, Aetna explained that, because it still believed that it was owed money by the ASCs to repay the earlier alleged overpayments, it was reducing the payments for the setoff patients to set off these alleged "debts."

29. Attached as **EXHIBIT A** is an example of a PEOB sent to one of the ASCs (redacted to exclude patient-identifying information). This form is similar to the PEOBs at issue in this action with regard to each ASC.

30. In the example, Aetna shows that a claim was submitted by Advanced, which Aetna then processed and determined that benefits were due and owing to Advanced. The PEOB therefore represented that Aetna had "issued" $11,347.12 to Advanced for the services it had provided to the Aetna-insured patient.

31. As the example further shows, Aetna did not then send an actual check to Advance, but instead engaged in a unilateral setoff by applying the amount that was due and owing to Advanced to a "debt" that Aetna unilaterally asserted was owed by Advance for a previous benefit payment that had been issued for a different patient.

32. Aetna made these setoffs unilaterally, such that there was no independent or judicial verification that that there had been an overpayment or that any debt existed at all.

33. The setoff patients and the recoupment patients were different people.

34. Aetna refused to pay on behalf of one patient in order to recover what it alleged were overpayments made on behalf of a different patient.

35. The setoffs Aetna made (and continues to make) were not for the same accounts and often were not for the same insurance plans or policies.

36. For some setoff patients, Aetna issued PEOBs agreeing to pay a portion of those setoff patients' bills, but then said that it was setting off that payment to recover an earlier alleged overpayment from a different recoupment patient.

37. Later still, Aetna claimed that the amount it had agreed to pay for that setoff patient, but which it had never paid, had been too high, and it demanded repayment of the alleged overpayment it had never actually made.

38. At no time did Aetna ever offer – either to the ASCs or to the recoupment patients or to the setoff patients – any explanation or rationale based on the terms of any of its insurance plans as to why it should only cover the treatments at 200% of Medicare instead of at the higher UCR level it had previously used.

39. Nor did Aetna ever demonstrate when processing new claims, issuing repayment demands, or taking setoffs that its plan terms had changed to allow it to alter its reimbursement policy.

40. With regard to all of the setoffs which were taken by Aetna, the alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the setoff patients.

41. No judicial action was taken by Aetna to verify or uphold the validity of the purported "debt," but Aetna instead relied on its unilateral and unsupported assertion that a debt existed.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

42. Moreover, none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment on behalf of a different plan or a different patient.

43. At all times relevant to this complaint, none of the setoff patients at issue in this action were covered by insurance policies or plans governed by the Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, 88 Stat. 829 (codified in part at 29 U.S.C. § 1001, *et al.*) ("ERISA").

44. RAS has suffered losses totaling at least $193,512.94 as a result of these setoffs.

45. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

46. SSSC has suffered losses totaling at least $33,219.63 as a result of these setoffs.

47. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

48. UGI has suffered losses totaling at least $102,890.72 as a result of these setoffs.

49. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy.

50. Advanced has suffered losses totaling at least $223,010.10 as a result of these setoffs.

51. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy and as more facts become available.

## <u>Specific Examples</u>

### <u>RAS Examples</u>

52. On April 9, 2015, RAS treated recoupment patient Alpha One.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

53. Patient Alpha One's insurance policy was not governed by ERISA.

54. RAS billed $24,621.50 to Aetna for this treatment.

55. On or about April 23, 2015, Aetna agreed to pay, and did pay, $22,388.52 of that bill.

56. On or about January 6, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $21,224.75 and demanding repayment in that amount.

57. RAS, maintaining its right to keep the money, refused to repay it.

58. On August 13, 2015, RAS treated recoupment patient Alpha Two.

59. Patient Alpha Two's insurance policy was not governed by ERISA.

60. RAS billed $28,621.00 to Aetna for this treatment.

61. On or about September 16, 2015, Aetna agreed to pay, and did pay, $26,124.68 of that bill.

62. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $24,901.50 and demanding repayment in that amount.

63. RAS, maintaining its right to keep the money, refused to repay it.

64. On October 8, 2015, RAS treated recoupment patient Alpha Three.

65. Patient Alpha Three's insurance policy was not governed by ERISA.

66. RAS billed $14,719.00 to Aetna for this treatment.

67. On or about September 16, 2015, Aetna agreed to pay, and did pay, $8,756.40 of that bill.

68. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $8,019.19 and demanding repayment in that amount.

69. RAS, maintaining its right to keep the money, refused to repay it.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

70. On January 11, 2016, RAS treated setoff patient Beta One.

71. Patient Beta One's insurance policy was not governed by ERISA.

72. RAS billed Aetna $28,421.50 for the procedure itself and $4,100.00 for the anesthesia.

73. On or about January 21, 2016, Aetna sent RAS a PEOB in which it agreed to pay $989.96 for the former and $804.01 for the latter and stated that it had issued payments to RAS in those amounts.

74. Later in that same January 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

75. Aetna based this refusal to pay in part on the grounds that Aetna still claimed to be owed $21,224.75 by RAS on account of the alleged overpayment made on behalf of Patient Alpha One.

76. Aetna also based this refusal to pay on the grounds that Aetna still claimed to be owed other moneys on account of alleged overpayments made on behalf of another recoupment patient, Patient Alpha Four.

77. Patient Alpha Four's insurance policy was not governed by ERISA.

78. The alleged overpayments combined exceeded the combined $1,793.97 that Aetna owed RAS on behalf of patient Beta One.

79. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Four.

80. On April 18, 2016, RAS treated setoff patient Beta Two.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

81. Patient Beta Two's insurance policy was not governed by ERISA.

82. RAS billed $24,621.50 to Aetna for this treatment.

83. On or about May 12, 2016, Aetna sent RAS a PEOB in which it agreed to pay $15,428.50 of that bill and stated that it had issued payment to RAS in that amount.

84. Later in that same May 12, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

85. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $15,428.50 by RAS on account of the alleged overpayments made on behalf of patient Alpha One and patient Alpha Three, which exceeded the sum that it owed RAS on behalf of patient Beta Two.

86. Aetna declared that it was setting off the money it owed on behalf of setoff patient Beta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Three.

87. On July 11, 2016, RAS treated setoff patient Beta Three.

88. Patient Beta Three's insurance policy was not governed by ERISA.

89. RAS billed Aetna $25,731.50 for the procedure itself and $4,100.00 for the anesthesia.

90. On or about July 14, 2016, Aetna sent RAS a PEOB in which it agreed to pay $622.67 for the former and $3,075.00 for the latter and stated that it had issued payments to RAS in those amounts.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

91. Later in that same July 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

92. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by RAS on account of the alleged overpayment made on behalf of patient Alpha Two, which exceeded the combined $3,697.67 that it owed RAS on behalf of patient Beta Three.

93. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Alpha Two.

**<u>SSSC Examples</u>**

94. On February 3, 2016, SSSC treated recoupment patient Gamma One.

95. Patient Gamma One's insurance policy was not governed by ERISA.

96. Aetna billed $48,832.58 to Aetna for this treatment.

97. On or about February 18, 2016, Aetna agreed to pay, and did pay, $46,706.53 of that bill.

98. On or about May 11, 2016, Aetna wrote to SSSC claiming that it had overpaid that bill in the amount of $45,010.07 and demanding repayment in that amount.

99. SSSC, maintaining its right to keep the money, refused.

100. On May 20, 2016, SSSC treated setoff patient Delta One.

101. Patient Delta One's insurance policy was not governed by ERISA.

102. SSSC billed $23,426.50 to Aetna for this treatment.

103. On or about June 6, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $17,717.94 of that bill and stated that it had issued payment to SSSC in that amount.

104. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

105. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the $17,717.94 that it owed SSSC on behalf of patient Delta One.

106. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

107. On June 29, 2016, SSSC treated setoff patient Delta Two.

108. Patient Delta Two's insurance policy was not governed by ERISA

109. SSSC billed Aetna $25,016.78 for the procedure itself and $3,200.00 for the anesthesia.

110. On or about July 7, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $857.00 for the former and $3,200.00 for the latter and stated that it had issued payments to SSSC in those amounts.

111. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

112. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $4,057.00 that it owed SSSC on behalf of patient Delta Two.

113. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

114. On July 15, 2016, SSSC treated setoff patient Delta Three.

115. Patient Delta Three's insurance policy was not governed by ERISA.

116. SSSC billed Aetna $27,363.38 for the procedure itself and $4,100.00 for the anesthesia.

117. On or about July 21, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $1,539.76 for the former and $3,863.26 for the latter and stated that it had issued payments to SSSC in those amounts.

118. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

119. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $5,403.02 that it owed SSSC on behalf of patient Delta Three.

120. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

**UGI Examples**

121. On September 1, 2015, UGI treated recoupment patient Epsilon One.

122. Patient Epsilon One's insurance policy was not governed by ERISA.

123. UGI billed $31,101.00 to Aetna for this treatment.

124. On or about October 8, 2015, Aetna agreed to pay, and did pay, $31,101.00 of that bill.

125. On or about February 5, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $29,076.62 and demanding repayment in that amount.

126. UGI, maintaining its right to keep the money, refused.

127. On October 22, 2016, UGI treated recoupment patient Epsilon Two.

128. Patient Epsilon Two's insurance policy was not governed by ERISA.

129. UGI billed $19,801.00 to Aetna.

130. On or about November 12, 2015, Aetna agreed to pay, and did pay, $5,940.30 of that bill.

131. On or about March 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $4,988.23 and demanding repayment in that amount.

132. UGI, maintaining its right to keep the money, refused.

133. On July 22, 2016, UGI treated setoff patient Zeta One.

134. Patient Zeta One's insurance policy was not governed by ERISA.

135. UGI billed Aetna $25,451.00 for the procedure itself and $2,800.00 for the anesthesia.

136. On or about August 11, 2016, Aetna sent UGI a PEOB in which it agreed to pay $25,451.00 for the former and $2,800.00 for the latter and stated that it had issued payments to UGI in those amounts.

137. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

138. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayments made on behalf of various recoupment patients, including patient Epsilon One.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

139. Aetna declared that it was setting off $907.84 it owed on behalf of setoff patient Zeta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon One.

140. Aetna also refused to pay the rest of the moneys it owed on behalf of patient Zeta One in order to set off alleged overpayments from other recoupment patients.

141. Despite having never paid anything on behalf of patient Zeta One, on November 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $22,469.10 and demanding repayment in that amount.

142. On November 3, 2016, UGI treated setoff patient Zeta Two.

143. Patient Zeta Two's insurance policy was not governed by ERISA.

144. UGI billed $21,751.00 to Aetna for this treatment.

145. On or about November 17, 2016, Aetna sent UGI a PEOB in which it agreed to pay $769.45 of that bill and stated that it had issued payments to UGI in that amount.

146. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

147. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayment made on behalf recoupment patient Epsilon Two.

148. Aetna declared that it was setting off the $769.45 it owed on behalf of setoff patient Zeta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon Two.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

**Advanced Examples**

149. On 19, 2015, Advanced treated recoupment patient Eta One (all patient names have been replaced with aliases in the interest of patient privacy).

150. Patient Eta One's insurance policy was not governed by ERISA.

151. Advanced billed $32,654.00 to Aetna for this treatment.

152. On or about September 24, 2015, Aetna agreed to pay, and did pay, $30,794.00 of that bill, plus 1,995.50 in regulatory late penalties, for a total of $32,793.50 that Aetna paid.

153. On or about November 23, 2015, Aetna wrote to Advanced claiming that it had overpaid that bill in the amount of $31,849.38 and demanding repayment in that amount.

154. Advanced, maintaining its right to keep the money, refused to repay it.

155. On June 30, 2015, Advanced treated setoff patient Theta One.

156. Patient Theta One's insurance policy was not governed by ERISA.

157. Advanced billed Aetna $12,704.00 for this treatment.

158. On or about November 24, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $12,574.00 of that bill plus $351.39 in regulatory late penalties, for a total of $12,925.39, and stated that it had issued payment to Advanced in that amount.

159. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

160. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $12,925.39 by Advanced on account of the alleged overpayments made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta One.

161. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta One in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

162. On October 9, 2015, Advanced treated setoff patient Theta Two.

163. Patient Theta Two's insurance policy was not governed by ERISA.

164. Advanced billed Aetna $1,000.02 for this treatment.

165. On or about December 2, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $130.06 of that bill and stated that it had issued payment to Advanced in that amount.

166. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

167. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $130.06 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Two.

168. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Two in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

169. On September 25, 2015, Advanced treated setoff patient Theta Three.

170. Patient Theta Three's insurance policy was not governed by ERISA.

171. Advanced billed Aetna $11,804.00 for this treatment.

172. On or about December 10, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $11,347.12 of that bill and stated that it had issued payment to Advanced in that amount.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

173. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

174. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $11,347.12 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Three.

175. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Three in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

176. On May 5, 2015, Advanced treated setoff patient Theta Four.

177. Patient Theta Four's insurance policy was not governed by ERISA.

178. Advanced billed Aetna $11,804.00 for this treatment.

179. On or about December 15, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $10,474.69 of that bill and stated that it had issued payment to Advanced in that amount.

180. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

181. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed at least $5,447.31 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, plus at least $5,027.38 on account of an alleged overpayment made on behalf of another recoupment patient, Eta Two, which together equaled or exceeded the sum that it owed Advanced on behalf of patient Theta Four.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

182. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Four in order to recoup the money it claimed to be owed on behalf of recoupment patients Eta One and Eta Two.

**Count I – Unjust Enrichment/Quantum Meruit**

183. Paragraphs 1 through 182 are incorporated herein as though fully set forth.

184. Aetna has, in effect, received through the setoffs money from the ASCs.

185. If Aetna did in fact pay more than it should have under its contracts with the recoupment patients, then it should have sought recovery from them, not from the ASCs.

186. The ASCs were entitled to have their bills paid.

187. By setting off payments to the ASCs that Aetna should have made on behalf of the setoff patients, Aetna has benefited at the expense of the ASCs.

188. As such, the ASCs have conferred substantial benefit upon Aetna.

189. Aetna has retained this benefit: the moneys are still in Aetna's possession, or Aetna has benefited financially by "recovering" the alleged overpayments on behalf of the Plans that Aetna unilaterally asserted had been overpaid and receiving compensation for such services.

190. Aetna has been unjustly enriched at the expense of the ASCs.

191. Due to Aetna's unjust enrichment, the ASCs are entitled to proper compensation.

192. Aetna's unjust enrichment at the ASCs expense has damaged the ASCs.

193. The value of the moneys Aetna received through the setoffs is at least $552,633.39.

194. Aetna has refused to pay the ASCs the value of this money.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count II – Money Had and Received**

195. Paragraphs 1 through 194 are incorporated herein as though fully set forth.

196. At all times relevant to this claim, none of the setoff patients at issue in this claim were covered by insurance policies or plans governed by ERISA.

197. Aetna has in its possession moneys that it agreed in the PEOBs to pay to the ASCs, or it received financial benefits from "recovering" funds that are the property of the ASCs and giving it to health insurance plans which Aetna unilaterally asserted had overpaid Plaintiffs.

198. The ASCs earned this money by providing medical care to the setoff patients.

199. In equity and good conscience, the moneys in question belong to the ASCs.

200. Aetna ought, in equity and good conscience, to pay the moneys in question to the ASCs.

201. Aetna, however, has refused to make the payments to the ASCs.

202. If Aetna is correct that it overpaid on behalf of the recoupment patients and that it is entitled to be reimbursed for those overpayments, then the parties who were obligated to reimburse Aetna were the recoupment patients.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

203. By setting off moneys that ought to have been paid to the ASCs on behalf of the setoff patients, Aetna was wrongfully diverting those moneys from their proper use to pay the alleged obligations of the recoupment patients.

204. The recoupment patients gave no consideration for having had their alleged obligations thereby reduced.

205. The moneys in question constructively passed through the hands of the recoupment patients but are now in the possession of Aetna.

206. The value of the moneys in question is at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**<u>Count III – Breach of Implied-in-Fact Contract</u>**

207. Paragraphs 1 through 206 are incorporated herein as though fully set forth.

208. In sending their bills to Aetna, both for the recoupment patients and the setoff patients, the ASCs were offering to withhold billing the patients until Aetna had processed and paid the claims and not to bill the Aetna-insured patients for the amount of the bills that Aetna ultimately agreed to pay.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

209. In processing the claims, determining the amount that is owed from the underlying insurance plan to the ASCs, and sending the PEOBs to the ASCs in which it represented that the funds had been "issued" to the ASCs, Aetna accepted these offers.

210. This established valid and enforceable contracts between Aetna and the ASCs.

211. By paying what it agreed to in the PEOBs Aetna sent on behalf of the recoupment patients, Aetna performed under those contracts.

212. By refusing, however, to pay what it agreed to in the PEOBs Aetna sent on behalf of the setoff patients, despite having represented that these funds were "issued" to the ASCs, Aetna breached those contracts.

213. The ASCs have demanded payment under the terms of these contracts.

214. Aetna has processed the claims and determined the amounts that are due and owing to the ASCs under the applicable health insurance plans, but has refused to make payment.

215. The ASCs have been injured by the refusal of the Defendant to make the payments required under the contracts.

216. The amount of the injuries in question totals at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against the Defendant in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count IV – Conversion**

217. Paragraphs 1 through 216 are incorporated herein as though fully set forth.

218. Aetna deprived the ASCs of their right of property and their right of use and possession of the moneys that Aetna set off.

219. The ASCs did not consent to this deprivation, and Aetna had no legal right or justification for making the setoffs.

220. The PEOBs that Aetna sent, by declaring that it had already issued payments to the ASCs on behalf of the setoff patients, gave the ASCs constructive possession of the moneys at issue.

221. By sending the letters to the ASCs, Aetna engaged in a physical act to withhold possession of the moneys owing to the ASCs.

222. In so doing, Aetna exercised dominion over the moneys, in defiance of the ASCs' rights.

223. By depriving the ASCs of their rights to the moneys that Aetna set off, Aetna has damaged the ASCs in the amount of at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count V – Misappropriation**

224. Paragraphs 1 through 223 are incorporated herein as though fully set forth.

225. The ASCs made substantial investments of time, effort, and money into treating both the recoupment patients and the setoff patients.

226. Every procedure the ASCs performed took time and effort on the part of the physicians who work for the ASCs.

227. The ASCs had to invest substantial money into setting up their surgical facilities.

228. This investment of time, effort, and money created value for the recoupment patients and the setoff patients.

229. Aetna appropriated that value by leading the ASCs to believe that they would be reimbursed by Aetna for treating the recoupment patients and the setoff patients, and then not reimbursing them.

230. It cost Aetna very little effort for Aetna to engage in its misappropriation of the ASCs' assets: all Aetna had to do was send the PEOBs to the ASCs in which it represented that payments had been "issued," and then not pay what Aetna had promised to pay.

231. This misappropriation has injured the ASCs: they have not been compensated for the value that they created by providing medical care to the recoupment patients and the setoff patients.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

232. The total amount of this injury is at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count VI – Declaratory and Injunctive Relief**

233. Paragraphs 1 through 232 are incorporated herein as though fully set forth.

234. The ASCs provided medical services to their patients, including both the recoupment patients and the setoff patients, and were entitled to have their bills paid in full.

235. The ASCs surrendered their claims to have their bills paid by their patients to the extent that Aetna paid those bills instead.

236. Aetna had full knowledge of the terms of its insurance contracts with both the recoupment patients and the setoff patients.

237. Aetna paid the bills of the recoupment patients of its own free will.

238. There was no fraud, duress, or any wrongdoing by the ASCs, the recoupment patients, the setoff patients, or anyone else.

239. If Aetna had been mistaken as the extent of its obligations to indemnify the recoupment patients, then Aetna itself was solely responsible for that mistake.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

240. The alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the offset patients and no judicial action was taken by Aetna to verify or uphold the validity of the purported "debt.".

241. Aetna was not entitled to recover the overpayments through self-help at the expense of either the ASCs or the setoff patients.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Declaring that Aetna had no right to set off the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

b. Enjoining Aetna from making any more setoffs of the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

c. Granting Plaintiffs their expenses, including court costs incurred in connection with this action; and

d. Granting such other relief as the Court deems equitable and just.

Dated: March 30, 2017

Respectfully Submitted,

THE MARTIN LAW FIRM, P.C.

By: ______________________

Jason B. Martin, Esquire
Attorney ID: 82767
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
(215) 646-3980
*Attorney for Plaintiffs*

ZUCKERMAN SPAEDER, LLP
D. Brian Hufford, Esquire
(pro hac vice pending)
399 Park Avenue, 14th floor
New York, NY 10022
(212) 704-9600
*Attorney for Plaintiffs*

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

# VERIFICATION

I, Dr. Ajay Bakshi state that I am the General Partner of Advanced Surgical Center , LLC, the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dr. Ajay Bakshi

Dated: 3/31/17

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

VERIFICATION

I, Dr. Charles Obioha, state that I am the General Partner/Medical Director of Rockville Ambulatory Surgery, LP, and Silver Spring Surgery Center, LLC, two of the Plaintiffs herein; that I am authorized to make this verification on their behalf; and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dr. Charles Obioha

Dated: 3/31/17

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

# VERIFICATION

I, [illegible], MD state that I am the [illegible] Medical Director of [illegible] [redacted] LLC the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dated: 3/31/17

[signature]

# EXHIBIT A

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

aetna® P.O. BOX 981106
EL PASO TX 79998-1106
USA

# Explanation Of Benefits

*Please Retain for Future Reference*

Printed: 12/10/2015
Page: 1 of 2

ADVANCED SURGERY CENTER
PIN: Redacted
TIN: Redacted
NO PAY

ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

Notes:
Update your address, telephone number, e-mail address and/or NPI information by visiting our website.

***Patient Name:*** Theta Three *(spouse)*

Claim ID: Redacted Recd: 11/16/15 Member ID: Redacted Patient Account: Redacted
Member: Theta Three Spouse DIAG: 535.00
Group Name: **PAN AMERICAN HEALTH ORGANIZATION** Group Number: Redacted
Product: **Aetna Choice® POS II** Network ID: **00000**
**Aetna Life Insurance Company**

| SERVICE DATES | PL | SERVICE CODE | NUM. SVCS | SUBMITTED CHARGES | ALLOWABLE AMOUNT | COPAY AMOUNT | NOT PAYABLE | SEE REMARKS | DEDUCTIBLE | CO INSURANCE | PATIENT RESP | PAYABLE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/25/15 | 24 | 250 | 1.0 | 425.00 | | | | | | 85.00 | 85.00 | 340.00 |
| 09/25/15 | 24 | 258 | 1.0 | 130.00 | | | | | | 26.00 | 26.00 | 104.00 |
| 09/25/15 | 24 | 270 | 1.0 | 320.00 | | | | | | 64.00 | 64.00 | 256.00 |
| 09/25/15 | 24 | 270 | 1.0 | 110.00 | | | | | | 22.00 | 22.00 | 88.00 |
| 09/25/15 | 24 | 270 | 1.0 | 419.00 | | | | | | 83.80 | 83.80 | 335.20 |
| 09/25/15 | 24 | 360 | 1.0 | 6,650.00 | | | | | | 176.08 | 176.08 | 6,473.92 |
| 09/25/15 | 24 | 710 | 1.0 | 3,325.00 | | | | | | | | 3,325.00 |
| 09/25/15 | 24 | 730 | 1.0 | 150.00 | | | | | | | | 150.00 |
| 09/25/15 | 24 | 730 | 1.0 | 275.00 | | | | | | | | 275.00 |
| **TOTALS** | | | | 11,804.00 | | | | | | [illegible] | 456.88 | 11,347.12 |

**ISSUED AMT:** **$11,347.12**

**For Questions Regarding This Claim**
P.O. BOX 981543 EL PASO, TX 79998-1543 USA
***CALL (800) 231-7729*** FOR ASSISTANCE
*Note: All inquires should reference the ID number above for prompt response.*

Total Patient Responsibility: $456.88
Claim Payment: $11,347.12

Recovered From This Payment $11,347.12

| EXPLANATION OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITY | | | | | |
|---|---|---|---|---|---|
| Overpayments or Payment Corrections Due From Prior Claims | Refunds Received | Refunds Added to Payment | Overpayment or Payment Correction Adjustment Amount | Recovered From This Payment | Remaining Overpayment or Payment Correction Balance |
| $31,568.03 | $0.00 | $0.00 | $0.00 | $11,347.12 | $34,382.11 |

DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES

Member Name Eta One
Patient Account Number: Redacted Notification ID Redacted
Member ID Number: Redacted Date of Service: 03/19/15 Claim ID: Redacted EOB Date 11/01/14 Remark: 1
Plan Amount -$11,347.12

***Continued on Next Page***

aetna

P.O. BOX 981106
EL PASO TX 79998-1106
USA

**Mailing Address:**
ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

## Explanation Of Benefits

*Please Retain for Future Reference*

**Printed:** 12/10/2015
**Page:** 2 of 2

*ADVANCED SURGERY CENTER*
**PIN:** Redacted
**TIN:** Redacted
NO PAY

| DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES | | |
|---|---|---|
| | TOTAL | -$11,347.12 |
| 1 This overpayment deduction is the result of a correction to a previously processed claim. Please review the detailed communication previously sent containing the Notification ID indicated here | | |

Protecting the privacy of member health information is a top priority. When contacting us about this statement or for help with other questions, please be prepared to provide your provider number, tax identification number (TIN), or Social Security number (SSN), in addition to the member's ID number.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00