# EXHIBIT 2

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY LP<br><br>vs.<br><br>AETNA INC | NO. 2017-06786 |

# NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY, LP<br>11400 Rockville Pike<br>Suite 108<br>Rockville, MD 20852-3004<br><br>and<br><br>SILVER SPRING SURGERY CENTER, LLC<br>1111 Spring Street<br>Suite 130<br>Silver Spring, MD 20910<br><br>and<br><br>URBANA GI ENDOSCOPY CENTER, LLC,<br>3280 Urbana Pike<br>Suite 104<br>Ijamsville, MD 21754<br><br>and<br><br>ADVANCED SURGERY CENTER, LLC,<br>10110 Molecular Drive 100<br>Rockville, MD 20850<br><br>Plaintiffs,<br><br>v.<br><br>AETNA, INC.<br>151 Farmington Avenue<br>Hartford, CT 06156<br><br>Defendant | DOCKET NO.: 2017-06786<br><br>CIVIL ACTION – LAW/EQUITY<br><br>Jury Trial Demanded |

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERENCE SERVICE
MONTGOMERY COUNTY BAR ASSOCIATION
100 WEST AIRY STREET (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

THE MARTIN LAW FIRM, P.C.

By: ______________________
Jason B. Martin, Esquire
Attorney for Plaintiff



6784335.2

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP
11400 Rockville Pike
Suite 108
Rockville, MD 20852-3004

and

SILVER SPRING SURGERY CENTER, LLC
1111 Spring Street
Suite 130
Silver Spring, MD 20910

and

URBANA GI ENDOSCOPY CENTER, LLC,
3280 Urbana Pike
Suite 104
Ijamsville, MD 21754

and

ADVANCED SURGERY CENTER, LLC,
10110 Molecular Drive 100
Rockville, MD 20850

Plaintiffs,

v.

AETNA, INC.
151 Farmington Avenue
Hartford, CT 06156

Defendant

DOCKET NO.: 2017-06786

CIVIL ACTION – LAW/EQUITY

Jury Trial Demanded

**CIVIL ACTION – AMENDED COMPLAINT**

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiffs, through their undersigned attorneys, for their Complaint at Law and in Equity against Defendant, allege the following based on their personal knowledge or upon information and belief based upon reasonable investigation:

## Introduction

1. Defendant illegally refused to pay Plaintiffs moneys that Defendant rightfully ought to have paid, as a matter of law and equity, pursuant to the terms of health insurance policies that Defendant administered.

2. Defendant refused to pay these amounts because it illegally asserted the right to take a unilateral set-off based on an alleged prior "debt" Plaintiffs purportedly owed for a prior payment issued on behalf of a different patient, even though Plaintiffs did not actually owe such prior "debt" and such "debt" related to other payments that were made to Plaintiffs for services provided to different patients involving other accounts.

3. Defendant engaged in its cross-plan offset policy with respect to insurance plans issued by or on behalf of private employers which are subject to the Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, 88 Stat. 829 (codified in part at 29 U.S.C. § 1001, *et al.*) ("ERISA"), as well as to ERISA-exempt insurance plans, including those that were issued by or on behalf of government or church entities or those issued directly to individuals.

4. For many of the offsets taken by Defendant, they were done so by taking the assets from one insurance plan and applying them toward the alleged overpayment previously made by a different plan (a "cross-plan offset"). Defendant's offsets violate ERISA with regard to the ERISA plans and applicable state law with regard to the ERISA-exempt plans.

## Parties

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5. The Plaintiffs, Rockville Ambulatory Surgery, LP ("RAS"), Silver Spring Surgery Center, LLC ("SSSC"), Urbana GI Endoscopy Center, LLC ("UGI"), and Advanced Surgery Center, LLC ("Advanced"), are four ambulatory surgical centers ("ASCs") located and doing business in Maryland. Their addresses are, respectively, 11400 Rockville Pike, Ste. 108, Rockville, MD 20852-3004; 1111 Spring Street, Ste. 130, Silver Spring, MD 20910; and 3280 Urbana Pike, Ste. 104, Ijamsville, MD 21754; 10110 Molecular Drive 100, Rockville, MD 20850.

6. The Defendant, Aetna Inc. ("Aetna"), is a health insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its registered office at 980 Jolly Road, Blue Bell, PA 19422, which is in Montgomery County, and with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, Connecticut 06156.

**Jurisdiction and Venue**

7. The jurisdiction of this court is proper under 42 Pa. Cons. Stat. § 931(a) and 29 U.S.C. § 1132(e)(1).

8. Venue in this court is proper in that the Defendant's registered office is in Montgomery County, Pennsylvania and the Defendant regularly conducts business in Montgomery County, Pennsylvania.

**General Allegations**

9. Defendant Aetna is a fully integrated company that is in the business of insuring and administering health insurance plans, many of which are employer-sponsored and governed by ERISA ("Aetna Plans" or "Plan").

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10. Under the terms of the Aetna Plans at issue, Aetna is obligated to make benefit payments from its own assets (in the case of fully-insured Aetna Plans) or the assets of the Plan itself (in the case of self-insured Aetna Plans) when an Aetna insured obtains health care treatment that is covered by the terms of that Plan (a "Covered Service"). With respect to all Aetna Plans at issue, Aetna serves as the claims administrator, responsible for determining whether any claim is covered by any particular Aetna Plan and effectuating any resulting benefit payment. With respect to the ERISA plans, Aetna operates as an ERISA fiduciary with respect to the Aetna Plans at issue.

11. The ASCs were (and are) out-of-network providers when it comes to Aetna-insured patients, such that the ASCs have not entered into any contractual relationship with Aetna to accept discounted billing rates for health care services provided to Aetna-insured patients.

12. Nevertheless, the ASCs provided medical or surgical care to many Aetna-insured patients.

13. Under the terms of these patients' insurance policies, they were entitled to insurance benefits from Aetna for medical care received from out-of-network providers such as the ASCs.

14. The ASCs, after providing medical services to these Aetna insureds, sent the bills to Aetna. Prior to doing so, each ASC obtained signed forms from the Aetna insured which assigned the right to benefit payments under the insurance policies to the ASCs and/or designated the ASCs as the insureds' Authorized Representative to pursue legal claims for appropriate benefit payments on behalf of the insureds. These forms gave the ASCs the legal right to pursue the claims asserted herein.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

15. Aetna responded by processing the claims and sending the ASCs "Provider Explanation of Benefits" forms ("PEOB"), which specified how much of each total bill Aetna would pay.

16. Each PEOB also said that Aetna had issued payment to the ASC for that amount and attached a corresponding check.

17. Until 2015, Aetna compensated the ASCs at a reasonable level derived primarily from the usual, customary, and reasonable rates ("UCR") for the medical services that they provided.

18. On February 1, 2015, Aetna adopted a new internal methodology for compensating out-of-network providers, pursuant to which it only paid 200% of Medicare. Aetna adopted this new reimbursement policy without regard to the terms and conditions of the health insurance plans to which the reimbursement policy was to be applied. This led to a material reduction in reimbursements, well below the amount paid under the earlier methodology.

19. Aetna did not inform the ASCs of this new policy when it was adopted internally, however, and did not consistently follow this policy when processing claims submitted by the ASCs.

20. Instead, Aetna continued to reimburse the ASCs for at least some Aetna-insured patients (the "recoupment patients") at the previous higher rate.

21. At no time since announcing that it had reduced its fee schedule for out-of-network ASC services has Aetna disclosed what reimbursement methodology is required under its healthcare plans, nor has it explained how its new Medicare-based reimbursement policy is consistent with its plan documents.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

22. Many Aetna plans do not permit reimbursement based on a percentage of Medicare. For example, many Aetna plans specify that out-of-network provider s will be paid based on a "Recognized Charge," defined as "the lesser of:

- What the provider bills or submits for that service or supply; and
- For professional services and other services or supplies not mentioned below: the 95th percentile of the Prevailing Charge Rate for the Geographic Area where the service is furnished."

23. Various Aetna plans then define the "Prevailing Charge Rate" as "rates reported by FAIR Health, a nonprofit company, in their database."

24. Aetna's reimbursement policy based on 200% of Medicare is inconsistent with and contrary to the "Prevailing Charge Rate" and the rates reported by FAIR Health, leading to far lower reimbursements for the ASCs than is permitted under the applicable health insurance plans.

25. Aetna did not assert that the relevant plan language had changed to justify the adoption of the new reimbursement policy and there is no evidence that it has.

26. Nevertheless, based on this unilateral change in methodology, Aetna insisted after-the-fact that it had been overpaying the ASCs on behalf of the recoupment patients since February 1, 2015, when it adopted its internal policy changing its payment methodology, and demanded that the ASCs refund the difference between what Aetna had paid and what it now said it should have paid. Aetna issued this repayment demand notwithstanding that any purported overpayment resulted solely from Aetna's own failure to apply its internal policy and without Plaintiffs having any responsibility for Aetna's purported overpayments.

27. The ASCs maintained that, since the payments received from Aetna had been in partial payment for the medical services rendered to the earlier Aetna insureds, the ASCs were entitled to keep the money, and so refused Aetna's demands for refunds.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

28. The ASCs continued to provide medical care to different Aetna insureds ("setoff patients"), and continued to send the bills for those services to Aetna.

29. Aetna continued to respond by processing the claims and sending PEOBs to the ASCs, in which Aetna agreed to pay part of the bill, albeit generally a lesser part based on the 200% of Medicare compensation policy, and in which Aetna said that it had "issued" payment to the ASCs for that amount.

30. As reflected in the PEOBs, Aetna had processed the new claims submitted by the ASCs, determined that the ASCs had provided covered services under the applicable health insurance plans, and therefore found that benefit payments for such services were due and owing to the ASCs and purported to "issue" such amounts to the ASCs.

31. Aetna, however, did not attach checks in those amounts.

32. Instead, Aetna explained that, because it still believed that it was owed money by the ASCs to repay the earlier alleged overpayments by different insurance plans that Aetna administered, it was reducing the payments for the setoff patients that were owed by the new and unrelated insurance plans to set off these alleged "debts."

33. The written terms of these Aetna Plans do not allow Aetna to withhold benefit payments owed by those Plans for Covered Services rendered to a patient insured by one of those Plans, simply because Aetna unilaterally alleges that the insured's provider may owe a debt to a different Aetna insured or a different Aetna Plan with respect to benefits previously paid by that Plan for services rendered by the provider to a different Aetna insured.

34. These unilateral "cross-plan offsets" reflect Aetna's enterprise-level policy with respect to recovery of any payment it believes – without validation by any court or other independent third party – was overpaid by any Aetna Plan. These cross-plan offsets not only

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

violate the terms of the Aetna Plans at issue, reflecting a breach of contract under state law, but also ERISA, including Aetna's fiduciary duties. Taking funds from one Plan to benefit Aetna and/or Aetna's other plan customers violates ERISA.

35. Attached as Exhibit A is an example of a PEOB sent to one of the ASCs (redacted to exclude patient-identifying information). This form is similar to the PEOBs at issue in this action with regard to each ASC.

36. In the example, Aetna shows that a claim was submitted by Advanced, which Aetna then processed and determined that benefits were due and owing to Advanced. The PEOB therefore represented that Aetna had "issued" $11,347.12 to Advanced for the services it had provided to the Aetna-insured patient.

37. As the example further shows, Aetna did not then send an actual check to Advance, but instead engaged in a unilateral setoff by applying the amount that was due and owing to Advanced to a "debt" that Aetna unilaterally asserted was owed by Advance for a previous benefit payment that had been issued for a different patient.

38. Aetna made these setoffs unilaterally, such that there was no independent or judicial verification that that there had been an overpayment or that any debt existed at all.

39. The setoff patients and the recoupment patients were different people and in the vast majority of occasions were insured under different and unrelated insurance policies.

40. Aetna refused to pay on behalf of one patient in order to recover what it alleged were overpayments made on behalf of a different patient.

41. The setoffs Aetna made (and continues to make) were not for the same accounts and often were not for the same insurance plans or policies.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

42. For some setoff patients, Aetna issued PEOBs agreeing to pay a portion of those setoff patients' bills, but then said that it was setting off that payment to recover an earlier alleged overpayment from a different recoupment patient.

43. Later still, Aetna claimed that the amount it had agreed to pay for that setoff patient, but which it had never paid, had been too high, and it demanded repayment of the alleged overpayment it had never actually made.

44. At no time did Aetna ever offer – either to the ASCs or to the recoupment patients or to the setoff patients – any explanation or rationale based on the terms of any of its insurance plans as to why it should only cover the treatments at 200% of Medicare instead of at the higher UCR level it had previously used.

45. Nor did Aetna ever demonstrate when processing new claims, issuing repayment demands, or taking setoffs that its plan terms had changed to allow it to alter its reimbursement policy.

46. With regard to all of the setoffs which were taken by Aetna, the alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the setoff patients.

47. No judicial action was taken by Aetna to verify or uphold the validity of the purported "debt," but Aetna instead relied on its unilateral and unsupported assertion that a debt existed.

48. Moreover, none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment on behalf of a different plan or a different patient.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

49. At all times relevant to this complaint, some of the setoff patients at issue in this action were covered by insurance policies or plans governed by ERISA and others were not.

50. RAS has suffered losses totaling at least $303,836.77 as a result of these setoffs.

51. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

52. SSSC has suffered losses totaling at least $125,873.59 as a result of these setoffs.

53. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

54. UGI has suffered losses totaling at least $563,987.20 as a result of these setoffs.

55. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy.

56. Advanced has suffered losses totaling at least $829,931.62 as a result of these setoffs.

57. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy and as more facts become available.

58. Aetna has consistently and historically honored assignments of benefits to Plaintiffs by, *inter alia*, treating Plaintiffs as having obtained the right to the insurance benefits of its Aetna Insured patients and paying Plaintiffs directly. Aetna has never objected to Plaintiffs submitting claims directly to it seeking benefits for Covered Services rendered by Plaintiffs to its Aetna insured patients; has not insisted that such claims be submitted by Plaintiffs' patients; and has never invoked any purported "anti-assignment" provision of its Plans. Rather, Aetna allows Plaintiffs to submit all claims for services rendered to Aetna insureds to Aetna for benefit adjudication. When Aetna has questions about the medical services provided or their medical

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

necessity, or a dispute arises over a payment, Aetna routinely contacts Plaintiffs to resolve these questions and not its Aetna Insured patients.

59. Aetna also causes Aetna Plans to pay Plaintiffs directly when Aetna determines that Plaintiffs provided a Covered Service to Aetna insureds. It does so by sending Plaintiffs a check (drawn from the assets of such Aetna Plan) along with a Provider Explanation of Benefits ("PEOB"). Aetna has the discretion and authority to issue the check from the account it maintains regardless of whether the underlying plan is self-funded (in which the employer ultimately is financially responsible for the cost of benefits owed under the Aetna Plans) or fully-insured (in which Aetna pays the benefits from its own assets).

60. The PEOB discloses to Plaintiffs Aetna's decision for each claim submitted (*i.e.*, whether the claim was approved or denied) and the value of the corresponding covered benefit (which ordinarily corresponds to the value of the check made out to Plaintiffs). At the same time, Aetna sends Plaintiffs' Aetna-insured patient a corresponding Explanation of Benefits ("EOB"), which similarly discloses how the claim was resolved and the value of the corresponding benefit that was paid to Plaintiffs for providing Covered Services.

61. By engaging in its offset practices, Aetna has confirmed its acceptance of Plaintiffs as the party in interest with respect to the benefit payment. In particular, when Aetna takes an offset, it does so based on the conclusion that Plaintiffs are legally entitled to receive the funds, such that Aetna can then withhold those funds due to purported overpayments that had previously been issued to Plaintiffs on behalf of different insureds or from different Aetna Plans.

62. If Aetna had deemed the payment of benefits to Plaintiffs as merely an accommodation to the Aetna insureds whose claims were being paid, then those funds were actually owed to the Aetna insureds and not Plaintiffs. In so, that would mean that Aetna should

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

have sought to recover any overpayments from the patients, not Plaintiffs. Aetna's decision to seek the offsets based on payments to Plaintiffs therefore reflect that Aetna has waived any right to argue that Plaintiffs do not have the legal entitlement to those funds and to dispute Aetna's refusal to pay such funds to Plaintiffs.

63. In each of the offset claims at issue in this litigation, Aetna processed the claims under the terms of the applicable Aetna Plan, determined that benefits are owed under such Plan, and calculated the amount of such benefits that should be paid. Despite Aetna's resulting obligation to cause the Aetna Plans to actually make such benefit payments, however, Aetna refused. Instead, Aetna is engaged in an enterprise-level scheme whereby it illegally took such payments in order to "offset" what it believes to be prior overpayments to Plaintiffs made by different Aetna Plans relating to services provided to different Aetna Insureds. It has done so without any legal authority under the Aetna Plans or ERISA.

64. Plaintiffs disputes the validity of Aetna's retroactive determination that it has previously made overpayments to Plaintiffs. Regardless of whether Aetna has a basis for its overpayment determination, however, it cannot, in the absence of Plan language authorizing cross-plan offsets, legally engage in self-help by refusing to pay new and unrelated claims as a means to recover any unverified or substantiated overpayment made to a different Aetna Insured covered by a different Aetna Plan. Under ERISA, Aetna also cannot use one plan's assets to benefit another and/or itself.

**Specific Offset Examples**

65. The following examples are provided for each of the Plaintiffs. These examples represent the standard conduct that has been undertaken by Aetna in engaging in its offset policy with regard both to ERISA and non-ERISA plans.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**RAS Examples**

66. On April 9, 2015, RAS treated recoupment patient Alpha One.

67. RAS billed $24,621.50 to Aetna for this treatment.

68. On or about April 23, 2015, Aetna agreed to pay, and did pay, $22,388.52 of that bill.

69. On or about January 6, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $21,224.75 and demanding repayment in that amount.

70. RAS, maintaining its right to keep the money, refused to repay it.

71. On August 13, 2015, RAS treated recoupment patient Alpha Two.

72. RAS billed $28,621.00 to Aetna for this treatment.

73. On or about September 16, 2015, Aetna agreed to pay, and did pay, $26,124.68 of that bill.

74. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $24,901.50 and demanding repayment in that amount.

75. RAS, maintaining its right to keep the money, refused to repay it.

76. On October 8, 2015, RAS treated recoupment patient Alpha Three.

77. RAS billed $14,719.00 to Aetna for this treatment.

78. On or about September 16, 2015, Aetna agreed to pay, and did pay, $8,756.40 of that bill.

79. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $8,019.19 and demanding repayment in that amount.

80. RAS, maintaining its right to keep the money, refused to repay it.

81. On January 11, 2016, RAS treated setoff patient Beta One.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

82. RAS billed Aetna $28,421.50 for the procedure itself and $4,100.00 for the anesthesia.

83. On or about January 21, 2016, Aetna sent RAS a PEOB in which it agreed to pay $989.96 for the former and $804.01 for the latter and stated that it had issued payments to RAS in those amounts.

84. Later in that same January 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

85. Aetna based this refusal to pay in part on the grounds that Aetna still claimed to be owed $21,224.75 by RAS on account of the alleged overpayment made on behalf of Patient Alpha One.

86. Aetna also based this refusal to pay on the grounds that Aetna still claimed to be owed other moneys on account of alleged overpayments made on behalf of another recoupment patient, Patient Alpha Four.

87. The alleged overpayments combined exceeded the combined $1,793.97 that Aetna owed RAS on behalf of patient Beta One.

88. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Four.

89. On April 18, 2016, RAS treated setoff patient Beta Two.

90. RAS billed $24,621.50 to Aetna for this treatment.

91. On or about May 12, 2016, Aetna sent RAS a PEOB in which it agreed to pay $15,428.50 of that bill and stated that it had issued payment to RAS in that amount.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

92. Later in that same May 12, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

93. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $15,428.50 by RAS on account of the alleged overpayments made on behalf of patient Alpha One and patient Alpha Three, which exceeded the sum that it owed RAS on behalf of patient Beta Two.

94. Aetna declared that it was setting off the money it owed on behalf of setoff patient Beta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Three.

95. On July 11, 2016, RAS treated setoff patient Beta Three.

96. RAS billed Aetna $25,731.50 for the procedure itself and $4,100.00 for the anesthesia.

97. On or about July 14, 2016, Aetna sent RAS a PEOB in which it agreed to pay $622.67 for the former and $3,075.00 for the latter and stated that it had issued payments to RAS in those amounts.

98. Later in that same July 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

99. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by RAS on account of the alleged overpayment made on behalf of patient Alpha Two, which exceeded the combined $3,697.67 that it owed RAS on behalf of patient Beta Three.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

100. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Alpha Two.

**SSSC Examples**

101. On February 3, 2016, SSSC treated recoupment patient Gamma One.

102. Aetna billed $48,832.58 to Aetna for this treatment.

103. On or about February 18, 2016, Aetna agreed to pay, and did pay, $46,706.53 of that bill.

104. On or about May 11, 2016, Aetna wrote to SSSC claiming that it had overpaid that bill in the amount of $45,010.07 and demanding repayment in that amount.

105. SSSC, maintaining its right to keep the money, refused.

106. On May 20, 2016, SSSC treated setoff patient Delta One.

107. SSSC billed $23,426.50 to Aetna for this treatment.

108. On or about June 6, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $17,717.94 of that bill and stated that it had issued payment to SSSC in that amount.

109. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

110. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the $17,717.94 that it owed SSSC on behalf of patient Delta One.

111. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

112. On June 29, 2016, SSSC treated setoff patient Delta Two.

113. SSSC billed Aetna $25,016.78 for the procedure itself and $3,200.00 for the anesthesia.

114. On or about July 7, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $857.00 for the former and $3,200.00 for the latter and stated that it had issued payments to SSSC in those amounts.

115. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

116. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $4,057.00 that it owed SSSC on behalf of patient Delta Two.

117. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

118. On July 15, 2016, SSSC treated setoff patient Delta Three.

119. SSSC billed Aetna $27,363.38 for the procedure itself and $4,100.00 for the anesthesia.

120. On or about July 21, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $1,539.76 for the former and $3,863.26 for the latter and stated that it had issued payments to SSSC in those amounts.

121. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

122. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $5,403.02 that it owed SSSC on behalf of patient Delta Three.

123. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

**UGI Examples**

124. On September 1, 2015, UGI treated recoupment patient Epsilon One.

125. UGI billed $31,101.00 to Aetna for this treatment.

126. On or about October 8, 2015, Aetna agreed to pay, and did pay, $31,101.00 of that bill.

127. On or about February 5, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $29,076.62 and demanding repayment in that amount.

128. UGI, maintaining its right to keep the money, refused.

129. On October 22, 2016, UGI treated recoupment patient Epsilon Two.

130. UGI billed $19,801.00 to Aetna.

131. On or about November 12, 2015, Aetna agreed to pay, and did pay, $5,940.30 of that bill.

132. On or about March 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $4,988.23 and demanding repayment in that amount.

133. UGI, maintaining its right to keep the money, refused.

134. On July 22, 2016, UGI treated setoff patient Zeta One.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

135. UGI billed Aetna $25,451.00 for the procedure itself and $2,800.00 for the anesthesia.

136. On or about August 11, 2016, Aetna sent UGI a PEOB in which it agreed to pay $25,451.00 for the former and $2,800.00 for the latter and stated that it had issued payments to UGI in those amounts.

137. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

138. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayments made on behalf of various recoupment patients, including patient Epsilon One.

139. Aetna declared that it was setting off $907.84 it owed on behalf of setoff patient Zeta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon One.

140. Aetna also refused to pay the rest of the moneys it owed on behalf of patient Zeta One in order to set off alleged overpayments from other recoupment patients.

141. Despite having never paid anything on behalf of patient Zeta One, on November 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $22,469.10 and demanding repayment in that amount.

142. On November 3, 2016, UGI treated setoff patient Zeta Two.

143. UGI billed $21,751.00 to Aetna for this treatment.

144. On or about November 17, 2016, Aetna sent UGI a PEOB in which it agreed to pay $769.45 of that bill and stated that it had issued payments to UGI in that amount.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

145. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

146. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayment made on behalf recoupment patient Epsilon Two.

147. Aetna declared that it was setting off the $769.45 it owed on behalf of setoff patient Zeta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon Two.

**Advanced Examples**

148. On 19, 2015, Advanced treated recoupment patient Eta One (all patient names have been replaced with aliases in the interest of patient privacy).

149. Advanced billed $32,654.00 to Aetna for this treatment.

150. On or about September 24, 2015, Aetna agreed to pay, and did pay, $30,794.00 of that bill, plus 1,995.50 in regulatory late penalties, for a total of $32,793.50 that Aetna paid.

151. On or about November 23, 2015, Aetna wrote to Advanced claiming that it had overpaid that bill in the amount of $31,849.38 and demanding repayment in that amount.

152. Advanced, maintaining its right to keep the money, refused to repay it.

153. On June 30, 2015, Advanced treated setoff patient Theta One.

154. Advanced billed Aetna $12,704.00 for this treatment.

155. On or about November 24, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $12,574.00 of that bill plus $351.39 in regulatory late penalties, for a total of $12,925.39, and stated that it had issued payment to Advanced in that amount.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

156. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

157. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $12,925.39 by Advanced on account of the alleged overpayments made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta One.

158. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta One in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

159. On October 9, 2015, Advanced treated setoff patient Theta Two.

160. Advanced billed Aetna $1,000.02 for this treatment.

161. On or about December 2, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $130.06 of that bill and stated that it had issued payment to Advanced in that amount.

162. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

163. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $130.06 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Two.

164. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Two in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

165. On September 25, 2015, Advanced treated setoff patient Theta Three.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

166. Advanced billed Aetna $11,804.00 for this treatment.

167. On or about December 10, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $11,347.12 of that bill and stated that it had issued payment to Advanced in that amount.

168. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

169. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $11,347.12 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Three.

170. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Three in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

171. On May 5, 2015, Advanced treated setoff patient Theta Four.

172. Advanced billed Aetna $11,804.00 for this treatment.

173. On or about December 15, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $10,474.69 of that bill and stated that it had issued payment to Advanced in that amount.

174. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

175. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed at least $5,447.31 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, plus at least $5,027.38 on account of an alleged overpayment made on behalf of another

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

recoupment patient, Eta Two, which together equaled or exceeded the sum that it owed Advanced on behalf of patient Theta Four.

176. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Four in order to recoup the money it claimed to be owed on behalf of recoupment patients Eta One and Eta Two.

**Aetna's ERISA Violations**

177. At all relevant times, and with specific respect to Aetna's acts alleged herein, the Aetna Plans delegated all claims administration duties to Aetna, and Aetna therefore served as an ERISA fiduciary. In particular, Aetna was responsible for interpreting and applying plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R § 2560.503-1 ("ERISA Claims Procedure"), and effectuating benefit payments from bank accounts that it controls, whether those accounts are funded from its own assets (in the case of fully-insured plans) or the assets of the plan itself (in the case of self-insured plans). With regard to cross-plan offsets in particular, Aetna exercised discretion in deciding exactly when, how, and why to take such offsets.

178. As an ERISA fiduciary, Aetna owes duties of loyalty and prudence requiring that it administer the Aetna Plans "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). This means, among other things, that Aetna must administer the Aetna Plans "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." *Id.* It also means that Aetna is prohibited from transferring plan assets for the benefit of employers, other parties in interest or, of course, itself. *See id.* at §§ 1103(c); 1106. By refusing to pay benefits to Plaintiffs for Covered Services

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

provided to its Aetna Insured patients, and instead using that money to repay an alleged debt purportedly owed by Plaintiffs to other Aetna Plans, Aetna violated this obligation.

179. ERISA also prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," 29 U.S.C. § 1106(a)(1)(D), and from "dealing with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1). Further, a fiduciary may not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §1106(b)(3). Aetna's cross-plan offsets violate all of these provisions. Every cross-plan offset involves the use of one Aetna Plan's assets to benefit Aetna and a different Aetna Plan, either because the alleged overpayment was made by Aetna on behalf of a fully-insured Aetna Plan, or because Aetna has an interest in recovering money that it previously caused a different self-funded plan to pay.

180. No Aetna Plan permits Aetna to deny or reduce benefits owed to one Aetna Insured in order to recover alleged and disputed overpayments that a different Aetna Plan purportedly made with respect to claims submitted on behalf of a different Aetna Insured. Aetna's unilateral cross-plan offsets therefore violate the terms of the Aetna Plans and its fiduciary duties. The terms of the Plans require the Plans actually to pay benefits for Covered Services; they do not provide that this obligation may be satisfied through a cross-plan offset. Moreover, a cross-plan offset violates ERISA since it constitutes a breach of Aetna's fiduciary duties.

181. Even if Aetna had caused an Aetna Plan to overpay Plaintiffs at some point in the past, recovering such overpayment by unilaterally refusing to pay a new and unrelated claim

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

relating to a different Aetna Insured covered by a different Aetna Plan is not permitted by Aetna Plans or ERISA. Instead of availing itself of lawful means of recovering such overpayments under ERISA, Aetna instead engages in illegal self-help that is not allowed under Plan terms and is designed to circumvent ERISA.

182. In addition to violating the terms of the Aetna Plans and these fiduciary duties, Aetna also breached its fiduciary duty to comply with the minimum requirements for "full and fair review" of claims under ERISA and the regulations promulgated thereunder.

183. Aetna's failure to actually send checks to Plaintiffs in the amounts owed under Aetna Plans governed by ERISA constituted an "adverse benefit determination" under ERISA. The definition of "adverse benefit determination" includes not only "a denial, reduction, or termination of" benefits, but also a "failure to provide or make payment (in whole or in part) for" a benefit. 29 C.F.R. § 2560.503-1(m)(4). Aetna, however, failed to treat its unilateral decision to withhold payment as an adverse benefit determination, and did not provide ***any*** of the informational items or appellate procedures mandated by the ERISA Claims Procedure. For example, in the EOBs and PEOBs that Aetna sent concerning more recent claims that Plaintiffs filed, and which Aetna was refusing to pay (*i.e.*, the offset claims), it failed to:

a. set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(i);

b. identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(ii);

c. describe any additional material or information necessary for the Aetna Insured or Plaintiffs to receive the benefit, 29 C.F.R § 2560.503-1(g)(1)(iii);

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

d. describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R § 2560.503-1(g)(1)(iv);

e. advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(iv);

f. identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, 29 C.F.R. § 2560.503-1(g)(1)(v)(A); and

g. did not provide *any* appeal rights – much less the type of rights set forth in the ERISA regulations, 29 C.F.R. § 2560.503-1(h).

184. Not only did Aetna fail to comply with ERISA's notice and appeal requirements, it could not possibly have done so when effectuating the illegal cross-plan offsets challenged herein because, among other things, there is no "plan provision" that supported Aetna's refusal to actually pay the covered benefits, as required under 29 C.F.R § 2560.503-1(g)(1)(ii), because no Aetna Plan contains such a provision.

185. Because Aetna failed to comply with the ERISA Claims Procedure, any administrative remedies are "deemed" exhausted pursuant to 29 C.F.R § 2560.503-1(*l*). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Aetna does not acknowledge that offsets, or even cross-plan offsets, constitute adverse benefit decisions at all, and thus offers no ERISA-compliant meaningful administrative process for challenging such offsets.

186. Each of the ERISA requirements are incorporated into the ERISA plans that are administered by Aetna.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

187. As such, when Aetna processes benefit claims, it must do so in a manner that is consistent with ERISA requirements.

188. By breaching its fiduciary obligation and duty of loyalty under ERISA, and by engaging in prohibited transactions, Aetna's failure to pay benefits as a result of taking its cross-plan offsets was therefore inherently improper under ERISA.

**Count I – Unjust Enrichment – Quantum Meruit**
**(with respect to non-ERISA plans)**

189. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

190. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

191. Aetna has, in effect, received through the setoffs money from the ASCs.

192. If Aetna did in fact pay more than it should have under its contracts with the recoupment patients, then it should have sought recovery from them, not from the ASCs.

193. The ASCs were entitled to have their bills paid.

194. By setting off payments to the ASCs that Aetna should have made on behalf of the setoff patients, Aetna has benefited at the expense of the ASCs.

195. As such, the ASCs have conferred substantial benefit upon Aetna.

196. Aetna has retained this benefit: the moneys are still in Aetna's possession, or Aetna has benefited financially by "recovering" the alleged overpayments on behalf of the Plans that Aetna unilaterally asserted had been overpaid and receiving compensation for such services.

197. Aetna has been unjustly enriched at the expense of the ASCs.

198. Due to Aetna's unjust enrichment, the ASCs are entitled to proper compensation.

199. Aetna's unjust enrichment at the ASCs expense has damaged the ASCs.

200. The value of the moneys Aetna received through the setoffs is at least $500,000.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

201. Aetna has refused to pay the ASCs the value of this money.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of the improper setoffs;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count II – Money Had and Received**
**(with respect to non-ERISA plans)**

202. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

203. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

204. Aetna has in its possession moneys that it agreed in the PEOBs to pay to the ASCs, or it received financial benefits from "recovering" funds that are the property of the ASCs and giving it to health insurance plans which Aetna unilaterally asserted had overpaid Plaintiffs.

205. The ASCs earned this money by providing medical care to the setoff patients.

206. In equity and good conscience, the moneys in question belong to the ASCs.

207. Aetna ought, in equity and good conscience, to pay the moneys in question to the ASCs.

208. Aetna, however, has refused to make the payments to the ASCs.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

209. If Aetna is correct that it overpaid on behalf of the recoupment patients and that it is entitled to be reimbursed for those overpayments, then the parties who were obligated to reimburse Aetna were the recoupment patients.

210. By setting off moneys that ought to have been paid to the ASCs on behalf of the setoff patients, Aetna was wrongfully diverting those moneys from their proper use to pay the alleged obligations of the recoupment patients.

211. The recoupment patients gave no consideration for having had their alleged obligations thereby reduced.

212. The moneys in question constructively passed through the hands of the recoupment patients but are now in the possession of Aetna.

213. The value of the moneys in question is at least $500,000.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of the improper setoffs;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count III – Breach of Implied-in-Fact Contract**
**(with respect to non-ERISA plans)**

214. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

215. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

216. In sending their bills to Aetna, both for the recoupment patients and the setoff patients, the ASCs were offering to withhold billing the patients until Aetna had processed and paid the claims and not to bill the Aetna-insured patients for the amount of the bills that Aetna ultimately agreed to pay.

217. In processing the claims, determining the amount that is owed from the underlying insurance plan to the ASCs, and sending the PEOBs to the ASCs in which it represented that the funds had been "issued" to the ASCs, Aetna accepted these offers.

218. This established valid and enforceable contracts between Aetna and the ASCs.

219. By paying what it agreed to in the PEOBs Aetna sent on behalf of the recoupment patients, Aetna performed under those contracts.

220. By refusing, however, to pay what it agreed to in the PEOBs Aetna sent on behalf of the setoff patients, despite having represented that these funds were "issued" to the ASCs, Aetna breached those contracts.

221. The ASCs have demanded payment under the terms of these contracts.

222. Aetna has processed the claims and determined the amounts that are due and owing to the ASCs under the applicable health insurance plans, but has refused to make payment.

223. The ASCs have been injured by the refusal of the Defendant to make the payments required under the contracts.

224. The amount of the injuries in question totals at least $$500,000.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against the Defendant in the amount of the improper setoffs;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count IV – Conversion**
**(with respect to non-ERISA plans)**

225. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

226. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

227. Aetna deprived the ASCs of their right of property and their right of use and possession of the moneys that Aetna set off.

228. The ASCs did not consent to this deprivation, and Aetna had no legal right or justification for making the setoffs.

229. The PEOBs that Aetna sent, by declaring that it had already issued payments to the ASCs on behalf of the setoff patients, gave the ASCs constructive possession of the moneys at issue.

230. By sending the letters to the ASCs, Aetna engaged in a physical act to withhold possession of the moneys owing to the ASCs.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

231. In so doing, Aetna exercised dominion over the moneys, in defiance of the ASCs' rights.

232. By depriving the ASCs of their rights to the moneys that Aetna set off, Aetna has damaged the ASCs in the amount of at least $500,000.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of the improper setoffs;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count V – Misappropriation**
**(with respect to non-ERISA plans)**

233. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

234. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

235. The ASCs made substantial investments of time, effort, and money into treating both the recoupment patients and the setoff patients.

236. Every procedure the ASCs performed took time and effort on the part of the physicians who work for the ASCs.

237. The ASCs had to invest substantial money into setting up their surgical facilities.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

238. This investment of time, effort, and money created value for the recoupment patients and the setoff patients.

239. Aetna appropriated that value by leading the ASCs to believe that they would be reimbursed by Aetna for treating the recoupment patients and the setoff patients, and then not reimbursing them.

240. It cost Aetna very little effort for Aetna to engage in its misappropriation of the ASCs' assets: all Aetna had to do was send the PEOBs to the ASCs in which it represented that payments had been "issued," and then not pay what Aetna had promised to pay.

241. This misappropriation has injured the ASCs: they have not been compensated for the value that they created by providing medical care to the recoupment patients and the setoff patients.

242. The total amount of this injury is at least $500,000.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of the improper setoffs;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count VI – Breach of Contract**
**(with respect to non-ERISA plans)**

243. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

244. This count is brought as to setoff patients whose plans are/were not governed by ERISA.

245. Pursuant to its assignments and/or designation as an Authorized Representative, Plaintiffs are entitled to seek benefits under the terms and conditions of the Aetna Plans from which Aetna took offsets (Aetna's Offset Plans").

246. Under the terms and conditions of Aetna's Offset Plans, Aetna was obligated to pay benefits from the plans to Plaintiffs for healthcare services they provided to the Aetna insured patients.

247. By taking the funds that were otherwise due and owing to Plaintiffs and applying them as an offset against an alleged prior overpayment, Aetna did not actually pay benefits as required under Aetna's Offset Plans. Moreover, Aetna's Offset Plans did not authorize or permit payment of benefits through such offsets. Thus, Aetna has breached its contractual obligations under its insurance policies, thereby causing injury to Plaintiffs in the amount detailed above or more.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against the Defendant in the amount of improper setoffs;
b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;
c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,
d. Granting such other relief as the Court deems equitable and just.

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Count VII – ERISA: Claim for Benefits Due**
**(with respect to ERISA Plans)**

248. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

249. This cause of action is brought under 29 U.S.C. § 1132(a)(1)(B).

250. As to setoff patients whose plans were governed by ERISA, Aetna systematically violates (and violated) the terms of the Aetna Plans and ERISA by failing to cause those plans to pay benefits for Covered Services despite having calculated and determined the benefits that were due and owing under the Aetna Plans for the services at issue.

251. The total amount of improper setoffs as to patients whose plans were governed by ERISA exceeds $1 million.

WHEREFORE, Plaintiffs demand judgment in its favor against Defendant as follows:

a. Declaring that by taking cross-plan offsets, as detailed herein, Defendant violated its fiduciary obligations under ERISA;

b. Declaring that the cross-plan offsets taken by Defendant, as detailed herein, constitute prohibited transactions under ERISA;

c. Declaring that Defendant's plan-based obligation to pay or to cause the Aetna Plans to pay benefits for Covered Services rendered by an out-of-network provider to an insured of that Aetna Plan is not satisfied where Defendant withhold such payment in order to recover purported overpayments that they caused Aetna Plans to make for services rendered to a different patient insured under a different Aetna Plan;

d. Ordering Defendant either to re-administer all claims subjected to cross-plan offsets consistent with Plan terms and ERISA, or make payment on such claims, with interest;

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e. Permanently enjoining Defendant from engaging in cross-plan offsets under these circumstances;

f. Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

g. Granting such other relief as the Court deems equitable and just.

**Count VIII – Declaratory and Injunctive Relief**
**(for all Aetna Plans)**

252. Paragraphs 1 through 188 are incorporated herein as though fully set forth.

253. The ASCs provided medical services to their patients, including both the recoupment patients and the setoff patients, and were entitled to have their bills paid in full.

254. The ASCs surrendered their claims to have their bills paid by their patients to the extent that Aetna paid those bills instead.

255. Aetna had full knowledge of the terms of its insurance contracts with both the recoupment patients and the setoff patients.

256. Aetna paid the bills of the recoupment patients of its own free will.

257. There was no fraud, duress, or any wrongdoing by the ASCs, the recoupment patients, the setoff patients, or anyone else.

258. If Aetna had been mistaken as the extent of its obligations to indemnify the recoupment patients, then Aetna itself was solely responsible for that mistake.

259. Aetna is unable to trace the assets that were allegedly overpaid to the new plans which owed benefits for healthcare services provided by Plaintiffs to new and unrelated Aetna insureds, and thus cannot satisfy the requirements of equitable restitution.

260. The alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

offset patients and no judicial action was taken by Aetna to verify or uphold the validity of the purported "debt."

261. Aetna was not entitled to recover the overpayments through self-help at the expense of either the ASCs or the setoff patients.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Declaring that Aetna had no right to set off the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

b. Enjoining Aetna from making any more setoffs of the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

c. Granting Plaintiffs their expenses, including court costs incurred in connection with this action; and

d. Granting such other relief as the Court deems equitable and just.

Date: April 4, 2019

Jason B. Martin, esq.
Attorney ID #82767
The Martin Law Firm, P.C.
725 Skippack Pike #337
Blue Bell, PA 19422
(215) 646-3980
jbmartin@jbmartinlaw.com

D. Brian Hufford, esq.
(pro hac vice)
Zuckerman Spaeder LLP
485 Madison Avenue, 10th Floor
New York, NY 10022

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(212) 704-9600
(212) 704-4256 (f)
dbhufford@zuckerman.com

Adam Abelson
(pro hac vice)
Zuckerman Spaeder LLP
100 East Pratt St., Suite 2440
Baltimore, MD 21202
(410) 949-1148
(410) 659-0436 (f)
aabelson@zuckerman.com

*Attorneys for Plaintiffs*

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Mark Gloger, MD state that I am the Managing Partner of Urbana GI Endoscopy Center, LLC, the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

[signature]

Dated: 4/4/2019

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, AJAY BAKHSHI state that I am the General Partner of Advanced Surgery Center, LLC, the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dated: 4/4/19



6784335.2

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

VERIFICATION

I, Dr. Charles Obioha, state that I am the General Partner/Medical Director of Rockville Ambulatory Surgery, LP, and Silver Spring Surgery Center, LLC, two of the Plaintiffs herein; that I am authorized to make this verification on their behalf; and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dr. Charles Obioha

Dated April 4, 2019

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "A"

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

aetna

P.O. BOX 981106
EL PASO TX 79998-1106
USA

# Explanation Of Benefits

*Please Retain for Future Reference*

Printed: 12/10/2015
Page: 1 of 2

ADVANCED SURGERY CENTER
PIN: Redacted
TIN: Redacted
NO PAY

ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

**Notes:**
Update your address, telephone number, e-mail address and/or NPI information by visiting our website.

**Patient Name:** Theta Three *(spouse)*

Claim ID: Redacted Recd: 11/16/15 Member ID: Redacted Patient Account: Redacted
Member: Theta Three Spouse DIAG: 535.00
Group Name: PAN AMERICAN HEALTH ORGANIZATION Group Number: Redacted
Product: Aetna Choice® POS II Network ID: 00000
Aetna Life Insurance Company

| SERVICE DATES | PL | SERVICE CODE | NUM. SVCS | SUBMITTED CHARGES | ALLOWABLE AMOUNT | COPAY AMOUNT | NOT PAYABLE | SEE REMARKS | DEDUCTIBLE | CO INSURANCE | PATIENT RESP | PAYABLE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/25/15 | 24 | 250 | 1.0 | 425.00 | | | | | | 85.00 | 85.00 | 340.00 |
| 09/25/15 | 24 | 258 | 1.0 | 130.00 | | | | | | 26.00 | 26.00 | 104.00 |
| 09/25/15 | 24 | 270 | 1.0 | 320.00 | | | | | | 64.00 | 64.00 | 256.00 |
| 09/25/15 | 24 | 270 | 1.0 | 110.00 | | | | | | 22.00 | 22.00 | 88.00 |
| 09/25/15 | 24 | 270 | 1.0 | 419.00 | | | | | | 83.80 | 83.80 | 335.20 |
| 09/25/15 | 24 | 360 | 1.0 | 6,650.00 | | | | | | 176.08 | 176.08 | 6,473.92 |
| 09/25/15 | 24 | 710 | 1.0 | 3,325.00 | | | | | | | | 3,325.00 |
| 09/25/15 | 24 | 730 | 1.0 | 150.00 | | | | | | | | 150.00 |
| 09/25/15 | 24 | 730 | 1.0 | 275.00 | | | | | | | | 275.00 |
| **TOTALS** | | | | 11,804.00 | | | | | | [illegible] | 456.88 | 11,347.12 |

**ISSUED AMT:** **$11,347.12**

**For Questions Regarding This Claim**
P.O. BOX 981543 EL PASO, TX 79998-1543 USA
*CALL (800) 231-7729* FOR ASSISTANCE
*Note. All Inquiries should reference the ID number above for prompt response.*

Total Patient Responsibility: $456.88
Claim Payment: $11,347.12

Recovered From This Payment $11,347.12

| EXPLANATION OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITY | | | | | |
|---|---|---|---|---|---|
| Overpayments or Payment Corrections Due From Prior Claims | Refunds Received | Refunds Added to Payment | Overpayment or Payment Correction Adjustment Amount | Recovered From This Payment | Remaining Overpayment or Payment Correction Balance |
| $31,368.03 | $0.00 | $0.00 | $0.00 | $11,347.12 | $34,382.11 |

DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES

Member Name: Eta One
Patient Account Number: Redacted Notification ID: Redacted
Member ID Number: Redacted Date of Service: 03/19/15 Claim ID: Redacted EOB Date: 11/01/14 Remark: 1
Plan Amount -$11,347.12

***Continued on Next Page***

Case# 2017-06786-51 Docketed at Montgomery County Prothonotary on 04/05/2019 2:11 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 04/04/2017 9:55 AM, Fee = $270.00

aetna

P.O. BOX 981106
EL PASO TX 79998-1106
USA

**Mailing Address:**
ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

# Explanation Of Benefits

***Please Retain for Future Reference***

**Printed:** 12/10/2015
**Page:** 2 of 2

*ADVANCED SURGERY CENTER*
**PIN:** Redacted
**TIN:** Redacted
**NO PAY**

DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES

| | |
|---|---|
| **TOTAL** | -$11,347.12 |

1 This overpayment deduction is the result of a correction to a previously processed claim. Please review the detailed communication [redacted] sent containing the Notification ID indicated here

Protecting the privacy of member health information is a top priority. When contacting us about this statement or for help with other questions, please be prepared to provide your provider number, tax identification number (TIN), or Social Security number (SSN), in addition to the member's ID number.

03/29/2017 02:12 FAX 0013/0015