# EXHIBIT 3

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ROCKVILLE AMBULATORY SURGERY LP

vs.

AETNA INC

NO. 2017-06786

## COVER SHEET OF MOVING PARTY

Date of Filing May 23 2017

Moving Party AETNA INC

Counsel for Moving Party GREGORY S VOSHELL, Esq., ID: 208566

Document Filed (Specify) DEFENDANT'S PRELIMINARY OBJECTIONS

Matter is (Check One) [X] (Appealable) [ ] (Interlocutory)

Discovery Needed [ ] (Yes) [X] (No)

---

**CERTIFICATIONS** - Check **ONLY** if appropriate:

Counsel certify that they have conferred in a good faith effort to resolve the subject discovery dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

[ ] (Yes) [ ] (No) [X] (Not a Discovery Motion)

[ ] Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all parties involved in the case. (If checked, skip Rule to Show Cause section below.)

By: ______________________________
Counsel for Moving Party

---

**RULE TO SHOW CAUSE** - Check **ONE** of the Choice Listed Below:

_______ Respondent is directed to show cause why the moving party is not entitled to the relief requested by filing an **answer** in the form of a **written response** at the **Office of the Prothonotary** on or before the _______ day of ____________________, 20 ____

_______ Respondent is directed to show cause, in the form of a **written response**, why the attached Family Court Discovery Motion is not entitled to the relief requested. Rule Returnable and Argument the _______ day of ____________________________, 20____ at **1:00 p.m.** at **321 Swede Street, Norristown, Pa.**

_______ Respondent is directed to file a **written response** in conformity with the Pennsylvania Rules of Civil Procedure

_______ Rule Returnable at time of trial.

By: ______________________________
Court Administrator

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | |
| **Plaintiffs,** | DOCKET NO.: 2017-06786 |
| v. | CIVIL ACTION – LAW/EQUITY |
| **AETNA, INC.,** | |
| **Defendant.** | |

**ORDER**

**AND NOW**, this ____ day of __________________, 2017, upon consideration of Defendant Aetna, Inc.'s Preliminary Objections to Plaintiffs' Complaint, and any response thereto, it is hereby **ORDERED** that:

1. Plaintiff's First Preliminary Objection is **SUSTAINED** and Count I is **DISMISSED WITH PREJUDICE.**
2. Plaintiff's Second Preliminary Objection is **SUSTAINED** and Count III is **DISMISSED WITH PREJUDICE.**
3. Plaintiff's Third Preliminary Objection is **SUSTAINED** and Count IV is **DISMISSED WITH PREJUDICE.**
4. Plaintiff's Fourth Preliminary Objection is **SUSTAINED** and Count V is **DISMISSED WITH PREJUDICE.**
5. Plaintiff's Fifth Preliminary Objection is **SUSTAINED** and Count II is **DISMISSED WITH PREJUDICE.**

6. Plaintiff's Sixth Preliminary Objection is **SUSTAINED** and Count VI is **DISMISSED WITH PREJUDICE.**

7. Plaintiff's Seventh Preliminary Objection is **SUSTAINED** and Counts I-VI are **DISMISSED WITH PREJUDICE.**

BY THE COURT:

______________________________
, J.

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**ELLIOTT GREENLEAF, P.C.**
**John M. Elliott, Esq.**
**Gregory S. Voshell, Esq.**
**Thomas B. Helbig, Jr., Esq.**
**I.D. Nos. 04414/208566/321470**
**925 Harvest Drive, Suite 300**
**Blue Bell, PA 19422**
**215-977-1000 (Phone)**
**215-977-1099 (Fax)**
**Attorneys for Defendant**

| | |
|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | |
| **Plaintiffs,** | **DOCKET NO.: 2017-06786** |
| v. | |
| **AETNA, INC.** | **CIVIL ACTION – LAW/EQUITY** |
| **Defendant.** | |

**DEFENDANT'S PRELIMINARY OBJECTIONS**

Defendant Aetna, Inc. ("Aetna" or "Defendant"), by and through its undersigned counsel, respectfully submits these Preliminary Objections to Plaintiffs' Complaint. For the reasons set forth below and for those set forth in Aetna's Memorandum of Law, which is incorporated herein, this Court should sustain Defendant's Preliminary Objections and dismiss Plaintiffs' Complaint with prejudice.

## I. INTRODUCTION

1. Four Maryland Surgery Centers ("Plaintiffs" or the "Surgery Centers") admit that Defendant Aetna, Inc. ("Defendant" or "Aetna") paid them, in the aggregate, the appropriate amount of money for medical services that they provided to patients covered by Aetna health plans.

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

2. Despite being paid already, the Surgery Centers take issue with Aetna recovering overpayments that it mistakenly made to the Surgery Centers. The recovery of overpayments is critical to managing and lowering healthcare costs. In the course of promptly adjudicating millions of claims each day, it is inevitable that Aetna will overpay some providers who submit incorrect, improper, or even fraudulent claims. When Aetna identifies such overpayments, Aetna is obligated to recover those sums.

3. Here, the Surgery Centers allege that when Aetna made overpayments for a patient, it would offset that overpayment by reducing future payments it made to the Surgery Centers. Stated differently, even though the Surgery Centers were overpaid for services rendered to certain patients and effectively pre-paid for future appointments, they oddly seek damages from Aetna for recovering money that was Aetna's in the first place.

4. Plaintiffs' misguided theories, however, must be dismissed as a matter of Pennsylvania law. Accordingly, Aetna hereby files Preliminary Objections pursuant to Rule 1028 of the Pennsylvania Rules of Civil Procedure.

## II. FACTUAL BACKGROUND[1]

5. The Surgery Centers provide medical and surgical care to patients in Maryland, including a subset of patients who have health benefits offered through Aetna.

6. Aetna is a managed care company that, through its affiliates, offers insurance and administrative services to health benefit plans and their members nationwide.

[1] Preliminary objections in the nature of a demurrer, like those at issue here, require the Court to "accept as true all well pleaded material allegations." *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 884 (Pa. 2010). Accordingly, although Aetna contends that many of Plaintiffs' allegations have no factual basis, Aetna will "accept as true all well pleaded material allegations" solely for the purposes of these Preliminary Objections and does not concede that any of Plaintiff's allegations in fact have any factual basis.

7. Aetna negotiates reduced prices for medical services offered by a network of high-quality, credentialed providers. Where Aetna has a direct contract with a medical provider, that provider is considered to be "in-network" with Aetna and reimbursement is governed by the terms of the contract.

8. The Surgery Centers allege that they are out-of-network providers as to Aetna, meaning that they do not have a direct agreement with Aetna governing reimbursement. (*See* Ex. 1, Compl. ¶ 8.)

9. The Surgery Centers allege that where there is no contract to govern reimbursement, Aetna makes payments based on the terms of the health benefit plan applicable to the patient in question. (*Id.* ¶¶ 9, 10.)

10. According to the Surgery Centers, when Aetna received a bill from the Surgery Centers, (*id.* ¶ 10), Aetna determined the amount it was obligated to pay under the terms of the applicable health plan and issued a Provider Explanation of Benefits form (a "PEOB") with the payment to Plaintiffs, (*id.* ¶¶ 10–12).

11. The Surgery Centers assert that on February 1, 2015, Aetna adopted a new payment policy for reimbursing out-of-network providers in Maryland, such as the Surgery Centers. (*Id.* ¶ 14.)

12. Under the new reimbursement policy, the Surgery Centers claim that Aetna pays out-of-network providers 200% of the rates established by Medicare for procedures performed at the Surgery Centers (*i.e.*, Aetna would pay twice as much as Medicare would pay for the same medical services). (*Id.*)[2]

[2] The Surgery Centers' claims do not directly challenge the validity of Aetna's new reimbursement policy, likely because a federal court in Maryland already found that the Aetna plans allowed for a 200% of Medicare reimbursement rate because "Aetna was empowered to



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

13. The Surgery Centers allege that after Aetna adopted this "200% of Medicare" policy, Aetna mistakenly paid higher rates for some patients than those called for by the policy. (*Id.* ¶¶ 15–16.) In other words, the Surgery Centers claims that Aetna mistakenly paid the Surgery Centers more money than it should have (more than 200% of Medicare) for some Aetna-insured patients. (*Id.* ¶¶ 16, 22.)

14. Aetna notified the Surgery Centers of the overpayments and requested that the Surgery Centers refund the overpaid amount. (*Id.* ¶ 22.)

15. Rather than returning the obvious overpayments, the Surgery Centers improperly pocketed the money. (*Id.* ¶¶ 23–24.)

16. According to the Surgery Centers, Aetna then offset the overpayments by reducing future payments to the Surgery Centers.

17. Specifically, the Surgery Centers allege that when the Surgery Centers treated new Aetna patients, Aetna would not pay them for their services at the 200% of Medicare rate. Instead, the Surgery Centers contend that Aetna would calculate 200% of the Medicare rate for the patient in question and send the Plaintiffs the PEOB, but would not send a corresponding check with the PEOB. (*Id.* ¶¶ 25–27.)

18. However, the Surgery Centers assert that the PEOBs made it abundantly clear that Aetna "would not actually pay these moneys" because Aetna was offsetting prior overpayments, which the Surgery Centers had pocketed and not returned. (*Id.* ¶¶ 74–75.) In fact, the Surgery Centers plainly admit that "Aetna explained" to them that it would not send a check due to the current deficit the Surgery Centers owed Aetna. (*Id.* ¶ 28.)

---

reduce the recognized charge according to Aetna's Reimbursement Policies." *Upper Bay Surgery Ctr., LLC v. Aetna Health & Life Ins. Co.*, 2016 U.S. Dist. LEXIS 66436, at *7 (D. Md. May 19, 2016). This may be why the Surgery Centers fled Maryland to file the case in this forum.



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

19. The Surgery Centers thus admit that they have been paid all that they should be paid (in the aggregate) for the Aetna members that they treated under Aetna's 200% of Medicare Policy.

20. They nevertheless contend that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment." (*Id.* ¶ 42.)

21. Despite this broad legal conclusion (which is afforded no deference at this stage of the proceedings), the Surgery Centers have not asserted a claim for breach of the individual insurance plans, their claims for damages do not expressly rely upon the language of a single plan document, and they do not attach a single plan to their pleading.[3]

22. Instead, the Surgery Centers assert causes of action for: (1) unjust enrichment/quantum merit, (2) money had and received, (3) breach of implied-in-fact contract, (4) conversion, (5) misappropriation, and (6) declaratory relief. (*Id.* ¶¶ 183–241.) The Surgery Centers' factual allegations, however, are insufficient as a matter of law to support any of these claims.

**FIRST PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT I**

23. To plead a viable unjust enrichment claim in this context, the Surgery Centers must assert facts to show that they were not paid a "commercially reasonable rate" by Aetna.[4]

---

[3] In New Jersey federal court, Plaintiffs' counsel have brought a putative class action under the Employee Retirement and Income Security Act ("ERISA"), claiming that these alleged offsets violate ERISA. Here, Plaintiffs' counsel has represented that the claims are non-ERISA in nature. Nevertheless, Plaintiffs' counsel is aware that Aetna's health plans contain various language that permit the type of offsets that are at issue in this case. *See Lutz Surgical Partners, PLLC v. Aetna, Inc.*, No. 15-cv-2595 (D.N.J.). This is likely why Plaintiffs are attempting to avoid the terms of the health plans in this case.

[4] Plaintiffs do not specify which state law they are proceeding under (Maryland or Pennsylvania), though their pleading indicates that they seek to invoke Pennsylvania law. Regardless, under either Pennsylvania or Maryland law, the elements of unjust enrichment are

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

They have not done so here and, therefore, the Court should sustain Aetna's preliminary objection as to Count I.

24. Under Pennsylvania law, where an out-of-network medical provider (like the Surgery Centers) asserts an unjust enrichment claim, that medical provider must show that it has not been paid a "commercially reasonable rate." *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 508 (Pa. Super. Ct. 2003).

25. In other words, "where there is no express agreement to pay, the law implies a promise to pay a ***reasonable fee*** for a health provider's services." *Id.* (citing *Eagle v. Snyder*, 604 A.2d 253 (Pa. Super. Ct. 1992) (emphasis added)).

26. As the Superior Court explained:

> Reasonable value, in accordance with the above-cited case law, is the value paid by the relevant community. The relevant community in this case comprises the Hospital's patients who are covered by insurance policies and federal programs. Thus, the Hospital should be awarded the average charge for the services at issue contained in contracts with governmental agencies and insurance companies.

*Id.*

27. Here, the Surgery Centers do not contend that they have been paid less than the reasonable value for their services as they are required to under Pennsylvania law and do not plead any facts to suggest that Aetna paid them less than other commercial or governmental insurers pay the Surgery Centers for the same medical services.

28. Medicare is the only payor other than Aetna referenced in the Complaint, and the Surgery Centers concede that Aetna paid them ***twice as much*** as Medicare would for the same services.

---

the same. *Compare Styer v. Hugo,* 619 A.2d 347, 350 (Pa. Super. Ct. 1993) *with Mona v. Mona Elec. Grp., Inc.,* 176 Md. App. 672, 712-13, 934 A.2d 450, 473 (2007).

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

29. Thus, the Surgery Centers have not pleaded any facts to suggest that Aetna has been unjustly enriched and in fact suggest that Aetna is paying them ***more than*** a commercially reasonable rate.

30. More fundamentally, the Surgery Centers' theory does not make sense. They concede that Aetna has paid them, in the aggregate, at least 200% of Medicare for all of the Aetna members they have treated since February 2015 and they do not challenge the adequacy of that payment rate as part of this lawsuit.

31. Indeed, a Maryland federal court has already held that Aetna was entitled to implement the 200% of Medicare policy. *See Upper Bay Surgery Ctr., LLC v. Aetna Health & Life Ins. Co.*, 2016 U.S. Dist. LEXIS 66436, at *7 (D. Md. May 19, 2016).

32. The Surgery Centers merely allege that Aetna paid too much on some claims and thus offset those overpayments on subsequent claims. As a matter of equity, though, these allegations only serve to confirm that Aetna paid the Surgery Centers reasonable amounts for their services in the aggregate.

33. Equity does not permit them to seek additional funds now, as that would result in a windfall recovery for the Surgery Centers.

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count I of Plaintiff's Complaint with prejudice; and, grant to Defendant all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**SECOND PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT III**

34. "To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).

35. It is well-settled that in order for a contract to exist, "there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and acceptance." *Mountain Props. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001).

36. "An offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted." *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 764 A.2d 587, 593 (Pa. Super. Ct. 2000) (internal citations and quotations omitted). However, there is no valid contract unless the acceptance is "unconditional and absolute."[5] *Temple Univ. Hosp.*, 764 A.2d at 593.

37. Here, the Surgery Centers' allegations confirm that there was no meeting of the minds or "unconditional and absolute" offer and acceptance as is required by Pennsylvania law.

38. The Surgery Centers' theory is that when Aetna responded to their invoices with PEOBs that listed a number as the "**ISSUED AMT**," this created an implied-in-fact contract under which Aetna agreed to send them a check for that amount. (Ex. 1, Compl. ¶¶ 209–10.)

---

[5] This same is true under Maryland law. *See Lemlich v. Bd. of Trs.*, 385 A.2d 1185, 1189 (Md. 1978).

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

39. Thus, each time Aetna sent a PEOB, the Surgery Centers allege that the parties' conduct created an implied-in-fact contract. (*Id.* ¶ 210.)[6] The Surgery Centers allege that when Aetna did not send a check for that amount, "Aetna breached those contracts." (*Id.* ¶ 212.)

40. But the Surgery Centers defeat their own theory. They expressly plead that the very PEOBs they allegedly rely upon (which are attached to and incorporated within their pleading) are clearly marked "**NO PAY**." (*Id.* Ex. A.)

41. Moreover, directly under the notation for "**ISSUED AMT**," the PEOB explains that Aetna ***would not be sending*** the Surgery Centers a check for that amount. (*Id.*)

42. In fact, the Surgery Centers expressly plead that "[a]s the example [Compl. Ex. A] further shows, Aetna did not them send an actual check." (*Id.* ¶ 31.) And the Surgery Centers expressly plead that when Aetna sent the PEOBs, "Aetna explained" to the Plaintiffs that it was not going to be sending a check for the amount listed as "**ISSUED AMT**." (*Id.* ¶¶ 26–28 (emphasis added).)

43. Through their own allegations, Plaintiffs thus concede that Aetna "expressly rejected" any purported offer to send a check for the number listed as "**ISSUED AMT**," *see Temple Univ.*, 764 A.2d at 593, and clearly show that no meeting of the minds occurred.

44. No "reasonable person in the position of the parties would be led to understand" that Aetna was accepting a purported offer to send a check for the number listed as "**ISSUED AMT**." *See id.*

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count III of Plaintiff's Complaint with prejudice; and, grant to Defendant

[6] Plaintiffs' conclusory allegations that "Aetna accepted these offers" and that "[t]his established valid and enforceable contracts between Aetna and the [Plaintiffs]" are mere legal conclusions that this Court must not accept as true. *See Crozer Chester Med. Ctr.,* 22 A.3d at 194; *Bayada Nurses*, 8 A.3d at 884.

all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

**THIRD PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT IV**

45. In Pennsylvania, "conversion is widely understood as 'the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification.'"[7] *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. Ct. 2013) (internal quotations omitted).

46. Although money may be the subject of conversion, "it is well-settled that ***failure to pay a debt is not conversion***."[8] *McKesson Corp. v. Campbell*, 134 A.3d 502 (Pa. Super. Ct. 2015) (emphasis added); *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003); *Broederdorf v. Bacheler,* 129 F. Supp. 3d 182, 194 (E.D. Pa. 2015) (same).

47. Here, the Surgery Centers frame their claim as one for debt collection. They expressly concede this by noting on the Civil Cover Sheet to their Complaint that the "Case Type" is "***Debt Collection***." (See Ex. 1, Complaint at Civil Cover Sheet (emphasis added)); *see also Tops Apparel Mfg. Co. v. Rothman*, 244 A.2d 436, 438 (Pa. 1968) ("Admissions . . . contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them.").

---

[7] This is consistent with a cause of action for conversion under Maryland law as well. *See Darcars Motors of Silver Spring, Inc. v. Borzym,* 841 A.2d 828, 836 (Md. 2004).

[8] This is also true under the Maryland law. *See Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. App. 1986) ("When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.").



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

48. Accordingly, this Court must sustain Aetna's preliminary objection and dismiss Count IV with prejudice.[9]

49. Additionally, a plaintiff can only maintain a cause of action for conversion if the plaintiff "had actual or constructive possession of a chattel at the time of the alleged conversion."[10] *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994); *Pittsburgh Constr.*, 834 A.2d at 581.

50. This is because "[i]t is only after it is determined that one has a property right in a chattel that an inquiry must be made as to whether there has been a deprivation of, or an interference with that right to constitute conversion." *Pioneer Commer. Funding Corp. v. Am. Fin. Mortg. Corp.*, 797 A.2d 269, 280 (Pa. Super. Ct. 2002).

51. Here, despite the fact that the PEOBs are clearly marked "**NO PAY**" and detail why Aetna is not issuing any payment, Plaintiffs contend that Aetna's use of the phrase "**ISSUED AMT**" in the PEOBs "gave the [Plaintiffs] constructive possession of the moneys at issue." (Ex. 1, Compl. ¶ 220.)

52. This is a clearly incorrect legal conclusion which this Court must not accept as true. *See Crozer Chester Med. Ctr.,* 22 A.3d at 194; *Bayada Nurses*, 8 A.3d at 884. Instead, Pennsylvania courts have held that an individual only has constructive possession of property if

[9] Even if this Court rejects the express admission by Plaintiffs that this is an action for "Debt Collection," Pennsylvania law also dictates that "an action for conversion will not lie where the alleged converter . . . refused to pay the proceeds of an insurance policy." *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp*., 974 F. Supp. 822, 845 (E.D. Pa. 1997); *see also Allstate Prop. & Cas. Ins. Co. v. Vargas*, 2006 U.S. Dist. LEXIS 95608, at *12 (E.D. Pa. Dec. 28, 2006) (holding that "[n]o action for conversion will lie where a defendant is alleged to have . . . refused to pay insurance proceeds" because "[t]o hold otherwise would render an insurer potentially liable for conversion in the administration of *every* insurance claim."); *Koken v. Commonwealth Prof'l Grp., Inc*., 2006 Phila. Ct. Com. Pl. LEXIS 73, at *3 (Pa. Com. Pl. Feb. 9, 2006) (same).

[10] The same is true under the law of Maryland. *Balt. & O. R. Co. v. Equitable Bank, N.A*., 550 A.2d 407, 411 (Md. App. 1988).



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

the person has "the ability to exercise a conscious dominion" over the property, *i.e.*, "the power to control [the property] and the intent to exercise that control." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983); *see also Commonwealth v. Cooper,* 2014 Pa. Super. Unpub. LEXIS 1159, *23 (Pa. Super. Ct. 2014); *United States v. Cartwright*, 359 F.3d 281, 290 n.6 (3d Cir. 2004).

53. The Surgery Centers fail to allege any facts showing that, at the time of the conversion, they had "the ability to exercise a conscious dominion" over the money such that they had "the power to control [the money] and the intent to exercise that control." *Macolino*, 469 A.2d at 134.

54. To the contrary, the Surgery Centers expressly plead that at the time of the alleged conversion, "***Aetna exercised dominion over the moneys***." (Ex. 1, Compl. ¶ 222 (emphasis added).)

55. For this additional and independent reason, this Court must sustain Aetna's preliminary objection and dismiss Count IV with prejudice.

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count IV of Plaintiff's Complaint with prejudice; and, grant to Defendant all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

**FOURTH PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT V**

56. In Count V, Plaintiffs assert a claim for "Misappropriation," alleging that Aetna misappropriated "value" or "money." (Ex. 1, Compl. ¶¶ 224–32.)

57. However, there is no such thing as a cause of action for misappropriation of "value" or "money." *Wen v. Willis*, 117 F. Supp. 3d 673, 683 n.3 (E.D. Pa. 2015) (applying

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Pennsylvania law) ("[T]he Court finds that Wen cannot state a claim for misappropriation of monies, ***because the Court can find no evidence that such a cause of action exists under Pennsylvania law***." (emphasis added)); *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 775 n.22 (M.D. Pa. 2008) (applying Pennsylvania law) (concluding that "every case where a plaintiff alleged misappropriation under Pennsylvania law concerned the misappropriation of trade secrets or ideas" and explaining that "a claim for conversion is recognized under Pennsylvania law, ***unlike their claim for misappropriation of monies***" (emphasis added)); *see also Pennsylvania Causes of Action*: *Index to Causes of Action* (noting that the only Pennsylvania causes of action for "misappropriation" are for misappropriation "Of Idea," "Of Rents," and "Of Trade Secret").

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count V of Plaintiff's Complaint with prejudice; and, grant to Defendant all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

**FIFTH PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT II**

58. "A cause of action for money had and received entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it." *Solomon v. Gibson*, 615 A.2d 367, 369 (Pa. Super. Ct. 1992).[11]

59. Crucial to this claim is that the plaintiff is seeking to "recover money ***paid to the defendant***." *Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1186 n.2 (Pa. 2005) (emphasis added); *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 723 n.5 (Pa. 2012).

[11] This is not in conflict with Maryland's common law claim for money had and received. *See Benson v. State,* 887 A.2d 525, 547 (Md. 2005).

60. Here, the Surgery Centers fail to allege that Aetna actually received the money at issue either from Plaintiff or any other party that would satisfy Pennsylvania law. The money at issue is, and always was, in the possession of Aetna, and Plaintiffs have failed to allege that this money was in fact "paid to [Aetna]" in any manner that could support such a claim. *Springfield Twp.*, 889 A.2d at 1186 n.2; *White*, 53 A.3d at 723 n.5.

61. Plaintiffs attempt to plead around this obvious deficiency by alleging that "the moneys in question constructively passed through the hands of recoupment patients." (Ex. 1, Compl. ¶ 205.)

62. However, this does not cure Plaintiffs' inadequate pleading. A claim for money had and received requires that the Defendant actually received the money at issue, not that the money at issue "constructively passed through the hands" of another individual. *See Hughey v. Robert Beech Assocs.*, 378 A.2d 425, 427 (Pa. Super. Ct. 1977).

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count II of Plaintiff's Complaint with prejudice; and, grant to Defendants all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs

**SIXTH PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(4) – DEMURRER TO COUNT VI**

63. In their final Count, Plaintiffs seek a broad and improper declaratory judgment, asking the Court to declare that "Aetna had no right to set off the alleged overpayments" and to enjoin Aetna "from making any more setoffs of the alleged overpayments." (Ex. 1, Compl. ¶ 241(a), (b).)

64. However, this Court should decline to resolve this issue with a declaratory judgment because it would necessarily involve the interpretation of potentially hundreds of



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

separate and distinct insurance plans, none of which Plaintiffs address with any specificity or attach to their pleading.

65. Obtaining a declaratory judgment "is a matter of sound judicial discretion" and "is not obtainable as a matter of right." *OSRAM Sylvania Prods. v. Comsup Commodities, Inc.*, 845 A.2d 846, 848 (Pa. Super. Ct. 2004); *Ampco-Pittsburgh Corp. v. N.H. Ins. Co.*, 118 A.3d 444 (Pa. Super. Ct. 2015).

66. In support of its claim for a blanket declaratory judgment, Plaintiffs contend that "Aetna had full knowledge of the terms of its insurance contracts" with its insureds and that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment." (Ex. 1, Compl. ¶¶ 40, 236.)

67. Thus, Plaintiffs allege the lawfulness of Aetna's actions rises and falls with the specific terms of each individual insurance policy. But they do not address those terms in their pleading. And Plaintiffs and their counsel know that Aetna's plan language varies from plan to plan.

68. Plaintiffs make absolutely no attempt to address this fact in their pleading nor do they confront the fact that the Court would need to review potentially hundreds of insurance plans with varying plan language, together with correspondence between the parties and other documents that will confirm that the Surgery Centers may have agreed to the very offsets that they complain about here.

69. The Court simply could not enter a broad declaration because the Court would need to make findings as to each individual contract. Perhaps this is why the Surgery Centers have not asserted a claim for breach of the individual insurance policies or provided any reference to what particular policies would allegedly be implicated.

70. The only mention of actual plan language is the Surgery Center's selective quotation concerning unidentified "various Aetna plans," which may or may not contain the same language as the policies at issue here as the Surgery Centers do not even attempt to identify whether the selective quotation is included in a plan that is implicated in this case. (*Id.* ¶¶ 18–19)[12]; *see Rainmaker Capital of Chestnuthill, LLC v. Chestnuthill Twp.*, 2011 Pa. Commw. Unpub. LEXIS 478, at *9 (Pa. Commw. Ct. June 15, 2011) (affirming dismissal of declaratory action where the plaintiff's "averments regarding the rights of the parties under their Agreement[s] . . . are merely speculative").

71. It is more likely that the Surgery Centers are furiously trying to avoid any analysis of the individual plans because the Surgery Centers know that Aetna's health plans contain various language ***that permit*** the type of offsets that are alleged in this case.

72. Currently in New Jersey federal court, the Surgery Centers' counsel are representing a putative class of facilities challenging the type of offsets that are at issue here. Through discovery in that case, Plaintiffs' counsel became aware of the various types of language Aetna uses in its plan documents and knows (1) that Aetna's plan documents contain varying language; (2) that Aetna's plan documents permit Aetna to seek offsets; and (3) that in many instances the providers at issue, via various correspondence, have agreed to the offsets.[13]

73. Put simply, the Surgery Centers' request for declaratory relief is speculative, would require the Court to conduct dozens if not hundreds of individual mini-trials, and serves as

[12] In fact, in a case involving language identical to that quoted by the Surgery Centers, the United States District Court for the District of Maryland found that many of the plans containing this language provide that Aetna may "reduce the recognized charge by applying Aetna Reimbursement Policies." *Upper Bay Surgery Ctr., LLC*, 2016 U.S. Dist. LEXIS 66436, at *7.

[13] Indeed, in a brief recently filed by Aetna in that matter, Aetna in detail explains the language of its plans, which Plaintiffs' counsel has completely ignored in this case.



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

nothing more than an attempt to circumvent the case currently pending in federal court in New Jersey.

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Count VI of Plaintiff's Complaint with prejudice; and, grant to Defendants all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

**SEVENTH PRELIMINARY OBJECTION**
**PA. R. CIV. P. 1028(A)(5) – LACK OF CAPACITY TO SUE**

74. Rule 1028(a)(5) of the Pennsylvania Rules of Civil Procedure provides for a preliminary objection on the basis of lack of capacity to sue.

75. An individual only has standing to file suit if that individual has been "aggrieved," meaning the individual "has a substantial, direct, and immediate interest in the outcome of the litigation." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005).

76. "The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion." *Id.*; *see also Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011).

77. Here, the Surgery Centers' own pleading establishes that they have not been "aggrieved" by the purported actions of Aetna because they concede that Aetna paid them, in the aggregate, an appropriate amount of money for medical services provided to patients covered by Aetna plans.

78. Instead, the Surgery Centers dispute Aetna's purported method of recovering overpayments that it mistakenly remitted to the Surgery Centers. But, the Surgery Centers fail to put forth any factual allegations demonstrating how Aetna's recoupment of overpayments



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

"negatively impacted" them "in some real and direct fashion." *Pittsburgh Palisades Park*, 888 A.2d at 660.

79. If anything, Aetna paid the Surgery Centers too soon for services that the Surgery Centers would provide in the future to Aetna members. This served only to benefit the Surgery Centers.

80. The Surgery Centers concede that Aetna has paid them, in the aggregate, at least 200% of Medicare for all of the Aetna members they have treated since February 1, 2015.

81. The Surgery Centers also do not challenge Aetna's ability to institute the 200% of Medicare rate and a federal court has already held that Aetna was entitled to implement that policy. *See Upper Bay Surgery Ctr., supra*.

WHEREFORE, Defendant respectfully requests that the Court sustain this preliminary objection and dismiss Plaintiff's entire Complaint with prejudice; and, grant to Defendant all other relief mandated by law or which this Court should and must deem appropriate, including an award of attorneys' fees and costs.

**IV. <u>RELIEF SOUGHT</u>**

For the forgoing reasons, the Court should sustain Aetna's Preliminary Objections and dismiss the Surgery Centers' Complaint with prejudice.

Respectfully submitted,

*<u>/s/ Gregory S. Voshell</u>*
JOHN M. ELLIOTT
GREGORY S. VOSHELL
THOMAS B. HELBIG, JR.
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: May 23, 2017

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA**

| | |
|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | |
| **Plaintiffs,** | DOCKET NO.: 2017-06786 |
| v. | CIVIL ACTION – LAW/EQUITY |
| **AETNA, INC.,** | |
| **Defendant.** | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I caused a copy of the foregoing Preliminary Objections and Memorandum of Law in Support Thereof to be served by the Court's electronic filing system on all counsel of record.

Respectfully submitted,

*<u>/s/ Gregory S. Voshell</u>*
Gregory S. Voshell
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: May 23, 2017

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**ELLIOTT GREENLEAF, P.C.**
**John M. Elliott, Esq.**
**Gregory S. Voshell, Esq.**
**Thomas B. Helbig, Jr., Esq.**
**I.D. Nos. 04414/208566/321470**
**925 Harvest Drive, Suite 300**
**Blue Bell, PA 19422**
**215-977-1000 (Phone)**
**215-977-1099 (Fax)**
**Attorneys for Defendant**

| | |
|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | |
| **Plaintiffs,** | **DOCKET NO.: 2017-06786** |
| v. | **CIVIL ACTION – LAW/EQUITY** |
| **AETNA, INC.** | |
| **Defendant.** | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS PRELIMINARY OBJECTIONS**

Defendant Aetna, Inc. ("Aetna" or "Defendant"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Preliminary Objections to Plaintiffs' Complaint. For the reasons set forth below, this Court should sustain Defendant's Preliminary Objections and dismiss Plaintiffs' Complaint with prejudice.

## I. MATTER BEFORE THE COURT

Four Maryland Surgery Centers ("Plaintiffs" or the "Surgery Centers") admit that Aetna paid them, in the aggregate, the appropriate amount of money for medical services that they provided to patients covered by Aetna health plans. Despite being paid already, the Surgery Centers take issue with Aetna recovering overpayments that it mistakenly made to the Surgery Centers. Specifically, the Surgery Centers allege that when Aetna overpaid for a particular patient, Aetna would offset that overpayment by reducing future payments to the Surgery

Centers. Stated differently, even though Aetna overpaid the Surgery Centers for services rendered to certain patients and effectively pre-paid for future appointments, the Surgery Centers improperly seek damages from Aetna for recovering money that was Aetna's in the first place. Plaintiffs' theories are misguided and their claims should each be dismissed for several reasons:

- In Count I, the Surgery Centers claim that Aetna has been unjustly enriched. To state such a claim, the Surgery Centers must show that Aetna paid them less than a "commercially reasonable" amount for services rendered. The Surgery Centers do no such thing and, in fact, their own pleading suggests that Aetna has paid ***more than*** a commercially reasonable rate.

- In Count II, the Surgery Centers assert a claim for "money had and received." But for such an archaic claim to survive, the Surgery Centers must show that Aetna "received" the funds that it is allegedly withholding from the Surgery Centers. The Surgery Centers plead no such facts.

- In Count III, the Surgery Centers claim that Aetna is required to pay them more money based on a fictional "implied in fact contract." Yet, as their own allegations confirm, Aetna "explained" to the Surgery Centers that it would pay them ***no more money***. Because Plaintiffs admit that Aetna at all times disputed the obligation to pay additional amounts, the Court cannot as a matter of law create and/or imply the existence of a contract.

- In Count IV, the Surgery Centers assert a claim for conversion. The Surgery Centers, however, style this case as one for "debt collection," and the alleged failure to pay a debt cannot support a conversion claim. Further, the Surgery Centers concede that they never had actual or constructive possession of any chattel at the time of the alleged conversion, as is required to maintain a conversion claim.

- In Count V, the Surgery Centers assert a claim for misappropriation, asserting that Aetna misappropriated "value" or "money." Pennsylvania does not recognize a cause of action for misappropriation of "value" or "money," rendering Count V a legal nullity.

- In Count VI, the Surgery Centers' request a declaratory judgment that is invalid as a matter of law. The Surgery Centers ask this Court at some later stage of this case to make a blanket ruling concerning Aetna's ability to offset overpayments. But the Court could make no such broad ruling, because it would need to evaluate potentially hundreds of health plans, years of correspondence between the parties, admissions by the Surgery Centers that Aetna could in fact offset overpayments, and numerous other documents. Rather than allow for a broad declaration, the Surgery Centers'



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

request would require potentially hundreds of individualized mini-trials. Declaratory relief is impermissible as a matter of law in such circumstances.

- Finally, the Surgery Centers lack standing to sue because they concede that Aetna paid them, in the aggregate, the appropriate amount of money for medical services that they provided to patients covered by Aetna health plans. The Surgery Centers dispute Aetna's alleged method of recovering overpayments, but fail to put forth any factual allegations demonstrating how Aetna's purported method of recovering overpayments "negatively impacted" them "in some real and direct fashion" when they were paid in the aggregate all they were entitled to.

Accordingly, even when accepting the Surgery Centers' allegations as true, their claims all fail as a matter of law, and the Court should sustain Aetna's preliminary objections.

## II. STATEMENT OF QUESTIONS INVOLVED

1. Should this Court dismiss Plaintiffs' claim for Unjust Enrichment (Count I) where Pennsylvania law requires Plaintiffs to plead facts sufficient to show that they were not already paid a reasonable amount for medical services rendered and where Plaintiffs fail in their pleading to even address this standard?

***Suggested Answer: YES***

2. Should this Court dismiss Plaintiffs' claim for Breach of Implied-in-Fact Contract (Count III) where Plaintiffs' own pleadings establish that Aetna expressly and repeatedly rejected the purported offer relied upon by Plaintiffs to support their claim?

***Suggested Answer: YES***

3. Should this Court dismiss Plaintiffs' claim for Conversion (Count IV) where Plaintiffs expressly concede that the claim concerns the failure to pay a debt, which is not actionable as a conversion claim, and where Plaintiffs have failed to allege any facts sufficient to show that they had actual or constructive possession at the time of the purported conversion?

***Suggested Answer: YES***



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

4. Should this Court dismiss Plaintiffs' claim for Misappropriation (Count V) when a claim for misappropriation of "value" is not cognizable under Pennsylvania law?

***Suggested Answer: YES***

5. Should this Court dismiss Plaintiffs' claim for Money Had and Received (Count II) where Plaintiffs failed to allege that Defendant actually received the money in a manner that would implicate Pennsylvania law?

***Suggested Answer: YES***

6. Should this Court dismiss Plaintiffs' claim for a blanket Declaratory Judgment concerning Aetna's ability to offset overpayments where such judgment would require potentially hundreds of individualized mini-trials?

***Suggested Answer: YES***

7. Should this Court dismiss this case in its entirety for lack of standing where Plaintiffs' concede that they have not suffered an injury-in-fact because they admit to having been paid, in the aggregate, the appropriate amount of money for medical services that they provided to Aetna members?

***Suggested Answer: YES***.

## III. FACTUAL ALLEGATIONS[1]

### A. Overview of Parties

The Surgery Centers provide medical and surgical care to patients in Maryland, including a subset of patients who have health benefits offered through Aetna. Aetna is a managed care

[1] Preliminary objections in the nature of a demurrer require the Court to "accept as true all well pleaded material allegations." *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 884 (Pa. 2010). Accordingly, although Aetna contends that many of Plaintiffs' allegations have no factual basis, Aetna will "accept as true all well pleaded material allegations" solely for the purposes of these Preliminary Objections and does not concede that any of Plaintiff's allegations in fact have any factual basis.



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

company that, through its affiliates, offers insurance and administrative services to health benefit plans and their members nationwide. Aetna negotiates reduced prices for medical services offered by a network of high-quality, credentialed providers. Where Aetna has a direct contract with a medical provider, that provider is considered to be "in-network" with Aetna and reimbursement is governed by the terms of the contract.

Here, the Surgery Centers allege that they are out-of-network providers as to Aetna; this means that they do not have a direct agreement with Aetna governing reimbursement. (Ex. 1, Compl. ¶ 8.) Where there is no contract to govern reimbursement, Aetna makes payments based on the terms of the health benefit plan applicable to the patient in question. (*Id.* ¶¶ 9, 10.) According to the Surgery Centers, when Aetna received a bill from the Surgery Centers, (*id.* ¶ 10), Aetna determined the amount it was obligated to pay under the terms of the applicable health plan and issued a Provider Explanation of Benefits form (a "PEOB") with the payment to Plaintiffs, (*id.* ¶¶ 10–12).

**B. In February 2015, Aetna Implemented a New Reimbursement Policy for Out-of-Network Ambulatory Surgery Centers in Maryland.**

On February 1, 2015, Aetna adopted a new payment policy for reimbursing out-of-network providers in Maryland, such as the Surgery Centers. (*Id.* ¶ 14.) Under the new reimbursement policy, the Surgery Centers claim that Aetna pays out-of-network providers 200% of the rates established by Medicare for procedures performed at the Surgery Centers (*i.e.*, Aetna would pay twice as much as Medicare would pay for the same medical services). (*Id.*)[2]

[2] The Surgery Centers' claims do not directly challenge the validity of Aetna's new reimbursement policy, likely because a federal court in Maryland already found that the Aetna plans allowed for a 200% of Medicare reimbursement rate as "Aetna was empowered to reduce the recognized charge according to Aetna's Reimbursement Policies." *Upper Bay Surgery Ctr., LLC v. Aetna Health & Life Ins. Co.*, 2016 U.S. Dist. LEXIS 66436, at *7 (D. Md. May 19, 2016). This may be why the Surgery Centers fled Maryland to file the case in this forum.

After Aetna adopted this "200% of Medicare" policy, however, the Surgery Centers claim Aetna mistakenly paid higher rates for some patients than those called for by the policy. (*Id.* ¶¶ 15–16.) In other words, Aetna mistakenly paid the Surgery Centers more money than it should have (more than 200% of Medicare) for some Aetna-insured patients. (*Id.* ¶¶ 16, 22.)

Aetna notified the Surgery Centers of the overpayments and requested that the Surgery Centers refund the overpaid amount. (*Id.* ¶ 22.) Rather than returning the obvious overpayments, the Surgery Centers improperly pocketed the money. (*Id.* ¶¶ 23–24.) The Surgery Centers allege that Aetna then offset the overpayments by reducing future payments to the Surgery Centers. Specifically, when the Surgery Centers treated new Aetna patients, Aetna would not pay them for their services at the 200% of Medicare rate. Instead, the Surgery Centers allege that Aetna would calculate 200% of the Medicare rate for the patient in question and send the Plaintiffs the PEOB, but would not send a corresponding check with the PEOB. (*Id.* ¶¶ 25–27.) The PEOBs made it abundantly clear that Aetna "would not actually pay these moneys" because Aetna was offsetting prior overpayments, which the Surgery Centers had not returned. (*Id.* ¶¶ 74–75.) The Surgery Centers plainly admit that "Aetna explained" to them that it would not send a check due to the current deficit the Surgery Centers owed Aetna. (*Id.* ¶ 28.)

The Surgery Centers thus concede that they have been paid all that they should be paid (in the aggregate) for the Aetna members that they treated under Aetna's 200% of Medicare Policy. They nevertheless contend that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment." (*Id.* ¶ 42.) Despite this broad legal conclusion (which is afforded no deference at this stage of the proceedings), the Surgery Centers have not asserted a claim for breach of the individual insurance plans, their claims for



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

damages do not expressly rely upon the language of a single plan document, and they do not attach a single plan to their pleading.[3]

Instead, the Surgery Centers assert causes of action for: (1) unjust enrichment/quantum merit, (2) money had and received, (3) breach of implied-in-fact contract, (4) conversion, (5) misappropriation, and (6) declaratory relief. (*Id.* ¶¶ 183–241.) The Surgery Centers' factual allegations, however, are insufficient as a matter of law to support any of these claims.

## IV. ARGUMENT

### A. Standard of Review

Preliminary objections in the nature of a demurrer test the legal sufficiency of the challenged pleading, and preliminary objections will be sustained when the pleading fails to state a cause of action. *Hykes v. Hughes*, 835 A.2d 382, 383 (Pa. Super. Ct. 2003); *see also Cardenas v. Schober*, 783 A.2d 317, 321 (Pa. Super. Ct. 2001) ("A preliminary objection in the nature of a demurrer will be granted where the contested pleading is legally insufficient."). In determining whether the contested pleading is legally insufficient, the court "must accept as true all well pleaded material allegations and any reasonable inferences therefrom." *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 884 (Pa. 2010). However, a court must not accept as true "conclusions of law, unwarranted inferences, allegations, or expressions of opinion." *Id.*

[3] In New Jersey federal court, Plaintiffs' counsel has brought a putative class action under the Employee Retirement and Income Security Act ("ERISA"), claiming that these alleged offsets violate ERISA. Here, Plaintiffs' counsel has represented that the claims are non-ERISA in nature. Nevertheless, Plaintiffs' counsel is aware that Aetna's health plans contain various language that permit the type of offsets that are at issue in this case. *See Lutz Surgical Partners, PLLC v. Aetna, Inc.*, No. 15-cv-2595 (D.N.J.). This is likely why Plaintiffs are attempting to avoid the terms of the health plans in this case.

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

### B. Even Accepting Their Allegations as True for Purposes of this Motion, Plaintiffs' Claims Fail as a Matter of Law and Must Be Dismissed.

Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure provides for a preliminary objection on the basis of demurrer and/or legal insufficiency. Here, each of Plaintiffs' claims fail as a matter of law and must be dismissed on demurrer.

#### 1. ***Preliminary Objection No. 1 (Pa. R. Civ. P. 1028(a)(4)):*** The Surgery Centers' Claim for Unjust Enrichment Fails as a Matter of Well-Established Pennsylvania Law.

To plead a viable unjust enrichment claim in this context, the Surgery Centers must assert facts to show that they were not paid a "commercially reasonable rate" by Aetna.[4] They have not done so here. Accordingly, the Court should sustain Aetna's preliminary objection as to Count I.

Under Pennsylvania law, where an out-of-network medical provider (like the Surgery Centers) asserts an unjust enrichment claim, that medical provider must show that it has not been paid a "commercially reasonable rate." *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 508 (Pa. Super. Ct. 2003). In other words, "where there is no express agreement to pay, the law implies a promise to pay a ***reasonable fee*** for a health provider's services." *Id.* (citing *Eagle v. Snyder*, 604 A.2d 253 (Pa. Super. Ct. 1992) (emphasis added)). The Superior Court provided the following direction:

> Reasonable value, in accordance with the above-cited case law, is the value paid by the relevant community. The relevant community in this case comprises the Hospital's patients who are covered by insurance policies and federal programs. Thus, the Hospital should be awarded the average charge for the services at issue contained in contracts with governmental agencies and insurance companies.

---

[4] Plaintiffs do not specify which state law they are proceeding under (Maryland or Pennsylvania), though their pleading indicates that they seek to invoke Pennsylvania law. Regardless, under either Pennsylvania or Maryland law, the elements of unjust enrichment are the same. *Compare Styer v. Hugo,* 619 A.2d 347, 350 (Pa. Super. Ct. 1993) *with Mona v. Mona Elec. Grp., Inc.,* 176 Md. App. 672, 712-13, 934 A.2d 450, 473 (2007).

*Id.*; *Hosp. & Healthsystem Ass'n of Pa. v. Dep't of Pub. Welfare*, 888 A.2d 601, 614–15 (Pa. 2005) (affirming reasoning in *Temple* and striking rate legislation that was not based on a reasonable rate).

The Surgery Centers do not contend that they have been paid less than the reasonable value for their services as they are required to under Pennsylvania law. And the Surgery Centers do not plead any facts to suggest that Aetna paid them less than other commercial or governmental insurers pay the Surgery Centers for the same medical services. Medicare is the only payor other than Aetna referenced in the Complaint, and the Surgery Centers concede that Aetna paid them ***twice as much*** as Medicare would for the same services. Thus, the Surgery Centers have not pleaded any facts to suggest that Aetna has been unjustly enriched. The Surgery Centers instead suggest that Aetna is paying them ***more than*** a commercially reasonable rate.

More fundamentally, the Surgery Centers' theory does not make sense. They concede that Aetna has paid them, in the aggregate, at least 200% of Medicare for all of the Aetna members they have treated since February 2015 and they do not challenge the adequacy of that payment rate as part of this lawsuit. A Maryland federal court has already held that Aetna was entitled to implement the 200% of Medicare policy. *See Upper Bay Surgery Ctr., LLC v. Aetna Health & Life Ins. Co.*, 2016 U.S. Dist. LEXIS 66436, at *7 (D. Md. May 19, 2016). The Surgery Centers merely allege that Aetna paid too much on some claims and thus offset those overpayments on subsequent claims. As a matter of equity, though, these allegations only serve to confirm that Aetna paid the Surgery Centers reasonable amounts for their services in the aggregate. Equity does not permit them to seek additional funds now, as that would result in a windfall recovery for the Surgery Centers.



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

### 2. *Preliminary Objection No.2 (Pa. R. Civ. P. 1028(a)(4)):* This Court Must Dismiss Plaintiffs' Breach of Implied-in-Fact Contract Claim (Count III) Because Plaintiffs' Own Pleadings Undermine Their Theory.

"To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). It is well-settled that in order for a contract to exist, "there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and acceptance." *Mountain Props. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001). "An offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted." *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 764 A.2d 587, 593 (Pa. Super. Ct. 2000) (internal citations and quotations omitted); *see also Cameron v. Eynon*, 3 A.2d 423, 424 (Pa. 1939) (explaining that a contract implied-in-fact "arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances."). However, there is no valid contract unless the acceptance is "unconditional and absolute."[5] *Temple Univ. Hosp.*, 764 A.2d at 593.

Here, the Surgery Centers' allegations confirm that there was no meeting of the minds or "unconditional and absolute" offer and acceptance as is required by Pennsylvania law. The Surgery Centers' theory is that when Aetna responded to their invoices with PEOBs that listed a number as the "**ISSUED AMT**," this created an implied-in-fact contract under which Aetna agreed to send them a check for that amount. (Ex. 1, Compl. ¶¶ 209–10.) Thus, each time Aetna sent a PEOB, the Surgery Centers allege that the parties' conduct created an implied-in-fact

[5] This same is true under Maryland law. *See Lemlich v. Bd. of Trs.*, 385 A.2d 1185, 1189 (Md. 1978).

contract. (*Id.* ¶ 210.)[6] The Surgery Centers allege that when Aetna did not send a check for that amount, "Aetna breached those contracts." (*Id.* ¶ 212.)

But the Surgery Centers allegations defeat their own theory. They expressly plead that the very PEOBs they allegedly rely upon (which are attached to and incorporated within their pleading) are clearly marked "**NO PAY**." (*Id.* Ex. A.) Moreover, directly under the notation for "**ISSUED AMT**," the PEOB explains that Aetna ***would not be sending*** the Surgery Centers a check for that amount. (*Id.*) In fact, the Surgery Centers expressly plead that "[a]s the example [Compl. Ex. A] further shows, Aetna did not them send an actual check." (*Id.* ¶ 31.) And the Surgery Centers expressly plead that when Aetna sent the PEOBs, "Aetna explained" to the Plaintiffs that it was not going to be sending a check for the amount listed as "**ISSUED AMT**." (*Id.* ¶¶ 26–28 (emphasis added).) Through their own allegations, Plaintiffs thus concede that Aetna "expressly rejected" any purported offer to send a check for the number listed as "**ISSUED AMT**," *see Temple Univ.*, 764 A.2d at 593, which clearly shows that no meeting of the minds occurred.

Because the Surgery Centers' own pleading admits that Aetna "expressly rejected" the Surgery Centers' purported offer and explained in the PEOB that it would not be sending a check, no "reasonable person in the position of the parties would be led to understand" that Aetna was accepting a purported offer to send a check for the number listed as "**ISSUED AMT**." *See id.* (holding that no implied-in-fact contract existed where the parties did not agree on the appropriate reimbursement for the medical services at issue). Accordingly, this Court should sustain Aetna's preliminary objection and dismiss Count III with prejudice.

---

[6] Plaintiffs' conclusory allegations that "Aetna accepted these offers" and that "[t]his established valid and enforceable contracts between Aetna and the [Plaintiffs]" are mere legal conclusions that this Court must not accept as true. *See Crozer Chester Med. Ctr.,* 22 A.3d at 194; *Bayada Nurses*, 8 A.3d at 884.



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

### 3. ***Preliminary Objection No. 3 (Pa. R. Civ. P. 1028(a)(4)):*** **The Surgery Centers' Conversion Claim (Count IV) Fails as a Matter of Law for Several Reasons.**

In Pennsylvania, "conversion is widely understood as 'the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification.'"[7] *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. Ct. 2013) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. Ct. 2000)). Although money may be the subject of conversion, "it is well-settled that ***failure to pay a debt is not conversion***."[8] *McKesson Corp. v. Campbell*, 134 A.3d 502 (Pa. Super. Ct. 2015) (emphasis added); *see also Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003) ("[F]ailure to pay a debt is not conversion."); *Broederdorf v. Bacheler,* 129 F. Supp. 3d 182, 194 (E.D. Pa. 2015) (same).

Here, the Surgery Centers frame their claim as one for debt collection. They expressly concede this by noting on the Civil Cover Sheet to their Complaint that the "Case Type" is "***Debt Collection***." (See Complaint at Civil Cover Sheet (emphasis added)); *see also Tops Apparel Mfg. Co. v. Rothman*, 244 A.2d 436, 438 (Pa. 1968) ("Admissions . . . contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them."). Accordingly, this Court must sustain Aetna's preliminary objection and dismiss Count IV with prejudice.[9]

---

[7] This is consistent with a cause of action for conversion under Maryland law as well. *See Darcars Motors of Silver Spring, Inc. v. Borzym,* 841 A.2d 828, 836 (Md. 2004).

[8] This is also true under the Maryland law. *See Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. App. 1986) ("When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.").

[9] Even if this Court rejects the express admission by Plaintiffs that this is an action for "Debt Collection," Pennsylvania law also dictates that "an action for conversion will not lie

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Additionally, a plaintiff can only maintain a cause of action for conversion if the plaintiff "had actual or constructive possession of a chattel at the time of the alleged conversion."[10] *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994); *Pittsburgh Constr.*, 834 A.2d at 581. This is because "[i]t is only after it is determined that one has a property right in a chattel that an inquiry must be made as to whether there has been a deprivation of, or an interference with that right to constitute conversion." *Pioneer Commer. Funding Corp. v. Am. Fin. Mortg. Corp.*, 797 A.2d 269, 280 (Pa. Super. Ct. 2002); *see also Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 300 (E.D. Pa. 1993) (applying Pennsylvania law) ("[B]efore money can be converted, it must belong to the plaintiff."); *Conquest v. WCM Mortg. Corp.*, 2017 U.S. Dist. LEXIS 47463, at *53 (E.D. Pa. Mar. 29, 2017) ("To establish conversion, the plaintiff must establish that the defendant wrongfully took property from the plaintiff.").

Here, despite the fact that the PEOBs are clearly marked "**NO PAY**" and detail why Aetna is not issuing any payment, Plaintiffs contend that Aetna's use of the phrase "**ISSUED AMT**" in the PEOBs "gave the [Plaintiffs] constructive possession of the moneys at issue." (Ex. 1, Compl. ¶ 220.) This is a clearly incorrect legal conclusion which this Court must not accept as true. *See Crozer Chester Med. Ctr.,* 22 A.3d at 194; *Bayada Nurses*, 8 A.3d at 884. Instead, Pennsylvania courts have held that an individual only has constructive possession of property if the person has "the ability to exercise a conscious dominion" over the property, *i.e.*, "the power

---

where the alleged converter . . . refused to pay the proceeds of an insurance policy." *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp.*, 974 F. Supp. 822, 845 (E.D. Pa. 1997); *see also Allstate Prop. & Cas. Ins. Co. v. Vargas*, 2006 U.S. Dist. LEXIS 95608, at *12 (E.D. Pa. Dec. 28, 2006) (holding that "[n]o action for conversion will lie where a defendant is alleged to have . . . refused to pay insurance proceeds" because "[t]o hold otherwise would render an insurer potentially liable for conversion in the administration of *every* insurance claim."); *Koken v. Commonwealth Prof'l Grp., Inc.*, 2006 Phila. Ct. Com. Pl. LEXIS 73, at *3 (Pa. Com. Pl. Feb. 9, 2006) (same).

[10] The same is true under the law of Maryland. *Balt. & O. R. Co. v. Equitable Bank, N.A.*, 550 A.2d 407, 411 (Md. App. 1988).

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

to control [the property] and the intent to exercise that control." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983); *see also Commonwealth v. Cooper,* 2014 Pa. Super. Unpub. LEXIS 1159, *23 (Pa. Super. Ct. 2014); *United States v. Cartwright*, 359 F.3d 281, 290 n.6 (3d Cir. 2004) ("Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." (internal citations and quotations omitted)).

The Surgery Centers fail to allege any facts showing that, at the time of the conversion, they had "the ability to exercise a conscious dominion" over the money such that they had "the power to control [the money] and the intent to exercise that control." *Macolino*, 469 A.2d at 134. To the contrary, the Surgery Centers expressly plead that at the time of the alleged conversion, "***Aetna exercised dominion over the moneys***." (Ex. 1, Compl. ¶ 222 (emphasis added).) The Surgery Centers own pleadings establish that they did not have constructive possession of the money at issue at the time of the alleged conversion. For this additional and independent reason, this Court must sustain Aetna's preliminary objection and dismiss Count IV with prejudice.

4. ***Preliminary Objection No. 4 (Pa. R. Civ. P. 1028(a)(4)):*** **This Court Must Dismiss Plaintiffs' Claim for Misappropriation (Count V) Because Plaintiffs' Claim Is Not Cognizable Under Pennsylvania Law.**

In Count V, Plaintiffs assert a claim for "Misappropriation." (Ex. 1, Compl. ¶¶ 224–32.) Plaintiffs claim that Aetna misappropriated "value" or "money." (*Id.* ¶ 228–29.) However, there is no such thing as a cause of action for misappropriation of "value" or "money." *Wen v. Willis*, 117 F. Supp. 3d 673, 683 n.3 (E.D. Pa. 2015) (applying Pennsylvania law) ("[T]he Court finds that Wen cannot state a claim for misappropriation of monies, ***because the Court can find no evidence that such a cause of action exists under Pennsylvania law***." (emphasis added));

*Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 775 n.22 (M.D. Pa. 2008) (applying Pennsylvania law) (concluding that "every case where a plaintiff alleged misappropriation under Pennsylvania law concerned the misappropriation of trade secrets or ideas" and explaining that "a claim for conversion is recognized under Pennsylvania law, ***unlike their claim for misappropriation of monies***" (emphasis added)); *see also Pennsylvania Causes of Action*: *Index to Causes of Action* (noting that the only Pennsylvania causes of action for "misappropriation" are for misappropriation "Of Idea," "Of Rents," and "Of Trade Secret").

Accordingly, because Plaintiffs' claim for misappropriation is not cognizable under Pennsylvania law, this Court must sustain Defendant's preliminary objection and dismiss Count V with prejudice.

**5. *Preliminary Objection No. 5 (Pa. R. Civ. P. 1028(a)(4)):* This Court Must Dismiss Plaintiffs' Claim for Money Had and Received (Count II) Because Plaintiffs Have Failed to Plausibly Allege that Aetna Actually Received the Money at Issue from Another.**

"A cause of action for money had and received entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it." *Solomon v. Gibson*, 615 A.2d 367, 369 (Pa. Super. Ct. 1992).[11] Crucial to this claim is that the plaintiff is seeking to "recover money ***paid to the defendant***." *Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1186 n.2 (Pa. 2005) (emphasis added); *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 723 n.5 (Pa. 2012).

Here, the Surgery Centers fail to allege that Aetna actually received the money at issue either from Plaintiff or any other party that would satisfy Pennsylvania law. The money at issue is, and always was, in the possession of Aetna, and Plaintiffs have failed to allege that this

[11] This is not in conflict with Maryland's common law claim for money had and received. *See Benson v. State,* 887 A.2d 525, 547 (Md. 2005).



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

money was in fact "paid to [Aetna]" in any manner that could support such a claim. *Springfield Twp.*, 889 A.2d at 1186 n.2; *White*, 53 A.3d at 723 n.5. Plaintiffs attempt to plead around this obvious deficiency by alleging that "the moneys in question constructively passed through the hands of recoupment patients." (Ex. 1, Compl. ¶ 205.) However, this does not cure Plaintiffs' inadequate pleading. A claim for money had and received requires that the Defendant actually received the money at issue, not that the money at issue "constructively passed through the hands" of another individual. *See Hughey v. Robert Beech Assocs.*, 378 A.2d 425, 427 (Pa. Super. Ct. 1977).

Accordingly, because Plaintiffs have failed to plead that Aetna actually received the money at issue, this Court must sustain Defendant's preliminary objection and dismiss Count II with prejudice.

### C. *Preliminary Objection No. 6 (Pa. R. Civ. P. 1028(a)(4)):* Plaintiffs' Request for a Declaratory Judgement Is Improper as a Matter of Law and Must Be Dismissed on Demurrer Because It Seeks Only to Circumvent Negative Findings in a Pending New Jersey Federal Court Action.

Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure provides for a preliminary objection on the basis of demurrer and/or legal insufficiency. In their final Count, Plaintiffs seek a broad and improper declaratory judgment. Obtaining a declaratory judgment "is a matter of sound judicial discretion" and "is not obtainable as a matter of right." *OSRAM Sylvania Prods. v. Comsup Commodities, Inc.*, 845 A.2d 846, 848 (Pa. Super. Ct. 2004); *Ampco-Pittsburgh Corp. v. N.H. Ins. Co.*, 118 A.3d 444 (Pa. Super. Ct. 2015). The Surgery Centers ask the Court to declare that "Aetna had no right to set off the alleged overpayments" and to enjoin Aetna "from making any more setoffs of the alleged overpayments." (Ex. 1, Compl. ¶ 241(a), (b).) However, this Court should decline to resolve this issue with a declaratory judgment because it would



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

necessarily involve the interpretation of potentially hundreds of separate and distinct insurance plans, none of which Plaintiffs address with any specificity or attach to their pleading.

In support of its claim for a blanket declaratory judgment, Plaintiffs contend that "Aetna had full knowledge of the terms of its insurance contracts" with its insureds and that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment." (*Id.* ¶¶ 40, 236.) Thus, Plaintiffs allege the lawfulness of Aetna's actions rises and falls with the specific terms of each individual insurance policy. But they do not address those terms in their pleading. And Plaintiffs and their counsel know that Aetna's plan language varies from plan to plan. Plaintiffs make absolutely no attempt to address this fact in their pleading nor do they confront the fact that the Court would need to review potentially hundreds of insurance plans with varying plan language, together with correspondence between the parties and other documents that will confirm that the Surgery Centers may have agreed to the very offsets that they complain about here.

The Surgery Centers cannot sweep what amounts to hundreds of individualized mini-trials under the broad umbrella of a declaratory judgment action. The Court simply could not enter a broad declaration because the Court would need to make findings as to each individual contract. Perhaps this is why the Surgery Centers have not asserted a claim for breach of the individual insurance policies or provided any reference to what particular policies would allegedly be implicated. The only mention of actual plan language is the Surgery Center's selective quotation concerning unidentified "various Aetna plans," which may or may not contain the same language as the policies at issue here as the Surgery Centers do not even attempt to identify whether the selective quotation is included in a plan that is implicated in this

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

case. (Compl. ¶¶ 18–19)[12]; *see Rainmaker Capital of Chestnuthill, LLC v. Chestnuthill Twp.*, 2011 Pa. Commw. Unpub. LEXIS 478, at *9 (Pa. Commw. Ct. June 15, 2011) (affirming dismissal of declaratory action where the plaintiff's "averments regarding the rights of the parties under their Agreement[s] . . . are merely speculative").

It is more likely that the Surgery Centers are furiously trying to avoid any analysis of the individual plans because the Surgery Centers know that Aetna's health plans contain various language ***that permit*** the type of offsets that are alleged in this case. Currently in New Jersey federal court, the Surgery Centers' counsel are representing a putative class of facilities challenging the type of offsets that are at issue here. Through discovery in that case, Plaintiffs' counsel became aware of the various types of language Aetna uses in its plan documents and knows (1) that Aetna's plan documents contain varying language; (2) that Aetna's plan documents permit Aetna to seek offsets; and (3) that in many instances the providers at issue, via various correspondence, have agreed to the offsets.[13]

Put simply, the Surgery Centers' request for declaratory relief is speculative, would require the Court to conduct dozens if not hundreds of individual mini-trials, and serves as nothing more than an attempt to circumvent the case currently pending in federal court in New Jersey.

---

[12] In fact, in a case involving language identical to that quoted by the Surgery Centers, the United States District Court for the District of Maryland found that many of the plans containing this language provide that Aetna may "reduce the recognized charge by applying Aetna Reimbursement Policies." *Upper Bay Surgery Ctr., LLC*, 2016 U.S. Dist. LEXIS 66436, at *7.

[13] Indeed, in a brief recently filed by Aetna in that matter, Aetna in detail explains the language of its plans, which Plaintiffs' counsel has completely ignored (perhaps intentionally) in this case.

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

**D. *Preliminary Objection No. 7 (Pa. R. Civ. P. 1028(a)(5)):*The Surgery Centers Lack Standing Because They Have Not Suffered Any Injury-in-Fact.**

Rule 1028(a)(5) of the Pennsylvania Rules of Civil Procedure provides for a preliminary objection on the basis of lack of capacity to sue. An individual only has standing to file suit if that individual has been "aggrieved," meaning the individual "has a substantial, direct, and immediate interest in the outcome of the litigation." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005). "The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion." *Id.*; *see also Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011) ("The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge.").

Here, the Surgery Centers' own pleading establishes that they have not been "aggrieved" by the purported actions of Aetna because they concede that Aetna paid them, in the aggregate, the appropriate amount of money for medical services provided to patients covered by Aetna plans. Instead, the Surgery Centers dispute Aetna's purported method of recovering overpayments that it mistakenly remitted to the Surgery Centers. But, the Surgery Centers fail to put forth any factual allegations demonstrating how Aetna's recoupment of overpayments "negatively impacted" them "in some real and direct fashion." *Pittsburgh Palisades Park*, 888 A.2d at 660. If anything, Aetna paid the Surgery Centers too soon for services that the Surgery Centers would provide in the future to Aetna members. This served only to benefit the Surgery Centers.

The Surgery Centers concede that Aetna has paid them, in the aggregate, at least 200% of Medicare for all of the Aetna members they have treated since February 1, 2015. The Surgery Centers also do not challenge Aetna's ability to institute the 200% of Medicare rate and a federal

court has already held that Aetna was entitled to implement that policy. *See Upper Bay Surgery Ctr., supra*. Accordingly, because the Surgery Centers have not plausibly alleged that they were negatively impacted in some real and direct fashion by the timing of the payments, this Court must sustain Aetna's preliminary objections and dismiss the Complaint with prejudice.

## V. RELIEF SOUGHT

For all the foregoing reasons, Defendant respectfully requests that this Court enter the attached Order sustaining Defendant's Preliminary Objections to Plaintiffs' Complaint, and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

*/s/ Gregory S. Voshell*

JOHN M. ELLIOTT
GREGORY S. VOSHELL
THOMAS B. HELBIG, JR.
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: May 23, 2017



Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

Case# 2017-06786-7 Docketed at Montgomery County Prothonotary on 05/23/2017 10:30 AM, Fee = $0.00

# EXHIBIT 1

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY LP<br><br>vs.<br><br>AETNA INC | NO. 2017-06786 |

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ROCKVILLE AMBULATORY SURGERY LP

vs.

AETNA INC

NO. 2017-06786

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

---

Name of Plaintiff/Appellant's Attorney: JASON B MARTIN, Esq., ID: 82767

Self-Represented (Pro Se) Litigant [ ]

---

**Class Action Suit** [ ] Yes [X] No

**MDJ Appeal** [ ] Yes [X] No

**Money Damages Requested** [X]

**Commencement of Action**:

Complaint

**Amount in Controversy**:

More than $50,000

---

### Case Type and Code

Contract:

Debt Collection: Other

**Other:**

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP
11400 Rockville Pike
Suite 108
Rockville, MD 20852-3004

and

SILVER SPRING SURGERY CENTER, LLC
1111 Spring Street
Suite 130
Silver Spring, MD 20910

and

URBANA GI ENDOSCOPY CENTER, LLC,
3280 Urbana Pike
Suite 104
Ijamsville, MD 21754

and

ADVANCED SURGERY CENTER, LLC,
10110 Molecular Drive 100
Rockville, MD 20850

Plaintiffs,

v.

AETNA, INC.
151 Farmington Avenue
Hartford, CT 06156

Defendant

DOCKET NO.:

CIVIL ACTION – LAW/EQUITY

Jury Trial Demanded

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to

do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERENCE SERVICE
MONTGOMERY COUNTY BAR ASSOCIATION
100 WEST AIRY STREET (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

THE MARTIN LAW FIRM, P.C.

By: ______________________
Jason B. Martin, Esquire
Attorney for Plaintiff

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP
11400 Rockville Pike
Suite 108
Rockville, MD 20852-3004

and

SILVER SPRING SURGERY CENTER, LLC
1111 Spring Street
Suite 130
Silver Spring, MD 20910

and

URBANA GI ENDOSCOPY CENTER, LLC,
3280 Urbana Pike
Suite 104
Ijamsville, MD 21754

and

ADVANCED SURGERY CENTER, LLC,
10110 Molecular Drive 100
Rockville, MD 20850

Plaintiffs,

v.

AETNA, INC.
151 Farmington Avenue
Hartford, CT 06156

Defendant

DOCKET NO.:

CIVIL ACTION – LAW/EQUITY

Jury Trial Demanded

**CIVIL ACTION - COMPLAINT**

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $300.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

Plaintiffs, through their undersigned attorneys, for their Complaint at Law and in Equity against Defendant, allege the following based on their personal knowledge or upon information and belief based upon reasonable investigation:

## Introduction

1. Defendant illegally refused to pay Plaintiffs moneys that Defendant rightfully ought to have paid, as a matter of law and equity.

2. Defendant refused to pay these amounts because it illegally asserted the right to take a unilateral set-off based on an alleged prior "debt," even though Plaintiffs did not actually owe such prior "debt" and such "debt" related to other payments that were made to Plaintiffs for services provided to different patients involving other accounts.

## Parties

3. The Plaintiffs, Rockville Ambulatory Surgery, LP ("RAS"), Silver Spring Surgery Center, LLC ("SSSC"), Urbana GI Endoscopy Center, LLC ("UGI"), and Advanced Surgery Center, LLC ("Advanced"), are four ambulatory surgical centers ("ASCs") located and doing business in Maryland. Their addresses are, respectively, 11400 Rockville Pike, Ste. 108, Rockville, MD 20852-3004; 1111 Spring Street, Ste. 130, Silver Spring, MD 20910; and 3280 Urbana Pike, Ste. 104, Ijamsville, MD 21754; 10110 Molecular Drive 100, Rockville, MD 20850.

4. The Defendant, Aetna Inc. ("Aetna"), is a health insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its registered office at 980 Jolly Road, Blue Bell, PA 19422, which is in Montgomery County, and with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, Connecticut 06156.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:51 AM, Fee = $0.00

## Jurisdiction and Venue

5. The jurisdiction of this court is proper under 42 Pa. Cons. Stat. § 931(a).

6. Venue in this court is proper in that the Defendant's registered office is in Montgomery County, Pennsylvania and the Defendant regularly conducts business in Montgomery County, Pennsylvania.

## General Allegations

7. The ASCs were (and are) out-of-network providers when it comes to patients who are insured by health insurance plans issued by Aetna ("Aetna insureds"), such that the ASCs have not entered into any contractual relationship with Aetna to accept discounted billing rates for health care services provided to Aetna-insured patients.

8. Nevertheless, the ASCs provided medical or surgical care to many Aetna-insured patients.

9. Under the terms of these patients' insurance policies, they were entitled to insurance benefits from Aetna for medical care received from out-of-network providers such as the ASCs.

10. The ASCs, after providing medical services to these Aetna insureds, sent the bills to Aetna.

11. Aetna responded by processing the claims and sending the ASCs "Provider Explanation of Benefits" forms ("PEOB"), which specified how much of each total bill Aetna would pay.

12. Each PEOB also said that Aetna had issued payment to the ASC for that amount and attached a corresponding check.

13. Until 2015, Aetna compensated the ASCs at a reasonable level derived primarily from the usual, customary, and reasonable rates ("UCR") for the medical services that they provided.

14. On February 1, 2015, Aetna adopted a new internal methodology for compensating out-of-network providers, pursuant to which it only paid 200% of Medicare. This led to a material reduction in reimbursements, well below the amount paid under the earlier methodology.

15. Aetna did not inform the ASCs of this new policy when it was adopted internally, however, and did not consistently follow this policy when processing claims submitted by the ASCs.

16. Instead, Aetna continued to reimburse the ASCs for at least some Aetna-insured patients (the "recoupment patients") at the previous higher rate.

17. At no time since announcing that it had reduced its fee schedule for out-of-network ASC services has Aetna disclosed what reimbursement methodology is required under its healthcare plans, nor has it explained how its new Medicare-based reimbursement policy is consistent with its plan documents.

18. Many Aetna plans do not permit reimbursement based on a percentage of Medicare. For example, many Aetna plans specify that out-of-network provider s will be paid based on a "Recognized Charge," defined as "the lesser of:

- What the provider bills or submits for that service or supply; and
- For professional services and other services or supplies not mentioned below: the 95th percentile of the Prevailing Charge Rate for the Geographic Area where the service is furnished."

19. Various Aetna plans then define the "Prevailing Charge Rate" as "rates reported by FAIR Health, a nonprofit company, in their database."



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:50 AM, Fee = $0.00

20. Aetna's reimbursement policy based on 200% of Medicare is inconsistent with and contrary to the "Prevailing Charge Rate" and the rates reported by FAIR Health, leading to far lower reimbursements for the ASCs than is permitted under the applicable health insurance plans.

21. Aetna did not assert that the relevant plan language had changed to justify the adoption of the new reimbursement policy and there is no evidence that it has.

22. Nevertheless, based on this unilateral change in methodology, Aetna insisted after-the-fact that it had been overpaying the ASCs on behalf of the recoupment patients since February 1, 2015, when it adopted its internal policy changing its payment methodology, and demanded that the ASCs refund the difference between what Aetna had paid and what it now said it should have paid.

23. The ASCs maintained that, since the payments received from Aetna had been in partial payment for the medical services rendered to the earlier Aetna insureds, the ASCs were entitled to keep the money, and so refused Aetna's demands for refunds.

24. The ASCs continued to provide medical care to different Aetna insureds ("setoff patients"), and continued to send the bills for those services to Aetna.

25. Aetna continued to respond by processing the claims and sending PEOBs to the ASCs, in which Aetna agreed to pay part of the bill, albeit generally a lesser part based on the 200% of Medicare compensation policy, and in which Aetna said that it had "issued" payment to the ASCs for that amount.

26. As reflected in the PEOBs, Aetna had processed the new claims submitted by the ASCs, determined that the ASCs had provided covered services under the applicable health



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017

insurance plans, and therefore found that benefit payments for such services were due and owing to the ASCs and purported to "issue" such amounts to the ASCs.

27. Aetna, however, did not attach checks in those amounts.

28. Instead, Aetna explained that, because it still believed that it was owed money by the ASCs to repay the earlier alleged overpayments, it was reducing the payments for the setoff patients to set off these alleged "debts."

29. Attached as **EXHIBIT A** is an example of a PEOB sent to one of the ASCs (redacted to exclude patient-identifying information). This form is similar to the PEOBs at issue in this action with regard to each ASC.

30. In the example, Aetna shows that a claim was submitted by Advanced, which Aetna then processed and determined that benefits were due and owing to Advanced. The PEOB therefore represented that Aetna had "issued" $11,347.12 to Advanced for the services it had provided to the Aetna-insured patient.

31. As the example further shows, Aetna did not then send an actual check to Advance, but instead engaged in a unilateral setoff by applying the amount that was due and owing to Advanced to a "debt" that Aetna unilaterally asserted was owed by Advance for a previous benefit payment that had been issued for a different patient.

32. Aetna made these setoffs unilaterally, such that there was no independent or judicial verification that that there had been an overpayment or that any debt existed at all.

33. The setoff patients and the recoupment patients were different people.

34. Aetna refused to pay on behalf of one patient in order to recover what it alleged were overpayments made on behalf of a different patient.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

35. The setoffs Aetna made (and continues to make) were not for the same accounts and often were not for the same insurance plans or policies.

36. For some setoff patients, Aetna issued PEOBs agreeing to pay a portion of those setoff patients' bills, but then said that it was setting off that payment to recover an earlier alleged overpayment from a different recoupment patient.

37. Later still, Aetna claimed that the amount it had agreed to pay for that setoff patient, but which it had never paid, had been too high, and it demanded repayment of the alleged overpayment it had never actually made.

38. At no time did Aetna ever offer – either to the ASCs or to the recoupment patients or to the setoff patients – any explanation or rationale based on the terms of any of its insurance plans as to why it should only cover the treatments at 200% of Medicare instead of at the higher UCR level it had previously used.

39. Nor did Aetna ever demonstrate when processing new claims, issuing repayment demands, or taking setoffs that its plan terms had changed to allow it to alter its reimbursement policy.

40. With regard to all of the setoffs which were taken by Aetna, the alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the setoff patients.

41. No judicial action was taken by Aetna to verify or uphold the validity of the purported "debt," but Aetna instead relied on its unilateral and unsupported assertion that a debt existed.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 9:53 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:50 AM, Fee = $0.00

42. Moreover, none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment on behalf of a different plan or a different patient.

43. At all times relevant to this complaint, none of the setoff patients at issue in this action were covered by insurance policies or plans governed by the Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, 88 Stat. 829 (codified in part at 29 U.S.C. § 1001, *et al.*) ("ERISA").

44. RAS has suffered losses totaling at least $193,512.94 as a result of these setoffs.

45. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

46. SSSC has suffered losses totaling at least $33,219.63 as a result of these setoffs.

47. These damages are likely to continue to accrue, as Aetna continues its setoff policy.

48. UGI has suffered losses totaling at least $102,890.72 as a result of these setoffs.

49. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy.

50. Advanced has suffered losses totaling at least $223,010.10 as a result of these setoffs.

51. These damages are likely to continue to accrue, as Aetna continues its improper setoff policy and as more facts become available.

## **Specific Examples**

### **RAS Examples**

52. On April 9, 2015, RAS treated recoupment patient Alpha One.

53. Patient Alpha One's insurance policy was not governed by ERISA.

54. RAS billed $24,621.50 to Aetna for this treatment.

55. On or about April 23, 2015, Aetna agreed to pay, and did pay, $22,388.52 of that bill.

56. On or about January 6, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $21,224.75 and demanding repayment in that amount.

57. RAS, maintaining its right to keep the money, refused to repay it.

58. On August 13, 2015, RAS treated recoupment patient Alpha Two.

59. Patient Alpha Two's insurance policy was not governed by ERISA.

60. RAS billed $28,621.00 to Aetna for this treatment.

61. On or about September 16, 2015, Aetna agreed to pay, and did pay, $26,124.68 of that bill.

62. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $24,901.50 and demanding repayment in that amount.

63. RAS, maintaining its right to keep the money, refused to repay it.

64. On October 8, 2015, RAS treated recoupment patient Alpha Three.

65. Patient Alpha Three's insurance policy was not governed by ERISA.

66. RAS billed $14,719.00 to Aetna for this treatment.

67. On or about September 16, 2015, Aetna agreed to pay, and did pay, $8,756.40 of that bill.

68. On or about March 30, 2016, Aetna wrote to RAS claiming that it had overpaid that bill in the amount of $8,019.19 and demanding repayment in that amount.

69. RAS, maintaining its right to keep the money, refused to repay it.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:55 AM, Fee = $0.00

70. On January 11, 2016, RAS treated setoff patient Beta One.

71. Patient Beta One's insurance policy was not governed by ERISA.

72. RAS billed Aetna $28,421.50 for the procedure itself and $4,100.00 for the anesthesia.

73. On or about January 21, 2016, Aetna sent RAS a PEOB in which it agreed to pay $989.96 for the former and $804.01 for the latter and stated that it had issued payments to RAS in those amounts.

74. Later in that same January 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

75. Aetna based this refusal to pay in part on the grounds that Aetna still claimed to be owed $21,224.75 by RAS on account of the alleged overpayment made on behalf of Patient Alpha One.

76. Aetna also based this refusal to pay on the grounds that Aetna still claimed to be owed other moneys on account of alleged overpayments made on behalf of another recoupment patient, Patient Alpha Four.

77. Patient Alpha Four's insurance policy was not governed by ERISA.

78. The alleged overpayments combined exceeded the combined $1,793.97 that Aetna owed RAS on behalf of patient Beta One.

79. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Four.

80. On April 18, 2016, RAS treated setoff patient Beta Two.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

81. Patient Beta Two's insurance policy was not governed by ERISA.

82. RAS billed $24,621.50 to Aetna for this treatment.

83. On or about May 12, 2016, Aetna sent RAS a PEOB in which it agreed to pay $15,428.50 of that bill and stated that it had issued payment to RAS in that amount.

84. Later in that same May 12, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

85. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $15,428.50 by RAS on account of the alleged overpayments made on behalf of patient Alpha One and patient Alpha Three, which exceeded the sum that it owed RAS on behalf of patient Beta Two.

86. Aetna declared that it was setting off the money it owed on behalf of setoff patient Beta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patients Alpha One and Alpha Three.

87. On July 11, 2016, RAS treated setoff patient Beta Three.

88. Patient Beta Three's insurance policy was not governed by ERISA.

89. RAS billed Aetna $25,731.50 for the procedure itself and $4,100.00 for the anesthesia.

90. On or about July 14, 2016, Aetna sent RAS a PEOB in which it agreed to pay $622.67 for the former and $3,075.00 for the latter and stated that it had issued payments to RAS in those amounts.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/24/2017 10:53 AM, Fee = $0.00

91. Later in that same July 11, 2016 PEOB, however, Aetna declared that it would not actually pay these moneys to RAS, despite having represented that the payments had been "issued" to RAS.

92. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by RAS on account of the alleged overpayment made on behalf of patient Alpha Two, which exceeded the combined $3,697.67 that it owed RAS on behalf of patient Beta Three.

93. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Beta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Alpha Two.

**SSSC Examples**

94. On February 3, 2016, SSSC treated recoupment patient Gamma One.

95. Patient Gamma One's insurance policy was not governed by ERISA.

96. Aetna billed $48,832.58 to Aetna for this treatment.

97. On or about February 18, 2016, Aetna agreed to pay, and did pay, $46,706.53 of that bill.

98. On or about May 11, 2016, Aetna wrote to SSSC claiming that it had overpaid that bill in the amount of $45,010.07 and demanding repayment in that amount.

99. SSSC, maintaining its right to keep the money, refused.

100. On May 20, 2016, SSSC treated setoff patient Delta One.

101. Patient Delta One's insurance policy was not governed by ERISA.

102. SSSC billed $23,426.50 to Aetna for this treatment.

103. On or about June 6, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $17,717.94 of that bill and stated that it had issued payment to SSSC in that amount.

104. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

105. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the $17,717.94 that it owed SSSC on behalf of patient Delta One.

106. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

107. On June 29, 2016, SSSC treated setoff patient Delta Two.

108. Patient Delta Two's insurance policy was not governed by ERISA

109. SSSC billed Aetna $25,016.78 for the procedure itself and $3,200.00 for the anesthesia.

110. On or about July 7, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $857.00 for the former and $3,200.00 for the latter and stated that it had issued payments to SSSC in those amounts.

111. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

112. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $4,057.00 that it owed SSSC on behalf of patient Delta Two.

113. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 9:53 AM, Fee = $0.00

114. On July 15, 2016, SSSC treated setoff patient Delta Three.

115. Patient Delta Three's insurance policy was not governed by ERISA.

116. SSSC billed Aetna $27,363.38 for the procedure itself and $4,100.00 for the anesthesia.

117. On or about July 21, 2016, Aetna sent SSSC a PEOB in which it agreed to pay $1,539.76 for the former and $3,863.26 for the latter and stated that it had issued payments to SSSC in those amounts.

118. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to SSSC, despite having represented that the payments had been "issued" to SSSC.

119. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by SSSC on account of the alleged overpayment made on behalf of patient Gamma One, which exceeded the combined $5,403.02 that it owed SSSC on behalf of patient Delta Three.

120. Aetna declared that it was setting off the moneys it owed on behalf of setoff patient Delta Three in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Gamma One.

**UGI Examples**

121. On September 1, 2015, UGI treated recoupment patient Epsilon One.

122. Patient Epsilon One's insurance policy was not governed by ERISA.

123. UGI billed $31,101.00 to Aetna for this treatment.

124. On or about October 8, 2015, Aetna agreed to pay, and did pay, $31,101.00 of that bill.

125. On or about February 5, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $29,076.62 and demanding repayment in that amount.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

126. UGI, maintaining its right to keep the money, refused.

127. On October 22, 2016, UGI treated recoupment patient Epsilon Two.

128. Patient Epsilon Two's insurance policy was not governed by ERISA.

129. UGI billed $19,801.00 to Aetna.

130. On or about November 12, 2015, Aetna agreed to pay, and did pay, $5,940.30 of that bill.

131. On or about March 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $4,988.23 and demanding repayment in that amount.

132. UGI, maintaining its right to keep the money, refused.

133. On July 22, 2016, UGI treated setoff patient Zeta One.

134. Patient Zeta One's insurance policy was not governed by ERISA.

135. UGI billed Aetna $25,451.00 for the procedure itself and $2,800.00 for the anesthesia.

136. On or about August 11, 2016, Aetna sent UGI a PEOB in which it agreed to pay $25,451.00 for the former and $2,800.00 for the latter and stated that it had issued payments to UGI in those amounts.

137. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

138. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayments made on behalf of various recoupment patients, including patient Epsilon One.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

139. Aetna declared that it was setting off $907.84 it owed on behalf of setoff patient Zeta One in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon One.

140. Aetna also refused to pay the rest of the moneys it owed on behalf of patient Zeta One in order to set off alleged overpayments from other recoupment patients.

141. Despite having never paid anything on behalf of patient Zeta One, on November 11, 2016, Aetna wrote to UGI claiming that it had overpaid that bill in the amount of $22,469.10 and demanding repayment in that amount.

142. On November 3, 2016, UGI treated setoff patient Zeta Two.

143. Patient Zeta Two's insurance policy was not governed by ERISA.

144. UGI billed $21,751.00 to Aetna for this treatment.

145. On or about November 17, 2016, Aetna sent UGI a PEOB in which it agreed to pay $769.45 of that bill and stated that it had issued payments to UGI in that amount.

146. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to UGI, despite having represented that the payments had been "issued" to UGI.

147. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed money by UGI on account of the alleged overpayment made on behalf recoupment patient Epsilon Two.

148. Aetna declared that it was setting off the $769.45 it owed on behalf of setoff patient Zeta Two in order to recoup the moneys it claimed to be owed on behalf of recoupment patient Epsilon Two.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

**Advanced Examples**

149. On 19, 2015, Advanced treated recoupment patient Eta One (all patient names have been replaced with aliases in the interest of patient privacy).

150. Patient Eta One's insurance policy was not governed by ERISA.

151. Advanced billed $32,654.00 to Aetna for this treatment.

152. On or about September 24, 2015, Aetna agreed to pay, and did pay, $30,794.00 of that bill, plus 1,995.50 in regulatory late penalties, for a total of $32,793.50 that Aetna paid.

153. On or about November 23, 2015, Aetna wrote to Advanced claiming that it had overpaid that bill in the amount of $31,849.38 and demanding repayment in that amount.

154. Advanced, maintaining its right to keep the money, refused to repay it.

155. On June 30, 2015, Advanced treated setoff patient Theta One.

156. Patient Theta One's insurance policy was not governed by ERISA.

157. Advanced billed Aetna $12,704.00 for this treatment.

158. On or about November 24, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $12,574.00 of that bill plus $351.39 in regulatory late penalties, for a total of $12,925.39, and stated that it had issued payment to Advanced in that amount.

159. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

160. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $12,925.39 by Advanced on account of the alleged overpayments made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta One.

161. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta One in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

162. On October 9, 2015, Advanced treated setoff patient Theta Two.

163. Patient Theta Two's insurance policy was not governed by ERISA.

164. Advanced billed Aetna $1,000.02 for this treatment.

165. On or about December 2, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $130.06 of that bill and stated that it had issued payment to Advanced in that amount.

166. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

167. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $130.06 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Two.

168. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Two in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

169. On September 25, 2015, Advanced treated setoff patient Theta Three.

170. Patient Theta Three's insurance policy was not governed by ERISA.

171. Advanced billed Aetna $11,804.00 for this treatment.

172. On or about December 10, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $11,347.12 of that bill and stated that it had issued payment to Advanced in that amount.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

173. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

174. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed more than $11,347.12 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, which exceeded the sum that it owed Advanced on behalf of patient Theta Three.

175. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Three in order to recoup the money it claimed to be owed on behalf of recoupment patient Eta One.

176. On May 5, 2015, Advanced treated setoff patient Theta Four.

177. Patient Theta Four's insurance policy was not governed by ERISA.

178. Advanced billed Aetna $11,804.00 for this treatment.

179. On or about December 15, 2015, Aetna sent Advanced a PEOB in which it agreed to pay $10,474.69 of that bill and stated that it had issued payment to Advanced in that amount.

180. Later in that same PEOB, however, Aetna declared that it would not actually pay these moneys to Advanced, despite having represented that the payments had been "issued" to Advanced.

181. Aetna based this refusal to pay on the grounds that Aetna still claimed to be owed at least $5,447.31 by Advanced on account of the alleged overpayment made on behalf of patient Eta One, plus at least $5,027.38 on account of an alleged overpayment made on behalf of another recoupment patient, Eta Two, which together equaled or exceeded the sum that it owed Advanced on behalf of patient Theta Four.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:50 AM, Fee = $0.00

182. Aetna declared that it was setting off the money it owed on behalf of setoff patient Theta Four in order to recoup the money it claimed to be owed on behalf of recoupment patients Eta One and Eta Two.

**Count I – Unjust Enrichment/Quantum Meruit**

183. Paragraphs 1 through 182 are incorporated herein as though fully set forth.

184. Aetna has, in effect, received through the setoffs money from the ASCs.

185. If Aetna did in fact pay more than it should have under its contracts with the recoupment patients, then it should have sought recovery from them, not from the ASCs.

186. The ASCs were entitled to have their bills paid.

187. By setting off payments to the ASCs that Aetna should have made on behalf of the setoff patients, Aetna has benefited at the expense of the ASCs.

188. As such, the ASCs have conferred substantial benefit upon Aetna.

189. Aetna has retained this benefit: the moneys are still in Aetna's possession, or Aetna has benefited financially by "recovering" the alleged overpayments on behalf of the Plans that Aetna unilaterally asserted had been overpaid and receiving compensation for such services.

190. Aetna has been unjustly enriched at the expense of the ASCs.

191. Due to Aetna's unjust enrichment, the ASCs are entitled to proper compensation.

192. Aetna's unjust enrichment at the ASCs expense has damaged the ASCs.

193. The value of the moneys Aetna received through the setoffs is at least $552,633.39.

194. Aetna has refused to pay the ASCs the value of this money.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/01/2017 10:50 AM, Fee = $300.00

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**<u>Count II – Money Had and Received</u>**

195. Paragraphs 1 through 194 are incorporated herein as though fully set forth.

196. At all times relevant to this claim, none of the setoff patients at issue in this claim were covered by insurance policies or plans governed by ERISA.

197. Aetna has in its possession moneys that it agreed in the PEOBs to pay to the ASCs, or it received financial benefits from "recovering" funds that are the property of the ASCs and giving it to health insurance plans which Aetna unilaterally asserted had overpaid Plaintiffs.

198. The ASCs earned this money by providing medical care to the setoff patients.

199. In equity and good conscience, the moneys in question belong to the ASCs.

200. Aetna ought, in equity and good conscience, to pay the moneys in question to the ASCs.

201. Aetna, however, has refused to make the payments to the ASCs.

202. If Aetna is correct that it overpaid on behalf of the recoupment patients and that it is entitled to be reimbursed for those overpayments, then the parties who were obligated to reimburse Aetna were the recoupment patients.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on [illegible]/2017 [illegible] AM, Fee = $[illegible]

203. By setting off moneys that ought to have been paid to the ASCs on behalf of the setoff patients, Aetna was wrongfully diverting those moneys from their proper use to pay the alleged obligations of the recoupment patients.

204. The recoupment patients gave no consideration for having had their alleged obligations thereby reduced.

205. The moneys in question constructively passed through the hands of the recoupment patients but are now in the possession of Aetna.

206. The value of the moneys in question is at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**<u>Count III – Breach of Implied-in-Fact Contract</u>**

207. Paragraphs 1 through 206 are incorporated herein as though fully set forth.

208. In sending their bills to Aetna, both for the recoupment patients and the setoff patients, the ASCs were offering to withhold billing the patients until Aetna had processed and paid the claims and not to bill the Aetna-insured patients for the amount of the bills that Aetna ultimately agreed to pay.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

209. In processing the claims, determining the amount that is owed from the underlying insurance plan to the ASCs, and sending the PEOBs to the ASCs in which it represented that the funds had been "issued" to the ASCs, Aetna accepted these offers.

210. This established valid and enforceable contracts between Aetna and the ASCs.

211. By paying what it agreed to in the PEOBs Aetna sent on behalf of the recoupment patients, Aetna performed under those contracts.

212. By refusing, however, to pay what it agreed to in the PEOBs Aetna sent on behalf of the setoff patients, despite having represented that these funds were "issued" to the ASCs, Aetna breached those contracts.

213. The ASCs have demanded payment under the terms of these contracts.

214. Aetna has processed the claims and determined the amounts that are due and owing to the ASCs under the applicable health insurance plans, but has refused to make payment.

215. The ASCs have been injured by the refusal of the Defendant to make the payments required under the contracts.

216. The amount of the injuries in question totals at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against the Defendant in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/24/2017 10:53 AM, Fee = $300.00

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count IV – Conversion**

217. Paragraphs 1 through 216 are incorporated herein as though fully set forth.

218. Aetna deprived the ASCs of their right of property and their right of use and possession of the moneys that Aetna set off.

219. The ASCs did not consent to this deprivation, and Aetna had no legal right or justification for making the setoffs.

220. The PEOBs that Aetna sent, by declaring that it had already issued payments to the ASCs on behalf of the setoff patients, gave the ASCs constructive possession of the moneys at issue.

221. By sending the letters to the ASCs, Aetna engaged in a physical act to withhold possession of the moneys owing to the ASCs.

222. In so doing, Aetna exercised dominion over the moneys, in defiance of the ASCs' rights.

223. By depriving the ASCs of their rights to the moneys that Aetna set off, Aetna has damaged the ASCs in the amount of at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:50 AM, Fee = $300.00

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count V – Misappropriation**

224. Paragraphs 1 through 223 are incorporated herein as though fully set forth.

225. The ASCs made substantial investments of time, effort, and money into treating both the recoupment patients and the setoff patients.

226. Every procedure the ASCs performed took time and effort on the part of the physicians who work for the ASCs.

227. The ASCs had to invest substantial money into setting up their surgical facilities.

228. This investment of time, effort, and money created value for the recoupment patients and the setoff patients.

229. Aetna appropriated that value by leading the ASCs to believe that they would be reimbursed by Aetna for treating the recoupment patients and the setoff patients, and then not reimbursing them.

230. It cost Aetna very little effort for Aetna to engage in its misappropriation of the ASCs' assets: all Aetna had to do was send the PEOBs to the ASCs in which it represented that payments had been "issued," and then not pay what Aetna had promised to pay.

231. This misappropriation has injured the ASCs: they have not been compensated for the value that they created by providing medical care to the recoupment patients and the setoff patients.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

232. The total amount of this injury is at least $552,633.39.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Granting judgment for the Plaintiffs and against Defendants in the amount of $552,633.39;

b. Granting Plaintiffs their expenses, including court costs incurred in connection with this action;

c. Granting Plaintiffs interest at the statutory rate from the dates of each setoff; and,

d. Granting such other relief as the Court deems equitable and just.

**Count VI – Declaratory and Injunctive Relief**

233. Paragraphs 1 through 232 are incorporated herein as though fully set forth.

234. The ASCs provided medical services to their patients, including both the recoupment patients and the setoff patients, and were entitled to have their bills paid in full.

235. The ASCs surrendered their claims to have their bills paid by their patients to the extent that Aetna paid those bills instead.

236. Aetna had full knowledge of the terms of its insurance contracts with both the recoupment patients and the setoff patients.

237. Aetna paid the bills of the recoupment patients of its own free will.

238. There was no fraud, duress, or any wrongdoing by the ASCs, the recoupment patients, the setoff patients, or anyone else.

239. If Aetna had been mistaken as the extent of its obligations to indemnify the recoupment patients, then Aetna itself was solely responsible for that mistake.



Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00

240. The alleged "debt" that Aetna asserts was owed to it by the ASCs was not mutual with the funds that were due and owing to the ASCs for providing health care services to the offset patients and no judicial action was taken by Aetna to verify or uphold the validity of the purported "debt.".

241. Aetna was not entitled to recover the overpayments through self-help at the expense of either the ASCs or the setoff patients.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter an Order as follows:

a. Declaring that Aetna had no right to set off the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

b. Enjoining Aetna from making any more setoffs of the alleged overpayments made on behalf of the recoupment patients from the payments on behalf of the setoff patients;

c. Granting Plaintiffs their expenses, including court costs incurred in connection with this action; and

d. Granting such other relief as the Court deems equitable and just.

Dated: March 30, 2017

Respectfully Submitted,

THE MARTIN LAW FIRM, P.C.

By: ______________________________

Jason B. Martin, Esquire
Attorney ID: 82767
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
(215) 646-3980
*Attorney for Plaintiffs*

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

ZUCKERMAN SPAEDER, LLP
D. Brian Hufford, Esquire
(pro hac vice pending)
399 Park Avenue, 14th floor
New York, NY 10022
(212) 704-9600
*Attorney for Plaintiffs*

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/23/2017 10:50 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

# VERIFICATION

I, Dr. Ajay Bakshi state that I am the General Partner of Advanced Surgical Center , LLC, the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dr. Ajay Bakshi

Dated: 3/31/17

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:53 AM, Fee = $0.00

VERIFICATION

I, Dr. Charles Obioha, state that I am the General Partner/Medical Director of Rockville Ambulatory Surgery, LP, and Silver Spring Surgery Center, LLC, two of the Plaintiffs herein; that I am authorized to make this verification on their behalf; and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dr. Charles Obioha

Dated: 3/31/17

# VERIFICATION

I, Mark Byers, MD state that I am the Acting Medical Director of Urbana [redacted] LLC the Plaintiff herein, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing Complaint are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Dated: 3/31/17

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 9:53 AM, Fee = $0.00

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/04/2017 10:50 AM, Fee = $0.00

# EXHIBIT A

aetna®
P.O. BOX 981106
EL PASO TX 79998-1106
USA

# Explanation Of Benefits

*Please Retain for Future Reference*

Printed: 12/10/2015
Page: 1 of 2

ADVANCED SURGERY CENTER
PIN: Redacted
TIN: Redacted
NO PAY

ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

Notes:
Update your address, telephone number, e-mail address and/or NPI information by visiting our website.

## *Patient Name:* Theta Three *(spouse)*

Claim ID: Redacted Recd: 11/16/15 Member ID: Redacted Patient Account: Redacted
Member: Theta Three Spouse DIAG: 535.00
Group Name: PAN AMERICAN HEALTH ORGANIZATION Group Number: Redacted
Product: Aetna Choice® POS II Network ID: 00000
Aetna Life Insurance Company

| SERVICE DATES | PL | SERVICE CODE | NUM. SVCS | SUBMITTED CHARGES | ALLOWABLE AMOUNT | COPAY AMOUNT | NOT PAYABLE | SEE REMARKS | DEDUCTIBLE | CO INSURANCE | PATIENT RESP | PAYABLE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/25/15 | 24 | 250 | 1.0 | 425.00 | | | | | | 85.00 | 85.00 | 340.00 |
| 09/25/15 | 24 | 258 | 1.0 | 130.00 | | | | | | 26.00 | 26.00 | 104.00 |
| 09/25/15 | 24 | 270 | 1.0 | 320.00 | | | | | | 64.00 | 64.00 | 256.00 |
| 09/25/15 | 24 | 270 | 1.0 | 110.00 | | | | | | 22.00 | 22.00 | 88.00 |
| 09/25/15 | 24 | 270 | 1.0 | 419.00 | | | | | | 83.80 | 83.80 | 335.20 |
| 09/25/15 | 24 | 360 | 1.0 | 6,650.00 | | | | | | 176.08 | 176.08 | 6,473.92 |
| 09/25/15 | 24 | 710 | 1.0 | 3,325.00 | | | | | | | | 3,325.00 |
| 09/25/15 | 24 | 730 | 1.0 | 150.00 | | | | | | | | 150.00 |
| 09/25/15 | 24 | 730 | 1.0 | 275.00 | | | | | | | | 275.00 |
| **TOTALS** | | | | 11,804.00 | | | | | | 456.88 | 456.88 | 11,347.12 |

**ISSUED AMT: $11,347.12**

**For Questions Regarding This Claim**
P.O. BOX 981543 EL PASO, TX 79998-1543 USA
*CALL (800) 231-7729* FOR ASSISTANCE
*Note: All Inquiries should reference the ID number above for prompt response.*

Total Patient Responsibility: $456.88
Claim Payment: $11,347.12

Recovered From This Payment $11,347.12

| EXPLANATION OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITY | | | | | |
|---|---|---|---|---|---|
| Overpayments or Payment Corrections Due From Prior Claims | Refunds Received | Refunds Added to Payment | Overpayment or Payment Correction Adjustment Amount | Recovered From This Payment | Remaining Overpayment or Payment Correction Balance |
| $31,568.03 | $0.00 | $0.00 | $0.00 | $11,347.12 | $34,382.11 |

DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES

Member Name: Eta One
Patient Account Number: Redacted Notification ID: Redacted
Member ID Number: Redacted Date of Service: 03/19/15 Claim ID: Redacted EOB Date: 11/01/14 Remark: 1
Plan Amount -$11,347.12

***Continued on Next Page***

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:53 AM, Fee = $0.00

aetna

P.O. BOX 981106
EL PASO TX 79998-1106
USA

# Explanation Of Benefits

*Please Retain for Future Reference*

Printed: 12/10/2015
Page: 2 of 2

*ADVANCED SURGERY CENTER*
PIN: Redacted
TIN: Redacted
NO PAY

**Mailing Address:**
ADVANCED SURGERY CENTER
PO BOX 9195
UNIONDALE NY 11555-9195

| DETAILS OF OVERPAYMENT, PAYMENT CORRECTION OR REFUND ACTIVITIES | | |
|---|---|---|
| | TOTAL | -$11,347.12 |
| 1 This overpayment deduction is the result of a correction to a previously processed claim. Please review the detailed communication previously sent containing the Notification ID indicated here | | |

Protecting the privacy of member health information is a top priority. When contacting us about this statement or for help with other questions, please be prepared to provide your provider number, tax identification number (TIN), or Social Security number (SSN), in addition to the member's ID number.

Case# 2017-06786-0 Docketed at Montgomery County Prothonotary on 05/03/2017 10:50 AM, Fee = $0.00