# EXHIBIT 4

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION

ROCKVILLE AMBULATORY SURGERY, LP, :
et al., :
Plaintiffs, :
VS. : NO. 2017-06786
AETNA, INC., :
Defendant :

## COVER SHEET OF RESPONDENT

Date of Filing 6/12/2017 Respondent Rockville Ambulatory Surgery, LP; Silver Spring Surgery Center, LLC; Urbana GI Endoscopy Center, LLC; and Advanced Surgery Center, LLC

Counsel for Respondent Jason B. Martin, Esquire I.D. No. 82767

Document Filed (Specify) Plaintiffs' Response to Defendant's Preliminary Objections and Memorandum of Law in Support of Plaintiffs' Response to Defendant's Preliminary Objections

**RULE RETURN DATE of Related Motion** ____________

Matter is (Check One) ✓ (Appealable) ______ (Interlocutory)

Oral Argument ______ (Yes) ✓ (No)

---

Respondent Requires (Specify Reason Only if Interlocutory) :

_____ DISCOVERY N/A

07/26/04

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY, LP, et al.,<br>Plaintiffs,<br>v.<br>AETNA, INC.,<br>Defendant | DOCKET NO.: 2017-06786<br>CIVIL ACTION – LAW/EQUITY |

**ORDER**

AND NOW, this ______ day of ______________________________, 2017, upon consideration of Defendant's Preliminary Objections to Plaintiffs' Complaint filed on May 23, 2017 and Defendant's Response thereto, it is hereby ORDERED and DECREED that Defendant's Preliminary Objections are OVERRULED in their entirety.

IT IS FURTHER ORDERED that Defendant shall have twenty (20) days to respond to Plaintiffs' Complaint.

BY THE COURT

_________________________________________

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY, LP, et al.,<br>Plaintiffs,<br><br>v.<br><br>AETNA, INC.,<br><br>Defendant | DOCKET NO.: 2017-06786<br><br>CIVIL ACTION – LAW/EQUITY |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT'S PRELIMINARY OBJECTIONS**

Plaintiffs, through their undersigned attorneys, respond to Defendant Aetna, Inc.'s Preliminary Objections to Plaintiffs' Complaint.

## I. INTRODUCTION

1. Denied. Plaintiffs allege that Defendant Aetna, Inc. ("Aetna") did not pay them what was due for medical services provided to patients covered by Aetna plans. E.g., Compl. ¶¶ 27, 28, 31.

2. Admitted in part and denied in part. It is admitted that Aetna may take lawful measures to recover payments to providers where such payments have been lawfully adjudicated to be "overpayments." It is denied that Aetna had the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients and that the payments alleged by Aetna to be overpaid had been lawfully adjudicated to be overpayments.

3. Admitted in part and denied in part. It is admitted that Plaintiffs allege that Aetna reduces payments to Plaintiffs for services to one set of patients to recover what Aetna alleges to be overpayments for services provided by Plaintiffs to a prior, different set of patients. It is

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

denied that Plaintiffs were overpaid for the services they provided to the prior set of patients, and that the damages Plaintiffs seek represent funds which belong to Aetna.

4. Admitted in part and denied in part. It is admitted only that Aetna's Preliminary Objections are filed pursuant to Rule 1028. The remaining averments of paragraph 4 are denied.

## II. FACTUAL BACKGROUND

5. Admitted.

6. Admitted.

7. Admitted in part and denied in part. Plaintiffs are without sufficient knowledge or information sufficient to form a belief as to the truth of the averment in paragraph 7 that Aetna's network providers are "high-quality," and that averment is therefore denied. The statement that Aetna's reimbursement to network providers "is governed by the terms of the contract" is a conclusion of law to which no responsive pleading is required. All remaining averments of paragraph 7 are admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted in part and denied in part. It is admitted that under the new reimbursement policy adopted by Aetna on February 1, 2015, Aetna has asserted that it is entitled to exercise its discretion to pay out-of-network providers 200% of the Medicare rate. Plaintiffs deny that they do not challenge the validity of the new reimbursement policy. *E.g.*, Compl. ¶¶ 18-20 (new reimbursement policy is not authorized by Aetna's plans). All other averments in paragraph 12 are denied.

13. Denied. Plaintiffs do not allege that the payments by Aetna described in this paragraph were "mistakenly" made or that those payments were at "higher rates" than allowed by Aetna's plans

14. Admitted in part and denied in part. It is admitted that Aetna notified Plaintiffs of the alleged overpayments and requested that Plaintiffs refund such amounts. It is denied that such payments were overpayments.

15. Admitted in part and denied in part. It is admitted that Plaintiffs did not return to Aetna money paid by Aetna for services provided to patients covered by Aetna health care plans. All other averments in paragraph 15 are denied.

16. Denied. Plaintiffs deny that Aetna made any "overpayments" to Plaintiffs. Plaintiffs also deny that Aetna "reduc[ed]" further payments to Plaintiffs because Aetna issued payments to, and then seized those payments from, Plaintiffs.

17. Admitted.

18. Admitted in part and denied in part. It is admitted that all Aetna's offset PEOBs to Plaintiffs recite that money has been "Recovered From This Payment" and reference an alleged earlier overpayment to the same Plaintiff. It is also admitted that some of Aetna's offset PEOBs recite "NO PAY." All other averments in paragraph 18 are denied.

19. Denied.

20. Admitted.

21. Admitted in part and denied in part. It is admitted that Plaintiffs did not attach a single Aetna plan to their Complaint. All other averments in paragraph 21 are denied, including Aetna's misrepresentation that "Plaintiff's counsel is aware that Aetna's health plans contain various language that permit the type of offsets that are at issue in this case. This is a false

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

statement, in that Plaintiff's counsel have explicitly alleged in the referenced ERISA case—and discovery in that case confirms—that Aetna's plans do ***not*** contain language which permit taking an offset from one plan to apply toward an alleged overpayment made by a different plan.

22. Admitted in part and denied in part. The averments summarizing Plaintiffs' allegations are admitted. All other averments in paragraph 22 are denied.

**FIRST PRELIMINARY OBJECTION (COUNT I)**

23. Denied as a conclusion of law to which no responsive pleading is required.

24. Denied as a conclusion of law to which no responsive pleading is required.

25. Denied as a conclusion of law to which no responsive pleading is required.

26. Admitted that the excerpt from the cited case is quoted accurately.

27. Denied. Aetna has paid Plaintiffs less than what is owed for treating setoff patients because it seized money owed and issued by Aetna to Plaintiffs for treating setoff patients in order to recover alleged and unproven overpayments made to a different set of patients, the recoupment patients.

28. Admitted in part and denied in part. It is admitted that as of February 2015, Aetna claimed to have a new reimbursement policy that gave it the discretion to pay at 200% of Medicare rates, but all other averments in paragraph 28 are denied.

29. Denied. Aetna has been unjustly enriched because it did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients.

30. Denied. Plaintiffs dispute that the reimbursement policy Aetna claims to have adopted on February 1, 2015 is lawful and/or authorized. But regardless of the lawfulness of that reimbursement rate, Aetna was unjustly enriched because it did not have the legal right to

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

seize money owed and issued to Plaintiffs for treating Aetna-insured patients where any mistake in the amount of payment to Plaintiffs was Aetna's alone.

31. Denied as a conclusion of law to which no responsive pleading is required.

32. The first sentence of this paragraph is denied because Plaintiffs allege that Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients. The remainder of this paragraph is denied as a conclusion of law to which no responsive pleading is required.

33. Denied as a conclusion of law to which no responsive pleading is required.

**SECOND PRELIMINARY OBJECTION (COUNT III)**

34. Denied as a conclusion of law to which no responsive pleading is required.

35. Denied as a conclusion of law to which no responsive pleading is required.

36. Denied as a conclusion of law to which no responsive pleading is required.

37. Denied. See Compl. ¶¶ 207-210 (pleading offer, acceptance, and establishment of valid and enforceable contract).

38. Admitted in part and denied in part. It is admitted that Aetna's statement that it had "issued" money to Plaintiffs was evidence of Aetna's acceptance of Plaintiffs' offer. All other averments in paragraph 38 are denied.

39. Admitted.

40. Denied. Aetna's marking of PEOBs with "NO PAY" is evidence of Aetna's breach, not evidence that a valid and enforceable contract was not formed.

41. Denied. On Exhibit A to the Complaint, the "Issued Amount" is followed by a "Claim Payment" of $11,347.12, which is followed by the statement "Recovered From This Payment" and the amount of $11,347.12.

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

42. Admitted in part and denied in part. It is admitted that the quoted words appear in Plaintiffs' Complaint. All other averments in paragraph 42 are denied.

43. Denied. Aetna's seizure of amounts owed and issued to Plaintiffs for treating Aetna-insured patients (the "ISSUED AMT") is evidence of Aetna's breach, not evidence that a valid and enforceable contract was not formed.

44. Denied as a conclusion of law to which no responsive pleading is required.

**THIRD PRELIMINARY OBJECTION (COUNT IV)**

45. Denied as a conclusion of law to which no responsive pleading is required.

46. Denied as a conclusion of law to which no responsive pleading is required.

47. Denied. Plaintiffs' Complaint alleges that Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients. Count IV (Conversion) is properly pled as a means to redress that injury

48. Denied as a conclusion of law to which no responsive pleading is required.

49. Denied as a conclusion of law to which no responsive pleading is required.

50. Denied as a conclusion of law to which no responsive pleading is required.

51. Admitted in part and denied in part. It is admitted that some offset PEOBs are marked "NO PAY" and that all offset PEOBs recite an "ISSUED AMT." It is admitted that Plaintiffs allege in ¶ 220 of their Complaint that they had constructive possession of the "ISSUED AMT" funds. All other averments in paragraph 51 are denied.

52. Denied as a conclusion of law to which no responsive pleading is required.

53. Denied as a conclusion of law to which no responsive pleading is required.

54. Admitted in part and denied in part. It is admitted that Plaintiffs allege in ¶ 222 of their Complaint that "Aetna exercised dominion over the moneys." It is denied that this

allegation defeats Plaintiffs' conversion claim because Aetna's exercise of dominion over money issued to Plaintiffs is evidence of Aetna's conversion, not evidence that Plaintiffs never had constructive possession of the money.

55. Denied as a conclusion of law to which no responsive pleading is required.

**FOURTH PRELIMINARY OBJECTION (COUNT V)**

56. Admitted.

57. Denied as a conclusion of law to which no responsive pleading is required.

**FIFTH PRELIMINARY OBJECTION (COUNT II)**

58. Denied as a conclusion of law to which no responsive pleading is required.

59. Denied as a conclusion of law to which no responsive pleading is required.

60. Denied because Plaintiffs allege that Aetna had agreed to pay, and then issued, money to Plaintiffs as recited on Aetna's PEOBs (Compl. ¶ 197); and also because Plaintiffs allege that their patients had constructive possession of that money (Compl. ¶ 205).

61. Admitted in part and denied in part. Admitted that paragraph 60 of the Complaint alleges that "the moneys in question constructively passed through the hands of recoupment patients." All other averments in paragraph 61 are denied.

62. Denied as a conclusion of law to which no responsive pleading is required.

**SIXTH PRELIMINARY OBJECTION (COUNT VI)**

63. Admitted in part and denied in part. It is admitted that Plaintiffs seek declaratory and injunctive relief in Count VI. It is denied that the requested declaratory judgment is "broad and improper."

64. Admitted in part and denied in part. It is admitted that Plaintiffs did not attach any plans as exhibits to their Complaint. It is denied that declaratory relief in this case depends

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

on the provisions of individual insurance plans, because Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients. All other averments are denied.

65. Denied as a conclusion of law to which no responsive pleading is required.

66. Admitted.

67. Denied.

68. Denied. This Court will not have to review "hundreds of insurance plans" or "correspondence between the parties and other documents" to decide whether Aetna had the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients. Plaintiffs also deny that they ever agreed to any of the seizures challenged in this action.

69. Denied because the Court will not have to make individual findings about each insurance contract in order to determine that Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients. Plaintiffs also deny Aetna's unfounded speculation in paragraph 69 about the reasons why they brought the claims they did.

70. Admitted in part and denied in part. Admitted that the Complaint cites the provisions of certain Aetna plans. The remaining averments in paragraph 70 are denied.

71. Denied. Plaintiffs allege in ¶ 40 of the Complaint that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged overpayment on behalf of a different plan or a different patient."

72. Admitted in part and denied in part. It is admitted that Plaintiffs' counsel represents a putative class challenging Aetna's offsets under ERISA-covered plans in federal court in New Jersey. It is denied that Plaintiffs' counsel has learned in that litigation that Aetna plans permit Aetna to seek the type of setoffs being challenged in this case and, to the contrary,

Aetna in that litigation has (a) failed to identify any plan language authorizing such "cross-plan" offsets, (b) taken the position that it does not need authorizing plan authority; and (c) admitted through deposition testimony of senior executives that plan terms play no role in whether and when Aetna takes the challenged offsets. The remaining averments of paragraph 72 are denied.

73. Denied as a conclusion of law to which no responsive pleading is required.

**SEVENTH PRELIMINARY OBJECTION (LACK OF CAPACITY TO SUE)**

74. Denied as a conclusion of law to which no responsive pleading is required.

75. Denied as a conclusion of law to which no responsive pleading is required.

76. Denied as a conclusion of law to which no responsive pleading is required.

77. Denied. Plaintiffs allege that they have been deprived of money to which they were entitled because Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients.

78. Denied. Plaintiffs allege that they have been deprived of money to which they were entitled because Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients.

79. Denied. Plaintiffs allege that they have been deprived of money to which they were entitled because Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients.

80. Denied. Plaintiffs allege that they have been deprived of money to which they were entitled because Aetna did not have the legal right to seize money owed and issued to Plaintiffs for treating Aetna-insured patients.

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

81. Denied. Plaintiffs allege that Aetna's plans do not permit or require the 200% Medicare rate. *E.g.*, Compl. ¶¶ 18-20. The remaining averments of paragraph 81 are conclusions of law to which no responsive pleading is required.

Date: June 12, 2017

Jason B. Martin, Esq.
Attorney ID #82767
The Martin Law Firm, P.C.
725 Skippack Pike #337
Blue Bell, PA 19422
(215) 398-7424

D. Brian Hufford, Esq.
(pro hac vice pending)
Zuckerman Spaeder LLP
399 Park Avenue, 14th floor
New York, NY 10022
(212) 704-9600
(212) 704-4256 (f)

William Meyer, Esq.
(pro hac vice pending)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore NY 21202
(410) 332-1240
(410) 659-0436 (f)

*Attorneys for Plaintiffs*

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

## VERIFICATION

I, Jason B. Martin, Esquire, hereby state that I am the attorney for the Plaintiffs, I am authorized to make this verification on behalf of the Plaintiffs, and that the facts set forth in the foregoing Preliminary Objections and Memorandum are true and correct to the best of my knowledge, information and belief based upon representations made to me by representatives and employees of the Plaintiffs.

I understand that my statements are made subject to 18 Pa. Cons. Stat. Ann. § 4904 providing for criminal penalties for unsworn falsification to authorities.

Date: June 12, 2017

Jason B. Martin, Esquire

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROCKVILLE AMBULATORY SURGERY, LP, et al.,<br>Plaintiffs,<br>v.<br>AETNA, INC.,<br>Defendant | DOCKET NO.: 2017-06786<br>CIVIL ACTION – LAW/EQUITY |

**PLAINTIFFS' MEMORNADUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTIONS**

Plaintiffs, through their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to Defendant's Preliminary Objections.

**INTRODUCTION**

Plaintiffs allege that they provided out-of-network medical services to Aetna's insureds. Those insureds were financially responsible for Plaintiffs' billed charges, but because they had Aetna insurance Plaintiffs agreed to submit their insurance claims to Aetna for reimbursement. Aetna agreed that the treatments Plaintiffs provided were covered services and issued checks to Plaintiffs in amounts that were less than Plaintiffs' billed charges.

Sometime thereafter, Plaintiffs provided *different* medical services to a *different* set of Aetna insureds covered by a *different* set of Aetna plans. Plaintiffs again submitted insurance claims to Aetna. Aetna again agreed that these treatments were covered services that plan benefits were due and owing, and again "issued" payment to Plaintiffs. However, this time, instead of actually sending Plaintiffs checks, Aetna redirected the money for its own use because,



6038547.4

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

according to Aetna, it had overpaid Plaintiffs on the *prior* claims.

Plaintiffs allege that Aetna violated Pennsylvania law by not sending actual payments to Plaintiffs for these later services. Aetna was unjustly enriched by retaining funds that did not rightly belong to it, breached its implied contract with Plaintiffs to reasonably compensate them for providing these services, and converted and misappropriated Plaintiffs' money for Aetna's own use. At this stage of proceedings, where Plaintiffs' allegations must be accepted as true, Aetna offer no viable reason why this Court should hold that, as a matter of law, Aetna's seizure of this money was beyond reproach. Indeed, a federal court recently held that these same practices violated federal law because they impermissibly allow an insurer to act as "judge, jury, and executioner" when it comes to resolving assertions that it overpaid health care providers. *Peterson v. UnitedHealth Grp. Inc.*, Case Nos. 14-cv-2101, 15-cv-3064 (PJS/BRT), 2017 WL 991043, at * 3 (D. Minn. Mar. 14, 2017).[1]

## STATEMENT OF FACTS

The facts surrounding this controversy are largely not in dispute. Plaintiffs operate ambulatory surgical centers, i.e., non-hospital surgical facilities that perform various surgical procedures that do not require hospital stays (e.g., arthroscopy, colonoscopy, cataract removal). Compl. ¶ 3. They treat patients insured by Aetna health insurance plans. Compl. ¶ 7. Plaintiffs do not belong to Aetna's provider network and do not have a contractual relationship with Aetna; they are thus out-of-network ("ONET") providers. *Id.* That means that Plaintiffs can and do

[1] *Peterson* and another similar case against Aetna, *Lutz Surgical Partners, PLLC et al. v. Aetna, Inc. et al.*, Case No.: 15-cv-2595 (BRM)(TJB) (D. N.J.) (*see* Def's Br. 7 n.3), were brought in federal court because the insurance plans at issue were subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), with those plaintiffs alleging breaches of ERISA statutory duties. This case was brought in this Court because the Aetna plans at issue are not covered by ERISA, but are subject to state law. Compl. ¶ 43.

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

treat Aetna-insured patients, but the terms and conditions of payment for that treatment are not subject to any contract Plaintiffs have entered into with Aetna, but arise under the health insurance policy covering the insured patients who Plaintiffs treat. Compl. ¶¶ 7-8.

For years, Plaintiffs submitted claims to Aetna for treating patients insured by Aetna plans. For years, Aetna accepted those claims and issued payments directly to Plaintiffs. Compl. ¶¶ 10-13. Beginning in 2015, however, Aetna started "recovering" these issued payments from Plaintiffs. Compl. ¶¶ 24-28. The reason Aetna gave was its unverified assertion that it had made unilateral errors in paying Plaintiffs for treating earlier patients, and that these errors by Aetna resulted in overpayments to Plaintiffs. As a result, Aetna said, it was seizing money unquestionably due and owing to Plaintiffs for treating ***different*** patients as a unilateral "setoff" of those disputed overpayments. Compl. ¶ 28.

Exhibit A to the Complaint is an example of one such seizure. On September 25, 2015, Plaintiff Advanced Surgical Center ("ASC") treated a patient ("Theta Three")[2] insured by an Aetna plan covering employees of the Pan American Health Organization (the "Pan American Plan"), a plan which is exempt under ERISA. ASC submitted a claim to Aetna for that treatment under that plan, rather than requiring Theta Three to pay upfront and submit the claim herself. Compl. ¶ 30. Aetna accepted and processed ASC's claim, and on December 10, 2015, sent ASC a Provider Explanation of Benefits ("PEOB"). *Id.* and Exh. A. In this PEOB, Aetna confirmed that the treatments provided by ASC were covered under the Theta Three's insurance plan and that benefits were due and owing to ASC for providing those treatments in an amount, defined as the "Claim Payment," of $11,347.12. Aetna then stated in the PEOB that this was the "ISSUED

[2] In order to protect patient privacy, all patient names were removed from the Complaint and Exhibit A, and aliases were substituted.

AMT" to ASC, *i.e.,* the amount being paid to ASC and which Aetna was therefore issuing to ASC. In other words, Aetna told ASC that it owed and had "issued" to ASC the sum of $11,347.12, based on the terms and conditions of the Pan American Plan. However, Aetna did not actually send that money to ASC. Instead, Aetna seized it after it had been "issued," claiming it was a "Recover[y]" for an alleged overpayment to ASC for treating a different patient ("Eta One") insured by a different Aetna plan nine months earlier, on March 19, 2015. Exh. A ("Explanation" and "Details" of "Overpayment, Payment Correction or Refund Activities").

Aetna's alleged overpayments can occur for any number of reasons, but the alleged overpayments in this case share a common cause: Aetna claims that it overpaid ASC and other Plaintiffs because it (a) changed its internal reimbursement policy effective February 1, 2015 to reduce payments for covered treatment (Compl. ¶ 14), but (b) ***through its own error***, thereafter continued to reimburse Plaintiffs at the earlier, higher rate, rather than applying its revised internal policy. *Id.* ¶ 16. Plaintiffs were never informed about the change in reimbursement rate until much later (*id.* ¶ 15), and continued to treat Aetna-insureds and send claims to Aetna (*id.* ¶ 24). Nor did Aetna ever demonstrate that its revised reimbursement policy was in any way consistent with the terms and conditions of the underlying insurance plans. *Id.* ¶ 17. Contrary to Aetna's false representation, Plaintiffs also dispute that Aetna's new reimbursement policy is consistent with, or authorized by, Aetna's plans. Compl. ¶¶ 17-21.[3]

[3] Aetna falsely claims that Plaintiffs "do not contend that they have been paid less than the reasonable value for their services as they are required to under Pennsylvania law." Def's Br. 9. To the contrary, Plaintiffs dispute that they have been paid what Aetna's plans and Pennsylvania law requires. Aetna's plans typically set the reimbursement rate as the "Prevailing Rate Charge," which reflects the current market price for the covered services. Compl. ¶¶ 18-20. Aetna's new reimbursement policy ("200% of Medicare") is contrary to—and much lower than—the Prevailing Rate Charge. *Id.* ¶ 20. This Court does not presently need to resolve whether Aetna's 2015 rate change was authorized or binding on Plaintiffs. All that is presently relevant is that the





Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

## STANDARD OF REVIEW

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530 (Pa. Super. Ct. 2017) (quoting *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (internal citations omitted)). For this reason, Aetna's burden is high: Dismissal of a cause of action "should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections." *Id.*

Moreover, preliminary objections require "the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer." *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. Ct. 1994).

## ARGUMENT

Aetna's blatantly ignores the primary thrust of Plaintiffs' Complaint – that Aetna cannot seize funds that it concedes are owed to Plaintiffs as part of an illegal unilateral setoff against a disputed prior debt. Instead, Aetna tries to convince this Court that it had the discretion under its plans to adopt its revised reimbursement policy, i.e., to pay 200% of Medicare for ONET services rather than the much higher amount it had previously paid based on usual, customary and reasonable rates. This argument is irrelevant. Even if an "overpayment" existed because of

---

parties dispute whether Aetna overpaid Plaintiffs, and this dispute renders Aetna's unilateral setoffs unlawful as a matter of law. *See* pp. 9-10, *infra*.

Aetna's *post-hoc* determination that it should have exercised its discretion differently and paid Plaintiffs less for treating earlier patients—which Plaintiffs dispute—Aetna must resolve those overpayment claims in a lawful manner. It cannot seize money unquestionably owed and issued to Plaintiffs for treating ***different*** patients under ***different*** plans solely because it believes it made a mistake in calculating earlier payments.

This is particularly so, given that Plaintiffs were not overpaid at all. Aetna's sole contention is that—in the past—it could have exercised its discretion in a different way to pay less in benefits. But at most, that is an issue *between Aetna and its insureds* as to how much of Plaintiffs billed charges they are responsible for paying. Plaintiffs are innocent third parties who were paid for their services and are entitled to keep those payments.

In essence, Aetna argues that its unverified overpayment claims ***alone*** require dismissal. But just as those unverified claims do not justify Aetna's seizures, they do not warrant dismissal of litigation challenging the lawfulness of those seizures. Plaintiffs have plausibly alleged that Aetna seized money from Plaintiffs without cause or justification. Each claim asserted by Plaintiffs is supported by factual allegations that satisfy the elements of that claim. Aetna's preliminary objections, which rely upon a host of factual assertions found nowhere in the Complaint, should be denied.

## I. PRELIMINARY OBJECTION NO. 1: PLAINTIFFS HAVE STATED A CLAIM FOR UNJUST ENRICHMENT / *QUANTUM MERIUT* (COUNT I)

Under Pennsylvania law, the elements of a claim in equity for unjust enrichment are:

(1) the plaintiff conferred a benefit upon the defendant;

(2) an appreciation of such a benefit by the defendant; and

(3) the defendant accepted and retained such benefit under circumstances where it would be inequitable without payment of value.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

*Schenck v. KE David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (quoting *Wolf v. Wolf*, 514 A.2d 901 (Pa. Super. Ct. 1986)).

Plaintiffs have pled facts which, if proven, satisfy each element. ***First***, Plaintiffs allege that they conferred a benefit on Aetna when they treated patients covered by Aetna plans without requiring those patients to pay Plaintiffs up front for those health care services. Compl. ¶¶ 8-10. Providing medical services to patients covered by insurance confers a benefit upon the insurer. *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507-08 (Pa. Super. Ct. 2003) (unjust enrichment satisfied where hospital provided treatment to patients enrolled in defendant's health care plan and the insurer "did not have the ability to prevent its members from seeking" such care); *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.,* 173 S.W.3d 43, 59 (Tenn. Ct. App. 2002) (insurer benefited when provider treated insureds, since it was "required to pay for . . . medical services for its enrollees, whether the services are provided by an in-network provider or by an out-of-network provider").

***Second***, Aetna "appreciated" that benefit because it accepted Plaintiffs' claims for reimbursement, processed those claims, and sent Plaintiffs PEOBs confirming that Aetna was issuing payment for the covered medical services. Compl. ¶¶ 10-13. In sum, Aetna accepted this benefit by fulfilling its obligation as an insurer to its insureds.

***Third***, Aetna accepted and retained that benefit without payment of value because, after authorizing and "issuing" payment to Plaintiffs for providing covered medical services, it seized those payments for its own use. Compl. ¶¶ 24-27. In *Temple Univ.,* the court found that the insurer had "retained a benefit" because it "did not pay reasonable value [to the provider] for the services rendered." 832 A.2d at 507. Here, Aetna "retained a benefit" because it did not pay ***any***

value to Plaintiffs for the new services provided, since Aetna seized those funds improperly as a result of its illegal setoffs. In other words, Aetna interjected itself into the payment process and—for its own purpose (*i.e.*, to recover funds it claims it overpaid due to Aetna's earlier, unilateral mistake) —seized funds it had "issued" to Plaintiffs before those funds could reach Plaintiffs' bank accounts. By improperly seizing and retaining funds that had been "issued" to Plaintiffs, Aetna has been unjustly enriched.

These alleged facts are even more egregious than those in *Temple Univ. Hosp.* or *River Park Hosp.*, which held that hospitals stated a claim for unjust enrichment based on insurers' failure to pay proper reimbursement. There, the insurers at least paid ***something*** to the hospitals, and the issue was whether those payments were a "reasonable rate of reimbursement." *See Temple Univ. Hosp.*, 832 A.2d at 508; *River Park Hosp.*, 173 S.W.2d at 60. Here, Aetna paid ***nothing*** or nearly nothing to Plaintiffs for the later medical services. If unjust enrichment claims were sufficiently pled in those cases, Plaintiffs have stated a viable claim here.

Aetna's preliminary objection to Count I relies on misdirection. Instead of addressing Plaintiffs' claim for unjust enrichment based on Aetna's seizure of money from Plaintiffs (the claim Plaintiffs brought), Aetna instead argues that "in the aggregate" Plaintiffs have been paid all that is due them when both the seized reimbursement and alleged overpayments are considered. Def's Br. 8-9. This argument fails for numerous reasons.

For starters, it is not Plaintiffs' theory of the case. Plaintiffs are "master[s] of [their] claim," *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 133 (Pa. 2004), and their claim is that Aetna unlawfully seized money issued to Plaintiffs for treating Aetna insureds. Aetna cannot defeat Plaintiffs' unjust enrichment claim by re-framing the case to require review of ***all claims*** Aetna has ever paid Plaintiffs in the past to determine whether, "in the aggregate," Aetna has





Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

paid Plaintiffs a commercially-reasonable rate for ***all*** treatments rendered to Aetna-insureds. Whether Aetna could have, in its discretion, paid less in the past but elected not to do so is irrelevant to Plaintiffs' claim that Aetna's setoffs were illegal. Aetna can always assert its disputed "overpayment" claims as a counterclaim or in an independent action. It cannot defeat Plaintiffs' claims in this case by baldly asserting that it overpaid.

The fact that Aetna's alleged overpayments are disputed exposes another dispositive flaw in Aetna's preliminary objection to Count I. Aetna's "aggregation" theory is another way of claiming that it had the right to setoff, *i.e.*, that Aetna could set off its issued payments to Plaintiffs for treating a later set of patients against its claim that it overpaid Plaintiffs for treating an earlier set of patients. But Aetna's overpayment claims are disputed, speculative, and unverified, and "[t]he common law right of setoff may [only] be invoked when two parties owe each other mutual, mature, and ***liquidated*** debts." *U.S. v. Peterson*, 738 F.Supp.2d 869, 873 (C.D. Ill. 2010) (emphasis added). Pennsylvania follows this rule. *See Allis-Chalmers Corp. v. Philadelphia Elec. Co.,* 64 F.R.D. 135, 138 (E.D. Pa. 1974) ("For a claim to constitute a set-off under Pennsylvania law it must be 'capable of liquidation by a known legal standard'") (quoting *In re Gordon*, 317 Pa. 161, 176, 176 A. 494, 500 (1935)); *Appeal of Com. Trust Co. of Pittsburgh*, 324 Pa. 161, 164, 188 A. 200, 201 (1936) (mortgagor could not setoff debt to bank with future right to estate proceeds because mortgagor's "right against the [bank] is neither a liquidated claim nor one presently due.").[4]

[4] As these cases hold, in order for setoff to be available, the alleged debts must also be "mutual," *i.e.*, "held by the same persons in the same rights," *Hunter v. Henning*, 103 A. 61, 62 (Pa. 1918), or "be based upon the same transaction," *Kaiser by Taylor v. Monitrend Inv. Mgmt., Inc.*, 672 A.2d 359, 363 (Pa. Commw. Ct. 1996). Here, Aetna's setoff money owed Plaintiffs for treating ***different*** patients insured by ***different*** Aetna plans, the very antithesis of mutuality.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Here, all that Aetna has regarding its earlier payments to Plaintiffs is its unverified ***claim*** that those payments were in excess of the amounts that the plans could have paid, but that is a claim which Plaintiffs have always disputed (Compl.¶ 23), and which Aetna has never reduced to judgment or otherwise judicially validated (*id.* ¶¶ 32, 41). Even if Aetna is correct that that it could have paid less in the past, no court has found that this created a legal debt owed by Plaintiffs. Because Aetna's unliquidated overpayment claims are not subject to setoff, its "aggregation" theory collapses.[5]

The premise for Aetna's "aggregation" theory—that it was entitled to recover the alleged overpayments—is also contrary to black-letter law that ***Aetna's mistake*** in paying Plaintiffs at a higher reimbursement rate does not give it a right of restitution under these circumstances. *See Restatement (First) of Restitution* § 14 (1937) (where a third party [Aetna] makes a mistake in the payment of the debt of another person [the Aetna-insureds], the third party does not have a claim of restitution against the payee [Plaintiffs] unless the payee misled the third party payor or had prior knowledge of the mistake).[6] *See Com., Dep't of Gen. Servs. v. Collingdale Millwork Co.,* 454 A.2d 1176, 1180 (Pa. Commw. Ct. 1983) (adopting § 14). In *Acme Markets, Inc. v.*

[5] Aetna also argues that its 200% of Medicare reimbursement rate is "twice as much" as Medicare would have paid them, and repeatedly claims that allowing Plaintiffs' claims to proceed would result in a "windfall" for Plaintiffs. Def's Br. 9. But Plaintiffs have alleged that the Medicare reimbursement rate is "inconsistent with and contrary to the 'Prevailing Rate Charge' . . . leading to far lower reimbursements for [Plaintiffs] than is permitted under the applicable health insurance plans." Compl. ¶ 20. It is not a windfall to receive the payments which Aetna's plans require. In any event, this unresolved dispute means that Aetna's overpayment claims are unliquidated, such that its unilateral setoffs against Plaintiffs were therefore unlawful.

[6] "A creditor of another . . . who has received from a third person any benefit in discharge of the debt . . . is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake." *Id.*

*Valley View Shopping Center, Inc.*, 493 A.2d 736 (Pa. Super. Ct. 1985), the court stated the rule as "[w]here, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered. . . ." *Id.* at 737. That rule bars Aetna's seizures challenged in this action.[7]

This legal bar to recovery of mistaken payments has been applied in other insurer overpayment cases where, as here, the provider was paid for treatment actually rendered and the insurer later claimed the payment was in error because it paid more than it had to under its insurance contract. *See Cent. States, Se. and Sw. Areas Health & Welfare Fund v. Pathology Lab.*, 71 F.3d 1251, 1254 (7th Cir.1995) ("A provider of medical care is not unjustly enriched by being paid the market fee for its services."); *City of Hope Nat. Med. Ctr. v. Superior Court*, 10 Cal. Rptr. 2d 465, 467 (Cal. Ct. App. 1992) (insurer may not recover mistaken payments from health care provider where provider made no misrepresentations and had no notice of mistake at time payment was made). As one court explained:

> While the general rule has been stated in various ways, its essence is that a payor who, because of a mistake of fact, erroneously pays money to another may recover those payments from the payee, unless the payee has substantially changed its position in reliance on the payments, such that forcing it to repay the money would be inequitable. . . .
>
> A widely-recognized exception to the general rule stated *supra* is that restitution may not be had in cases in which the mistaken payment is made to an innocent third party creditor, i.e., one who has made no misrepresentations and has no knowledge of the mistake. This exception derives from the fact that the element of unjust enrichment, typically considered a prerequisite for restitution, is absent in such cases. . . . No unjust enrichment occurs because the creditor is

[7] Aetna's "aggregation" theory is also predicted on the falsehood that Plaintiffs "do not contend that they have been paid less than the reasonable value for their services." Def's Br. 9. *See* n. 3, *supra*. This factual dispute alone is enough to defeat Aetna's objections. *See Pennsylvania AFL-CIO ex rel. George v. Com.*, 757 A.2d 917, 920 (Pa. 2000) ("Preliminary objections should be sustained only in cases that are clear and free from doubt.").



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

> actually owed the money it receives and has exchanged value for the right to receive the money.

*Nat'l Ben. Adm'r, Inc. v. Miss. Methodist Hosp. & Rehab. Ctr., Inc.*, 748 F. Supp. 459, 464–65 (S.D. Miss. 1990). Or to put it more simply, "if it's your mistake, you get to pay for it—unless the recipient misled you or accepted the payment knowing you didn't owe it." *City of Hope,* 10 Cal. Rptr. 2d at 467. Here, that mistake was Aetna's, which makes its subsequent seizure of money actionable as unjust enrichment.

It is for this reason that Aetna's reliance (Def's Br. 9) on *Upper Bay Surgery Ctr., LLC v. Aetna Health & Life Ins. Co.*, 2016 U.S. Dist. LEXIS 66436 (D. Md. May 19, 2016) and *Temple Univ.* is misplaced. *Upper Bay* held only that the terms of one plan allowed Aetna to use 200% of Medicare as the basis for reimbursing one ONET provider. *Upper Bay* did not address the question at the heart of this case, *i.e.*, whether Aetna can seize funds due a provider as a means to "recover" a prior payment that Aetna now believes was erroneously made.[8] *Temple Univ.* is also irrelevant because it simply addressed how to determine a reasonable fee when there was no agreement between the parties. It had nothing to do with whether an insurer can refuse to pay a

---

[8] Aetna alleges that Plaintiffs "fled Maryland" and filed in Pennsylvania to avoid the *Upper Bay* decision. Def's Br. 5 n.2. However, as discussed, that case is irrelevant to this action because it did not address whether Aetna is entitled to setoff payments issued to Plaintiffs for new and unrelated claims as a means to recoup a disputed overpayment. In any event, Plaintiffs filed this action in Pennsylvania because this State is where Aetna is incorporated. Compl. ¶ 4. Aetna should not be heard to complain about being sued in its state of origin.

While it is not relevant to Aetna's motion, Plaintiffs also dispute that *Upper Bay* was rightly decided. The plan at issue in *Upper Bay* required Aetna to pay out-of-network benefits based on usual, customary and reasonable ("UCR") rates, subject to certain internal reimbursement policies which focused on billing practices (e.g., billing multiple services on the same date, use of an assistant surgeon). Allowing Aetna to apply these billing provisions to vitiate the plan language by paying a percentage of Medicare rather than UCR is an unreasonable interpretation of the plan. In any event, this Court will not have to examine whether Aetna's 2015 reimbursement change was authorized by any plan to decide whether its seizure of money to Plaintiffs was unlawful.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

new benefits based on an alleged prior overpayment. [9]

## II. PRELIMINARY OBJECTION NO. 2: PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED CONTRACT (COUNT III)

In Count III, Plaintiffs allege that Aetna breached an implied contract to pay for medical services rendered to Aetna insureds by seizing payment for those services. Compl. ¶¶ 208-212. Aetna objects, asserting that there was no contract. Def's Br. 10-11. Plaintiffs, however, have sufficiently pled the existence of an implied contract.

An implied contract exists where there is "an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary." *Martin v. Little, Brown and Co.,* 450 A.2d 984, 987 (Pa. Super. Ct. 1981). "Generally, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary." *Home Prot. Bldg. & Loan Ass'n,* 17 A.2d 755, 756 (Pa. Super. Ct. 1941) ("*Home Prot.*"). The test for establishing the existence of an implied contract is whether "a reasonable person in the position of the parties would be led to understand by such conduct under all of the surrounding circumstances" that there had been an offer and acceptance. *Temple Univ. Hosp.,* 764 A.2d at 593. *See Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984) ("A

[9] Aetna's original decision to pay Plaintiffs at a higher rate underscores another flaw in Aetna's argument. The fact that Aetna may have had ***discretion*** under some of its plans to pay ONET services at 200% of Medicare does not mean that Aetna was ***required*** to do so. To the contrary, Aetna has broad discretion under it plans (including the plan at issue in *Upper Bay*) to pay reimbursement. Aetna was therefore free to pay Plaintiffs more than 200% of Medicare, as it did before 2015. Compl. ¶ 13. The fact that Aetna has now decided to pay less than it did before does not create an "overpayment" in the past. At most, Aetna made a unilateral mistake in paying it more than its discretion allowed it to pay. That decision in no way suggests that Plaintiffs were, as a matter of law, in the wrong for accepting those payments or—more importantly for this case—that Aetna, as a matter of law, was justified in seizing later payments to recover what it retroactively decided were overpayments.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. . . . 'Implied contracts . . . arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.'").

Here, the "surrounding facts of the parties' dealings" are Plaintiffs' treatment of Aetna insureds, Plaintiffs' submission of claims for that treatment to Aetna, and Aetna's issuance of payment for those services - the ordinary course of dealing between healthcare providers and health insurers. Compl. ¶¶ 8-12; 208-210. The PEOBs which Aetna sent to Plaintiffs for each claim is evidence of this "promise to pay for valuable services rendered." *Home Prot.*, 17 A.2d at 756. Any reasonable person would therefore understand that when Aetna sent Plaintiffs PEOBs reciting that it had authorized and then "issued" payment for those services, it was accepting Plaintiffs' offer to provide those services in return for payment.

Aetna argues there was no "meeting of the minds" sufficient to form a contract because the PEOBs at issue "explain that Aetna *would not be sending* [Plaintiffs] a check for that amount." Def's Br. 11 (emphasis in original). ***But not sending the money is evidence of Aetna's breach, not proof that there was no contract.***[10] Proof that there was no contract would look much different, *e.g.*, evidence that Aetna refused to accept Plaintiffs' claims, or evidence that Aetna informed Plaintiffs that it would no longer pay for services rendered by them to Aetna insureds. None of that is pleaded by Plaintiffs. Instead, Plaintiffs have pled that— "with the knowledge and approval of" Aetna, *Home Prot.*, 17 A.2d at 756—they provided services for which they are entitled to be paid, and that Aetna agreed that Plaintiffs were entitled to be paid

[10] The law also recognizes that it is possible to accept and breach a contract by and through the same act. *See* 13 Pa. Cons. Stat. § 2206(a)(2); *see also* U.C.C. § 2-206(1)(b) cmt. 4 (Am. Law Inst. & Unif. Law Comm'n 1977). Here, the PEOB is evidence of both acceptance ("Issued Pmt") and breach ("Recovered").



6038547.4

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

for such services. At this early stage of the proceedings, this Court must accept as true these more-than-plausible factual allegations and sustain Count III.

Indeed, the only way Aetna could "Recover" (i.e., seize) funds to apply toward the alleged pre-existing debt was if it agreed that it owed money to Plaintiffs on the newer claims in the first place. Otherwise there would be nothing to recover. Aetna cannot have it both ways. Its argument that it can "recover" funds paid to Plaintiffs for services or that it had effectively "pre-paid" Plaintiffs for those same services (Def's Br. 2)[11] necessarily implies that Aetna had the obligation to pay. That obligation is wholly inconsistent with Aetna's claim that there was no "meeting of the minds."

Aetna's reliance on *Temple Univ. Hospital* in the context of this claim (Def's Br. 10) is misplaced. There, the issue was whether the parties had agreed to ***renew*** a contract based on a course of conduct after the contract expired. The Superior Court held that there was no contract renewal for "the simple reason that Hospital, in writing, expressly rejected HMA's offer twice." 764 A.2d at 593. Here, Aetna never rejected its obligation under its policies to pay Plaintiffs for the services they provided to Aetna insureds. To the contrary, Aetna confirmed this obligation by accepting and processing Plaintiffs' claims and "issuing" payment for those services. The fact that Aetna then seized those funds to satisfy an alleged and disputed debt is evidence that Aetna ***breached*** this implied contract, not evidence that no implied contract existed.

Aetna's assertion that "Plaintiffs thus concede that Aetna 'expressly rejected' any purported offer to send a check" (Def's Br. 11) is wishful thinking. Nowhere in the Complaint do

[11] Aetna's "pre-paid" argument (Def's Br. 2) is frivolous on its face. Aetna itself argues that when it paid the original benefits, it erroneously overpaid by failing to exercise its discretion to only pay at 200% of Medicare. There certainly are no facts in the record to show—and no reason to believe—that Aetna *intentionally* "overpaid" at that time in order to "pre-pay" Plaintiffs for future services.





Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Plaintiffs allege (or even use the words) "expressly rejected," which is a quotation from *Temple Univ. Hosp.* reflecting a party's rejection of a contract renewal. There were no such unsuccessful contract negotiations in this case. Rather, Plaintiffs allege both their "offer" (Compl. ¶¶ 10, 24, 208) and Aetna's "acceptance" (Compl. ¶¶ 11, 12, 25, 26, 209). The fact that Aetna then stated that it was satisfying this implied contract by paying the amount it owed through "recovering" the funds "Issued" to Plaintiffs in order to satisfy an alleged (and disputed) debt is separate and distinct from whether Aetna agreed to pay for those services in the first place. Thus, the "express rejection" Aetna relies upon is not rejection of a contract, but rejection of its obligation to pay. Aetna cannot transform Plaintiffs' allegations of breach (*i.e.*, its seizure of money owed and issued to Plaintiffs) into allegations that there was no "meeting of the minds."

Finally, "[w]here the facts are in dispute, the question of whether a contract was formed is for the jury to decide." *Ingrassia Const.*, 486 A.2d at 478. Whether the course of conduct between the parties and Aetna's PEOBs gave rise to an implied contact is a jury question. Because Plaintiffs have made well-pleaded allegations of an implied contract that raise a jury question, Aetna's preliminary objection to Count III should be denied.

## III. PRELIMINARY OBJECTION NO. 3: PLAINTIFFS HAVE STATED A CLAIM FOR CONVERSION (COUNT IV).

The elements of conversion are (a) the deprivation of plaintiff's right in, possession of, or other interference with a chattel; (b) over which plaintiff has actual or constructive possession, or the right to immediate possession; and (c) without plaintiff's consent or lawful justification. *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451 (Pa. 1964). Plaintiffs have pled facts to support each of those elements: Aetna's seizure of plan benefits (Compl. ¶¶ 31, 28), over which Plaintiffs had actual or constructive possession, *i.e.*, the benefits had been "issued" to





Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Plaintiffs, or which they had the right to immediate possession (Compl. ¶¶ 1, 26), without Plaintiffs' consent (Compl. ¶ 23).

Aetna makes one hyper-technical and one substantive argument for dismissal of Count IV. Aetna's three-sentence, hyper-technical (and erroneous) argument is that Plaintiffs checked the "Debt Collection" box on the Civil Cover Sheet, and that an action for conversion will not lie for a debt collection action. Def's Br. 12. This argument has no merit because Plaintiffs have not brought a debt collection action, but have alleged in detailed fashion Aetna's unlawful seizure and retention of money that belongs to Plaintiffs, and it is the allegations of a complaint that determine the nature of an action, not the Civil Cover Sheet. *See Teague v. Ferguson*, No. 346 WDA 2016, 2017 WL 243505, at *3 (Pa. Super. Ct. Jan. 20, 2017) (Civil Cover Sheet not dispositive of nature of action); *Ulrich v. Wolf*, No. 534 M.D. 2015, 2016 WL 4916975, at *1 (Pa. Commw. Ct. Sept. 15, 2016) (same).[12]

Aetna's substantive argument is that Plaintiffs did not have actual or constructive possession of the benefits before Aetna seized them. Def's Br. 13-14. This argument fails because Plaintiffs allege that Aetna "issued" the money in question ***to Plaintiffs*** before seizing it. *See* Compl. ¶¶ 12, 25-26, 30, 73, 83, 90, 209. ***This is also what Aetna's own PEOBs say***. *See* Compl. Exh. A ("ISSUED AMT" of $11,347.12 to Advanced Surgery Center). Aetna's PEOBs do not say that Aetna "withheld" or "refused to pay" the money that Aetna actually concedes was owed to Plaintiffs—which would suggest that the money was never constructively or actually in

[12] Aetna's claim that the Civil Cover Sheet is a "judicial admission" (Def's Br. 12, citing *Tops Apparel Mfg. Co. v. Rothman*, 244 A.2d 436, 438 (Pa. 1968)) is refuted by the Civil Cover Sheet itself, which states that it "is used ***solely as an aid in tracking cases*** in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court." Def.'s Br. Ex 1 (emphasis added).

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Plaintiffs' possession—but that Aetna first "issued" the money to, and then "recovered" that money from, Plaintiffs. At this stage of the action, it is thus a reasonable inference from Aetna's own documents that Plaintiffs had constructive possession of the funds.

Aetna's argument also fails because it ignores a key element of a conversion claim: such a claim lies where a plaintiff had "an ***immediate right to possession*** of a chattel at the time of the alleged conversion." *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994) (emphasis added). Here, Aetna's PEOBs explicitly state that the benefits are owed to Plaintiffs under the terms of the plan and that Aetna had "issued" payment to Plaintiffs, not that it "will" or "may" issue payment in the future. It therefore can reasonably be inferred that Plaintiffs had an immediate right to that which had just been issued to them. This was the holding of *Shonberger v. Oswell*, 530 A.2d 112 (Pa. Super. Ct. 1987) where the defendant held money issued to plaintiff pursuant to a consignment. The court held that the defendant was liable for conversion even though the plaintiff did not have actual possession of the money because he had the ***right*** to possess the money. *Id.* at 113-14. So too here, where Plaintiffs had a right to money "issued" to them. *Accord Pearl Assurance Co. v. Nat'l Ins. Agency*, 30 A.2d 333, 335-337 (Pa. Super. Ct. 1943) (withholding money from another sufficient to constitute conversion); *Stevenson*, 197 A.2d at 726 ("'[c]onversion may be committed by . . . [u]nreasonably withholding possession from one who has the right to it.'") (quoting Prosser, Torts § 15 (2d ed. 1955).

Finally, Aetna's argument that Plaintiffs' conversion claim will not lie because of Plaintiffs' claim that "Aetna exercised dominion over the moneys" (Def's Br. 14) is wrong. Aetna's "dominion" was the result of its improper seizure of the funds which rightly belonged to Plaintiffs, thereby satisfying the "deprivation" element of the tort. This fact which Aetna cites in

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

its defense is the very fact that makes it liable.[13]

## IV. PRELIMINARY OBJECTION NO. 4: PENNSYLVANIA RECOGNIZES A CLAIM FOR MISAPPROPRIATION (COUNT V)

Aetna's preliminary objection against Count V is based entirely on its assertion that this claim "is not cognizable under Pennsylvania law." Def's Br. 15.

Not so. In *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa. Super. Ct. 1999), the court explicitly recognized the "common law tort of 'misappropriation'" in Pennsylvania, with the following three elements:

(1) the plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right,"

(2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown,'" and

(3) the defendant "has injured plaintiff by the misappropriation."

*Id.* at 716 (citations omitted).

Although *Sorbee* involved the misappropriation of "advertising ideas," other authorities confirm that a claim for misappropriation lies for the unlawful seizure of money. In *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444 (M.D. Pa. 2007), the issue was whether insurance coverage applied to a claim for conversion and misappropriation. The court stated that the conduct at issue (the recovery of funds loaned under false pretenses) "falls within the meaning of 'misappropriation.'" *Id.* at 460. The court (a) cited the definition in Black's Law

---

[13] In a footnote, Aetna cites two federal cases interpreting Pennsylvania law for the argument that an action for conversion will not lie for the failure to pay insurance proceeds. Def's Br. 12 n.9. Again, Plaintiffs claim more than a mere *failure to pay* insurance proceeds; Plaintiffs allege that Aetna unlawfully *seized* insurance proceeds already been issued to Plaintiffs. None of the three cases cited by Aetna involved facts remotely similar to Aetna's actions here.

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Dictionary (8th ed. 2004) of "misappropriation" as "[t]he application of another's property ***or money*** dishonestly to one's own use" (emphasis added); (b) quoted "the elements of misappropriation" as adopted in *Sorbee*; (c) found that the defendant had "unfairly appropriated the [plaintiff's] money"; and (d) held that "[t]he claims of the underlying complaint are based upon [defendant's] misappropriation of his clients' funds, and therefore, the conversion/ misappropriation exclusion applies to bar coverage." *Id.* Although the plaintiff in *Westport* did not affirmatively plead misappropriation of monies, the fact that the court found the claim to be "based upon . . . misappropriation of . . . funds" so as to fall within an insurance policy's "misappropriation exclusion" is clear recognition of a misappropriation claim.

Indeed, when the defendant in *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755 (M.D. Pa. 2008), made the same argument Aetna makes here, *i.e.*, that Pennsylvania does not recognize the tort of misappropriation, the court rejected it, stating:

> The defendants are not exactly correct in arguing that a tort of misappropriation of monies does not exist under Pennsylvania law. First, after a thorough Westlaw and Lexis search, this court was hard-pressed to find any Third Circuit or Pennsylvania case law expressly stating that misappropriation of monies is not a proper cause of action in the Commonwealth. Second, as recently as December 2007, this court discussed misappropriation of a client's funds in the context of whether a misappropriation/conversion exclusion applies to bar professional liability insurance coverage.

*Id.* at 775 (citing *Westport Ins. Corp.*) (footnote omitted). While the *Rahemtulla* court held that the misappropriation claim was "subsumed" within a separate breach of fiduciary duty claim asserted in that action, 539 F.Supp.2d at 776, that does not mean that this same claim cannot be brought as a standalone claim against Aetna in this case, where authorized benefit payments owed and issued to Plaintiffs were misappropriated by Aetna for its own benefit.[14]

[14] *Wen v. Willis*, 117 F. Supp.3d 673 (E.D. Pa. 2015) (cited at Def's Br. 14), is not to the

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

## V. PRELIMINARY OBJECTION NO. 5: PLAINTIFFS HAVE STATED A CLAIM FOR MONEY HAD AND RECEIVED (COUNT II)

The elements of a claim for money had and received are: (1) money wrongfully diverted from proper use (2) that subsequently falls into the hands of the defendant (3) who has not given valuable consideration for it. *See Solomon v. Gibson*, 615 A.2d 367, 369 (Pa. Super. Ct. 1992). Aetna only takes issue with the second element, claiming that "[Plaintiffs] fail to allege that Aetna actually received the money at issue either from Plaintiff or any other party" because "[t]he money at issue is, and always was, in the possession of Aetna." Def's Br. 15. In support, Aetna cites *Hughey v. Robert Beech Assocs.*, 378 A.2d 425 (Pa. Super. Ct. 1977), for the proposition that this claim "requires that the Defendant actually received the money at issue, not that the money at issue 'constructively passed through the hands' of another individual." Def's Br. 16. That misstates the law.

Although *Hughey* uses the words "received money," 378 A.2d at 427, that case says nothing about whether or not the money can be deemed to have "constructively passed through the hands" of another party. Instead, *Hughey* focuses on whether the defendant has money which should be paid to the plaintiff. *See id.* ("The inquiry is, has the defendant . . . received money or property which he is not entitled to keep and which in equity and good conscience should be paid to plaintiff"). Here, there is no dispute that Aetna has "received money" that was "issued" to

---

contrary. There, the court was faced with breach of fiduciary duty, conversion, and misappropriation claims. In a footnote, the court said that it "can find no evidence" for "a claim for misappropriation of monies" under Pennsylvania law under those circumstances. *Id.* at 683 n.3. The court noted that the *Rahemtulla* and *Westport* courts had "subsumed the plaintiffs' allegations regarding misappropriation under related claims of breach of fiduciary duties," and followed that same course of action by dismissing the misappropriation claim and "proceed[ing] with the gist of the action doctrine analysis as it affects Wen's conversion claim." *Id.* Here, Plaintiffs have not asserted a breach of fiduciary duty claim, and there is therefore nothing to "subsume" Plaintiffs' misappropriation claim within.

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Plaintiffs. What matters for Count II is whether that money "should be paid" to Plaintiffs, which is exactly what Plaintiffs have pled.

The nature of how Aetna administers most of its plans also belies its assertion that the money was "always . . . in the possession of Aetna." There is no dispute that Aetna administers two kinds of plans: self-funded (where Aetna provides plan administration, but benefits are the liability of the plan sponsor, i.e., the employer); and fully-insured (where Aetna provides plan administration and pays all benefits with its own money). With respect to self-funded plans, therefore, Aetna processes the claim and "issues" the payment to providers, but those funds come from the plan sponsor, not Aetna. It is at that time, after the payment is "issued" by the self-funded plan, that Aetna improperly seizes those funds and maintains control over them for its own use (to repay an alleged prior overpayment due to an error by Aetna). This self-funded scenario—where the money at issue came from the plan, not Aetna—easily satisfies the requirement that the funds due Plaintiffs have "fall[en] into the hands" of Aetna. *Solomon*, 615 A.2d at 369.

Even if the funds initially belonged to Aetna (*i.e.*, a fully- insured plan), Plaintiffs allege—and Aetna's PEOBs state—that Aetna "issued" to, and then "recovered" from, Plaintiffs this money. *See* pp. 17-18, *supra* (conversion claim satisfied by allegations that Plaintiffs had constructive possession of the funds). These facts also support the reasonable inference that Plaintiffs had constructive possession of the money for purposes of Plaintiffs' money had and received claim.

Finally, Plaintiffs also allege the money Aetna seized "constructively passed through the hands of the recoupment patients but is now in the possession of Aetna." Compl. ¶ 205. This allegation is well-founded because there is no dispute that Aetna pays insurance benefits on

behalf of its insureds. Thus, all insurance benefits "issued" by Aetna are constructively issued to its insureds to whom it has a contractual obligation to pay benefits. *See* Compl. ¶ 9 ("Under the terms of these patients' insurance policies, ***they were entitled to insurance benefits*** from Aetna") (emphasis added). This too is another reasonable inference to which Plaintiffs are entitled at this stage of the pleadings.[15]

## VI. PRELIMINARY OBJECTION NO. 6: DECLARATORY RELIEF (COUNT VI) IS AN AVAILABLE AND PROPER REMEDY.[16]

Aetna's objection to Plaintiffs' request for declaratory relief is contrary to Pennsylvania law. *See* 42 PA. CONS. STAT. § 7532 (2017) ("Courts . . . shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. ***No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for***.") (emphasis added). On this basis alone, Aetna's objection should be denied.

In addition, neither of the two reasons Aetna proffers for its improper objection have merit. Aetna first asserts that a declaratory judgment would be contrary to "[n]egative [f]indings in a [p]ending New Jersey Federal Court [a]ction." Def's Br. 16. This argument rests on the fallacy that discovery in the *Lutz* case (*see* n. 1, *supra*) has purportedly revealed that "Aetna's

---

[15] At the very least, whether the money Aetna seized to take its setoffs ever left its constructive or actual possession is not "clear and free from doubt." *Pennsylvania AFL-CIO ex rel. George,* 757 A.2d at 920. Aetna's preliminary objection to Count II should therefore be denied so that Plaintiffs can develop a factual record concerning the movement, transfer, and possession of money involved in Aetna's setoffs.

[16] Aetna raises no objection to Plaintiffs' plea for injunctive relief and has therefore waived any objection to that relief. *See Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 183 (Pa. Super. Ct. 1999) ("Failure to raise any possible grounds in the single allowable set of preliminary objections means that those grounds may not be raised at a preliminary stage."). Plaintiffs may thus proceed on that cause of action.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

plan documents permit Aetna to seek offsets," a baseless assertion which Plaintiffs dispute;[17] and that "in many instances, the providers at issue . . . have agreed to the offsets," Def's Br. 18, a contention that is irrelevant here, where it is undisputed that Plaintiffs have not agreed to the offsets. Aetna's reliance of alleged facts outside the Complaint is no basis for dismissal of any of Plaintiffs' claims. *See Mellon Bank*, 650 A.2d at 899. Rather, for purposes of Aetna's preliminary objections, the truth of Plaintiffs' allegations must be assumed. *See Freundlich*, 157 A.3d at 530. Here, those allegations include that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment on behalf of a different plan or a different patient" (Compl. ¶ 42) and that "[Plaintiffs] refused Aetna's demands for refunds (Compl. ¶ 23). Those well-pleaded allegations dispose of Aetna's argument.

Aetna's other objection to declaratory relief is the claim that this Court would have to review "potentially hundreds of plans" or conduct "hundreds of individualized mini-trials." Def's Br. 17. This is totally false because Plaintiffs' equitable claims of unjust enrichment and breach of implied contract do not depend on or require examination of contract terms, but only whether Aetna had the right under common law to seize money issued to Plaintiffs to recover alleged, disputed, and unliquidated claims of earlier overpayments. As discussed above, it does not. *See*

[17] Aetna mispresents what discovery in *Lutz* revealed. Contrary to what Aetna states, not a single plan produced by Aetna contains explicit authority to offset benefits due under that plan to recover alleged overpayments made by ***different*** plans. *See Lutz* publicly-available docket entry #126 at 5-6 (reviewing produced plans). Indeed, in *Lutz*, Aetna claims that it doesn't need plan authority, and its director of recoveries testified that plan terms play no role in Aetna's offset recoveries. *Id.* at 5. Aetna says that in the "brief recently filed by Aetna" in *Lutz* it "explains the language of its plans" (Def's' Br. 18 n.13), but the three plans cited in that brief only allow recovery of overpayments (if at all) made ***by that same plan***. *See Lutz* #126 at 7 n.6. This was the same limitation that doomed the insurer's cross-plan offsets in *Peterson*. *See Peterson,* 2017 WL 991043, at * 6 ("all of those plans explicitly authorize same-plan offsetting; and not one of those plans explicitly authorizes cross-plan offsetting"). Discovery in this case will also show no plan authority for Aetna's offsets.



Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

pp. 9-13, *supra*. Thus, Aetna is wrong when it claims that "Plaintiffs allege the lawfulness of Aetna's actions rises and falls with the specific terms of each individual insurance policy." Def's Br. 17. Plaintiffs allege no such thing, nor could any such allegation be reasonably inferred from anything in the Complaint.

To the extent review of plan terms is necessary, only a handful of plans are at issue, *i.e.*, the non-ERISA plans which issued payments to Plaintiffs that Aetna seized. Moreover, Plaintiffs expect to show in discovery in this case what the plaintiffs in *Lutz* showed, *i.e.*, that not a single Aetna plan allows the use of plan benefits to recover a disputed overpayment made by another plan. *See* n. 17, *supra*. This discovery will drastically reduce—if not eliminate—the number of plans to review. Even if review of some plans were necessary, Aetna does not explain—and does not cite a single case to support—how the purported quantum of proof necessary to sustain their claims somehow negates Plaintiffs' right to declaratory relief. Declaratory relief exists for cases with lots of documents, as well as for the cases with few documents. *See* 42 PA. CONS. STAT. § 7532 (2017) ("Courts . . . shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed").

For these reasons, Plaintiffs' claim for declaratory relief is proper.

## VII. PRELIMINARY OBJECTION NO. 7: PLAINTIFFS WERE INJURED BY AETNA'S NON-PAYMENTS AND THEREFORE HAVE STANDING TO SUE.

Aetna's final objection is the claim that Plaintiffs lack "standing to sue" because they were not injured when Aetna seized the money it had "issued" to them. Def's Br. 19-20.

Plaintiffs easily meet Pennsylvania's test for standing to sue:

> First, the litigant must allege an interest which has been adversely affected; that is, has the party been harmed by the action which is challenged. Second, there must be a discernible adverse effect to some interest other than that shared by the public at large. Third, the adverse effect must be direct and immediate, and not

remote in consequences.

*Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.*, 646 A.2d 689, 691 (Pa. Commw. Ct. 1994) (citation omitted). *See Office of the Dist. Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1137 (Pa. Commw. Ct. 2017) (standing exists where the underlying controversy is real and concrete because the party has been aggrieved and has a substantial, direct, and immediate interest in the outcome of the ligation). Plaintiffs allege in the Complaint that Aetna unlawfully seized money owed and issued to them. Plaintiffs allege an interest in the money seized (*i.e.*, it was owed and issued to them for services rendered); that the seizure had a "discernable adverse effect" on Plaintiffs that was different from that suffered by the public at large (*i.e.*, Aetna took money out of Plaintiffs' pockets); and that the seizure was direct and immediate, not remote or prospective. This is more than sufficient to establish standing.

The premise for Aetna's argument that Plaintiffs were not injured is the same "aggregation" theory advanced by Aetna in support of its objection to Plaintiffs' unjust enrichment claim, *i.e.*, that when considering ***all*** payments Aetna has ***ever*** made to Plaintiffs—including alleged and disputed "overpayments"—Plaintiffs have been paid all that is due. Def's Br. 19. But this argument fails as to Plaintiffs' standing for the same reasons it fails as to Plaintiffs' unjust enrichment claim: it improperly presumes both the validity of Aetna's prior overpayment claims and its right to engage in unilateral setoffs as a means to recover the purported overpayment. As discussed above, Aetna cannot elevate its unverified and disputed overpayment claims to the status of uncontroverted truth such as to deny Plaintiffs' right to redress Aetna's seizures of later reimbursement money.





Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

## CONCLUSION

For the reasons detailed herein, this Court should deny Aetna's preliminary objections.

Date: June 12, 2017

Jason B. Martin, Esq.
Attorney ID #82767
The Martin Law Firm, P.C.
725 Skippack Pike #337
Blue Bell, PA 19422
(215) 398-7424

D. Brian Hufford, Esq.
(pro hac vice pending)
Zuckerman Spaeder LLP
399 Park Avenue, 14th floor
New York, NY 10022
(212) 704-9600
(212) 704-4256 (f)

William Meyer, Esq.
(pro hac vice pending)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore NY 21202
(410) 332-1240
(410) 659-0436 (f)

*Attorney for Plaintiffs*

Case# 2017-06786-8 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

Case# 2017-06786-9 Docketed at Montgomery County Prothonotary on 06/12/2017 12:04 PM, Fee = $0.00

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

ROCKVILLE AMBULATORY SURGERY, LP, et al.,
Plaintiffs,

v.

AETNA, INC.,
Defendant

DOCKET NO.: 2017-06786

CIVIL ACTION – LAW/EQUITY

## CERTIFICATE OF SERVICE

On this date I am serving a true and correct copy of Plaintiffs' Response to Defendant's Preliminary Objections to Plaintiffs' Complaint and supporting Memorandum upon the following via the Court's Electronic Filing System, email and U.S. mail, first class, postage prepaid at the following addresses:

:

Thomas Helbig, Esquire
Gregory S. Voshell, Esquire
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
**GSV@elliottgreenleaf.com**
**TBH@elliottgreenleaf.com**

Dated: June 12, 2017

Jason B. Martin, Esquire
Attorney ID: 82767
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
(215) 646-3980
*Attorney for Plaintiffs*