# EXHIBIT 5

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

**ELLIOTT GREENLEAF, P.C.**
**John M. Elliott, Esq.**
**Gregory S. Voshell, Esq.**
**Thomas B. Helbig, Jr., Esq.**
**I.D. Nos. 04414/208566/321470**
**925 Harvest Drive, Suite 300**
**Blue Bell, PA 19422**
**215-977-1000 (Phone)**
**215-977-1099 (Fax)**
**Attorneys for Defendant**

| | |
|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | |
| **Plaintiffs,** | **DOCKET NO.: 2017-06786** |
| v. | |
| **AETNA, INC.** | **CIVIL ACTION – LAW/EQUITY** |
| **Defendant.** | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT**
**OF ITS PRELIMINARY OBJECTIONS**

Defendant Aetna, Inc. ("Aetna" or "Defendant"), by and through its undersigned counsel, respectfully submits this Reply Brief in support of its Preliminary Objections to Plaintiffs' Complaint. For the reasons set forth below, and for those set forth in Aetna's opening papers, this Court should sustain Defendant's Preliminary Objections and dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT IN REPLY

### A. The Surgery Centers' Unjust Enrichment Claim Fails As A Matter Of Law.

This Court should sustain Aetna's preliminary objection to Plaintiffs' ("Surgery Centers") unjust enrichment claim for a multitude of reasons. Put simply, Plaintiffs concede that they have been paid an appropriate amount in the aggregate and, consequently, they have not alleged a viable unjust enrichment claim.

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

1. First, a required element of a claim for unjust enrichment is that the defendant accepted and retained a benefit. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). Here, the Surgery Centers make the specious claim that Aetna accepted and retained a benefit because Aetna somehow "interjected itself into the payment process" and "seized funds it had 'issued' to Plaintiffs before those funds could reach Plaintiffs' bank accounts." (Pltfs. Resp. Br. at 8.) This argument defies logic and is in direct conflict with numerous averments in the Surgery Centers' Complaint.

The term "issued" has a well-defined legal meaning that defeats the Surgery Centers' argument. To "issue" something means "the act of sending out, or causing to go forth; ***delivery***." *Prestige Cas. Co. v. Mashburn*, 612 F.2d 1048, 1049 (7th Cir. 1980) (emphasis added). Indeed, courts have rejected the notion that the act of "issuing" can be a "mere passive act," and instead requires "an act of 'putting forth', 'distributing', 'circulating' or 'publishing' on the part of the issuer." *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 413 (5th Cir. 2003); *see also Triffin v. Dillabough*, 670 A.2d 684, 687 n.1 (Pa. Super. Ct. 1996) ("Issue is defined by the UCC as '[t]he first delivery of an instrument to a holder or a remitter.'"); *Leech Lake Tribal Council v. Wash. Nat'l Ins. Co.*, 227 F.3d 1054, 1056 (8th Cir. 2000) ("According to the UCC, a check has not been 'issued' until it has been delivered to the payee.").

The Surgery Centers' Complaint is devoid of any allegations that Aetna "delivered," "sent out," "distributed," or "circulated" any funds, and thereafter seized those same funds before the funds "could reach Plaintiffs' bank accounts," (*see* Pltfs. Resp. Br. at 8). In fact, the Surgery Centers plead the exact opposite, asserting that Aetna "***purported***" to "issue" funds. (Compl. ¶ 26 (emphasis added).). What's more, the Surgery Centers expressly plead that "Aetna did not

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

then send an actual check," or any funds, to the Surgery Centers. (*Id.* ¶ 31; *see also id.* ¶¶ 74, 84, 91, 111, 118, 137, 146, 159, 166, 173, 180, 201, 212, 214, 221.)

The Surgery Centers' Complaint makes it abundantly clear that Aetna did not "send," "deliver," "distribute," or "circulate" any funds and thus the Surgery Centers do not plausibly allege that Aetna "issued" any funds to the Surgery Centers. *See Prestige Cas. Co.*, 612 F.2d at 1049; *Martin*, 353 F.3d at 413; *Triffin*, 670 A.2d at 687 n.1; *Leech Lake Tribal Council*, 227 F.3d at 1056. Indeed, the premise of their misguided claim is that no such funds were issued in the first place. Because the Surgery Centers have not plausibly alleged that Aetna "issued" funds to them and thereafter seized those same funds "before those funds could reach Plaintiffs' bank accounts," (Pltfs. Resp. Br. at 8), the Surgery Centers' unjust enrichment theory collapses as they have not plausibly alleged Aetna's acceptance and retention of a benefit. Accordingly, for this reason alone, this Court should sustain Aetna's First Preliminary Objections and dismiss Count I with prejudice.

2. Second, it is well-settled in Pennsylvania that "the most significant element of the doctrine [of unjust enrichment] is whether the enrichment of the defendant is unjust." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993); *Grimes v. Dynamics*, 134 A.3d 107 (Pa. Super. Ct. 2015); *Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 834 (Pa. Super. Ct. 2008). Indeed, "[t]he doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Styer*, 619 A.2d at 350; *see also Grimes*, 134 A.3d at *23 (holding that acceptance and retention of benefit was not unjust "because it was not clear that [the plaintiff] was entitled to receive anything"). Where a plaintiff fails to plausibly plead that any enrichment was unjust, "[t]his failure alone is fatal to [a plaintiff's] claim for unjust enrichment." *Stoeckinger*, 948 A.2d at 834. Importantly, when considering whether any

enrichment was unjust, Pennsylvania law requires that "all facts and circumstances are considered to determine whether, without a remedy, inequity would result or persist." *In re Actiq Sales & Mktg. Practices Litig.,* 307 F.R.D. 150, 169 (E.D. Pa. 2015) (applying Pennsylvania law); *see also Lampe v. Lampe,* 665 F.3d 506, 520 (3d Cir. 2011).

Here, the Surgery Centers admit that they have been paid an appropriate amount in the aggregate, and it is thus impossible to fathom how Aetna has been unjustly enriched. To support their contention that Aetna's purported enrichment was unjust, the Surgery Centers rely on one Pennsylvania case, *Temple University Hospital, Inc. v. Healthcare Management Alternatives, Inc.*, 832 A.2d 501 (Pa. Super. Ct. 2003), and one case from Tennessee, *River Park Hospital, Inc. v. BlueCross Blue Shield of Tennesee, Inc.*, 173 S.W.3d 43, 59 (Tenn. Ct. App. 2002). The Surgery Centers' reliance upon these cases is misplaced.

Unlike the providers in *Temple University* and *River Park*, here Plaintiffs concede they were paid an appropriate amount in the aggregate for all medical services provided. Moreover, both *Temple University* and *River Park* involved situations where the hospitals "were compelled under federal law" to provide the services at issue in those cases. *Temple Univ. Hosp.*, 832 A.2d at 507; *River Park Hosp.*, 173 S.W.3d at 59–60 (holding that the hospital was "left with no choice" under federal law but to treat the patients in question). Here, the Surgery Centers have not pled, nor could they, that they are "compelled under federal law," to treat the patients at issue, as the plaintiffs in *Temple University* and *River Park* were. Thus, the Surgery Centers' reliance on *Temple University* and *River Park* is wholly misplaced.

3. Finally, the Surgery Centers attempt to save their legally insufficient unjust enrichment claim by engaging in a lengthy discussion of the elements of a cause of action for



Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

set-off and restitution. But, this is simply another red herring as Aetna has not brought claims for set-off or restitution.

A "set-off," as that term is used in each and every case cited by the Surgery Centers is "a cause of action brought *by the defendant* in opposition to plaintiff's claim and seeks affirmative relief against the plaintiff." *Kaiser v. Monitrend Inv. Mgmt*., 672 A.2d 359 , 362–63 (Pa. Commw. Ct. 1996) (emphasis added). The Surgery Centers are the Plaintiffs in this case, and Aetna has not yet brought any counterclaim or cause of action for set-off. Notably, not a single case the Surgery Centers cite holds that a party is liable for unjust enrichment where that party recovers overpayments by reducing subsequent payments.[1] In fact, not a single case cited by the Surgery Centers even involves an unjust enrichment claim.

Moreover, even if this argument had any credibility, which it does not, the Surgery Centers' argument is premised on Pennsylvania's "common law right of setoff." (*See* Pltfs. Resp. Br. at 9.) However, the Surgery Centers then proceed to rely upon a decision from the United States District Court for the Central District of Illinois; a case from the Eastern District of Pennsylvania which expressly states it is applying federal law, not Pennsylvania law; and a number of Pennsylvania decisions that involve statutory-based claims for set-off. *See United States v. Peterson*, 738 F. Supp. 2d 869 (C.D. Ill. 2010); *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 64 F.R.D. 135 (E.D. Pa. 1974); *In re Gordon*, 176 A. 494 (Pa. 1935); *Kaiser by Taylor v. Monitrend Inv. Mgmt., Inc.*, 672 A.2d 359 (Pa. Commw. Ct. 1996). Indeed, *Peterson*, *Allis-Chalmers Corp.*, *In re Gordon*, and *Kaiser* do not even involve a claim for set-off under Pennsylvania common law.

[1] The same is true of the cases Plaintiffs cite in support of their restitution argument on pages 10-12 of its Brief.

Simply put, whether or not a defendant to an unjust enrichment claim did bring, or could bring, a counter-claim for set-off or restitution is wholly irrelevant to the issue at hand. Not a single case the Surgery Centers cite with respect to these arguments holds that a party is liable for unjust enrichment where that party recovers overpayments by reducing subsequent payments. This is nothing more than a misdirection to distract the Court from the legal insufficiency of the Surgery Centers' unjust enrichment claim. Accordingly, this Court must sustain Aetna's First Preliminary Objection and dismiss Count I with prejudice.

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

### B. The Surgery Centers Cannot Plausibly Allege That Aetna Unconditionally and Absolutely Accepted Any Purported Offer From The Surgery Centers.

Turning to the Surgery Centers' Breach of Implied Contract claim, the Surgery Centers' argument boils down to their contention that based on the Provider Explanation of Benefit Forms ("PEOBs") that Aetna sent the Surgery Centers, "[a]ny reasonable person would therefore understand that when Aetna sent Plaintiffs PEOBs reciting that it had authorized and then 'issued' payment for those services, it was accepting Plaintiffs offer to provide those services in return for payment." (*See* Pltfs. Resp. Br. at 14.) Not only does this argument rest once again on the false equivalency that marking a piece of paper with the notation "issued" is the same thing as "delivering," "sending out," "distributing," or "circulating," but it also ignores binding Pennsylvania law which holds that a contract cannot, as a matter of law, be implied unless acceptance of the offer is "unconditional and absolute." *Temple Univ. Hosp., Inc. v. Healthcare Management Alternatives, Inc.*, 764 A.2d 587, 593 (Pa. Super. Ct. 2000).

Here, the very same PEOBs that the Surgery Centers rely upon and incorporate into their Complaint as "unconditional and absolute" state in bold letters "**NO PAY**" on the very top of each page of the PEOB. (*See* Compl. at Ex. A.) These same PEOBs then also contain two separate graphics explaining why there will be "**NO PAY**." (*Id.*) A document marked "**NO**

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

**PAY**" containing graphics illuminating the reason for "**NO PAY**," cannot plausibly be construed as "unconditional and absolute" acceptance to pay those amounts. *See Temple Univ. Hosp.*, 764 A.2d at 593. Accordingly, based on Plaintiffs' own allegations, this Court must sustain Aetna's Second Preliminary Objection and dismiss Count III with prejudice.

Perhaps recognizing that they cannot plausibly bring this claim under *Temple University Hospital's* requirement that acceptance be "unconditional and absolute," the Surgery Centers attempt to explain away this well-established holding by arguing that *Temple University Hospital* is inapplicable. (*See* Pltfs. Resp. Br. at 15–16.) This is in spite of the fact that just two pages earlier, the Surgery Centers rely on the *Temple University Hospital* case in their recitation of the applicable legal principles, explaining that this case sets forth "[t]he test for establishing the existence of an implied contract" in Pennsylvania. (*Id.* at 13.) Putting that obvious inconsistency aside, the Surgery Centers' argument against *Temple University Hospital*'s applicability is that the parties in that case had previously been parties to a different contract. (*Id*. at 15–16.) But, the Surgery Centers fail to explain how this has any legal significance. Nor can the Surgery Centers cite any such law to support their contention, because Pennsylvania law does not treat the two situations differently. *Compare Temple Univ. Hosp.*, 764 A.2d at 593, *with O'Brien v. Nationwide Mut. Ins. Co.,* 689 A.2d 254, 258 (Pa. Super. Ct. 1997) ("It is a basic principle of the law of contracts that an acceptance must be unconditional and absolute." (quoting *Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 887 (Pa. Super. Ct. 1985))).

Accordingly, because the Surgery Centers cannot plausibly allege that Aetna unconditionally and absolutely accepted the Surgery Centers' purported offer, this Court must sustain Aetna's Second Preliminary Objection and dismiss Count III with prejudice.

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

**C. The Surgery Centers' Conversion Claim Fails as a Matter of Law.**

Pennsylvania law clearly forecloses Plaintiffs' ability to bring a conversion claim for several reasons. Instead of acknowledging this and dropping the claim, the Surgery Centers implore the Court to disregard their prior admission that their "Case Type" is one for "Debt Collection" now that they realize "[t]he failure to pay a debt is not conversion." *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2013). The Surgery Centers argue that the Court should ignore the precise way the Surgery Centers framed their case, relying exclusively on *Teague v. Ferguson*, 2017 Pa. Super. Unpub. LEXIS 242 (Pa. Super. Ct. Jan. 20, 2017) and *Ulrich v. Wolf*, 2016 Pa. Commw. Unpub. LEXIS 665 (Pa. Commw. Ct. July 22, 2016). But *Teague* and *Ulrich* involved *pro se,* incarcerated inmates, who were afforded leeway when filing petitions for habeas corpus. In contrast, the Surgery Centers have a legal team consisting of at least three attorneys and two law firms, spanning three different states. Accordingly, this Court should not allow the Surgery Centers to be evaluated pursuant to relaxed rules applicable to *pro se*, incarcerated litigants.

In any event, the Surgery Centers' conversion claim nonetheless fails as a matter of law. This is because the Surgery Centers' conversion claim is dependent again upon the false assertion that "Aetna 'issued' the money in question to Plaintiffs before seizing it" before it could reach the Surgery Centers' bank accounts. (*See* Pltfs. Resp. Br. at 17.) But, as explained *supra* in Part A.1, to "issue" means "the act of sending out, or causing to go forth; delivery," *Prestige Cas. Co.*, 612 F.2d at 1049, and cannot be a "mere passive act," *Martin*, 353 F.3d at 413; *see also Triffin*, 670 A.2d at 687 n.1; *Leech Lake Tribal Council*, 227 F.3d at 1056. The Surgery Centers' Complaint expressly rejects the notion that Aetna ever "sent out," "delivered," or "circulated" any funds. (Compl. ¶¶ 26, 31, 74, 84, 91, 111, 118, 137, 146, 159, 166, 173, 180, 201, 212, 214, 221.)

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

Accordingly, because the Surgery Centers admit this is an action for "debt collection" and because the Surgery Centers cannot plausibly plead a claim for conversion, this Court must sustain Aetna's Third Preliminary Objection and dismiss Count IV with prejudice.

**D. Misappropriation of Money Is Not a Cognizable Claim Under Pennsylvania Law and The Surgery Centers Cannot Cite One Case Holding Otherwise.**

The Surgery Centers argue that their claim for misappropriation is viable under Pennsylvania law because, in their view, "authorities confirm that a claim for misappropriation lies for the unlawful seizure of money." (Pltfs.' Resp. Br. at 19.) This argument plainly misstates Pennsylvania law.

In the principal case that the Surgery Centers rely upon, *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444 (M.D. Pa. 2007), the plaintiff did not even bring a claim for misappropriation – likely because no such claim exists under Pennsylvania law. Indeed, the plaintiff brought seven separate causes of action, but not one of them was a claim for misappropriation. *Id.* at 448. Rather, the issue before the court was whether certain exclusions to an insurance contract applied. *Id.* The misleading quotations cited by the Surgery Centers refer to the court's analysis of whether an exclusion for "misappropriation" applied, ***as that term was defined by the applicable insurance policy***. *Id.* at 460. Quite simply, the Surgery Centers cannot credibly claim that a case that does not involve a claim for misappropriation somehow creates a cause of action for same.

The Surgery Centers' misleading citations did not stop there, however. The Surgery Centers next quote a lengthy passage from *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 775 (M.D. Pa 2008). The key, however, is the Surgery Centers' notation of "(footnote omitted)" after their quotation to this passage. (*See* Pltfs. Resp. Br. at 20.) The footnote that the Surgery Centers intentionally omitted from their Response provides: "***However, every case where a***

***plaintiff alleged misappropriation under Pennsylvania law concerned the misappropriation of trade secrets or ideas***." *Rahemtulla*, 539 F. Supp. 2d at 755, n.22. One would think that if the Surgery Centers were correct that "authorities confirm that a claim for misappropriation lies for the unlawful seizure of money," (*see* Pltfs. Br. at 19), that the Surgery Centers and federal and state court judges would be able to find at least one case regarding such a claim. Accordingly, because this Commonwealth does not recognize a claim for misappropriation of money, this Court must sustain Aetna's Fourth Preliminary Objection, and dismiss Count V.

### E. The Surgery Centers' Claim for Money Had and Received Fails as a Matter of Law Because The Surgery Centers Cannot Plausibly Plead that Aetna *Received* the Money at Issue from Another.

With respect to their claim for Money Had and Received, the Surgery Centers argue that Aetna is wrong when it asserts that a claim for money had and received requires the defendant to have actually ***received money*** from another. Instead, the Surgery Centers argue that, despite the name of the claim being "Money Had and ***Received***," a defendant does not have to actually ***receive*** money. (*See* Pltfs. Resp. Br. at 21.) Rather, the Surgery Centers contend, a claim for money had ***and received*** is viable so long as money "constructively passed through the hands" of another party. (*Id.*) The Surgery Centers offer no case law from Pennsylvania, or elsewhere, that would remotely support this illogical leap.

The Surgery Centers cite two Pennsylvania cases, *Solomon v. Gibson*, 615 A.2d 367 (Pa. Super. Ct. 1992) and *Hughey v. Robert Beech Assocs.*, 378 A.2d 425 (Pa. Super. Ct. 1977). In both these cases, however, the court made clear that a claim will not lie where the defendant has not ***received*** the money at issue from another. This should come as no surprise, seeing as the name of the cause of action is "Money Had ***and Received***." Accordingly, because the Surgery Centers have not plausibly alleged that Aetna received the money at issue from another this Court must sustain Aetna's Fifth Preliminary Objection, and dismiss Count II with prejudice.



Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

**F. The Surgery Centers' Declaratory Action Should Be Dismissed Because It Would Necessarily Involve the Potential for Hundreds of Mini-Trials.**

With respect to their claim for a Declaratory Judgment, the Surgery Centers contend that it is "totally false" that resolution of this claim will involve hundreds of individualized mini-trials. (*See* Pltfs. Resp. Br. at 24.) The Surgery Centers contend this is because their claims "do not depend on or require examination of contract terms." (*Id.*) However, just two sentences prior to making this claim, the Surgery Centers quoted two allegations from their Complaint that they contend support their claim for declaratory relief and "dispose of Aetna's argument" that they are not entitled to relief. (*Id.*) The allegations are: (1) that "none of the insurance plans at issue permitted benefits to be withheld in order to recover an alleged prior overpayment"[2] and (2) that "[the Surgery Centers] refused Aetna's demands for refunds." (*Id.* (quoting Compl. ¶¶ 42, 23).)

Quite simply, if the Surgery Centers must prove that none of the insurance plans at issue permitted Aetna's alleged conduct, as the Surgery Centers' allege in their pleading, it necessarily follows that any determination on their declaratory action would involve an examination of each and every insurance plan at issue. The Surgery Centers cannot plausibly contend that this Court is required to accept wholesale the Surgery Centers' assertions as to the language of the plans at issue and how that language is to be interpreted, particularly where the Surgery Centers have not put any of those insurance contracts before the Court. Accordingly, because resolution of the Surgery Centers' Declaratory Judgment claim would necessarily involve hundreds of individualized mini-trials, this Court should sustain Aetna's Sixth Preliminary Objection and dismiss Count VI with prejudice.

---

[2] Importantly, this is a legal conclusion which this court must not accept as true. *See Crozer Chester Med. Ctr.*, 22 A.3d at 194; *Bayada Nurses*, 8 A.3d at 884.

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

### G. The Surgery Centers Lack Standing Because They Have Not Suffered Any Injury-in-Fact.

Finally, the Surgery Centers' Response with respect to Aetna's Seventh Preliminary Objection – that the Surgery Centers have not suffered an injury-in-fact – expressly rests on its legally erroneous conclusion that this Court should not look at the totality of the circumstances when analyzing the Surgery Centers' unjust enrichment claim. (*See* Pltfs. Resp. Br. at 26 ("[t]his argument fails as to Plaintiffs' standing for the same reasons it fails as to Plaintiffs' unjust enrichment claim.")). But, the Surgery Centers plead their claims in the aggregate. And, Pennsylvania law ***requires*** courts to view the totality of the circumstances and "determine whether, without a remedy, inequity would result or persist." *In re Actiq Sales & Mktg. Practices Litig.,* 307 F.R.D. at 169 (applying Pennsylvania law); *see also Lampe,* 665 F.3d at 520. In making this determination, "the object . . . is to eliminate profit from wrongdoing" and thus the court "***may recognize such credits or deductions***" that the court deems proper. Restatement (Third) of Restitution and Unjust Enrichment § 51(4), (5); *see also see also Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 419 (2013) (applying § 51); *S.E.C v. Teo*, 746 F.3d 90, 107 (2014).

As their pleading concedes, in totality, Aetna paid the Surgery Centers reasonable amounts for their services. Accordingly, this Court must sustain Aetna's Seventh Preliminary Objection and dismiss the Surgery Centers' Complaint in its entirety.

## II. RELIEF SOUGHT

For all the foregoing reasons, Defendant respectfully requests that this Court sustain Defendant's Preliminary Objections and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

*/s/ Gregory S. Voshell*

JOHN M. ELLIOTT
GREGORY S. VOSHELL
THOMAS B. HELBIG, JR.
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: July 12, 2017

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

Case# 2017-06786-18 Docketed at Montgomery County Prothonotary on 07/12/2017 10:39 AM, Fee = $0.00

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA**

| | | |
|---|---|---|
| **ROCKVILLE AMBULATORY SURGERY, LP, *et al.*,** | : | |
| **Plaintiffs,** | : | DOCKET NO.: 2017-06786 |
| v. | : | |
| | : | CIVIL ACTION – LAW/EQUITY |
| **AETNA, INC.,** | : | |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I caused a copy of the foregoing Reply Brief in Further Support of Preliminary Objections to be served by the Court's electronic filing system on all counsel of record.

Respectfully submitted,

*/s/ Gregory S. Voshell*

Gregory S. Voshell
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: July 12, 2017